**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

*Counsel for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PETER LANDSHEFT, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No.: 5:25-cv-2668<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)<br>2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)<br>3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)<br>4. FRAUD<br>5. NEGLIGENT MISREPRESENTATION<br>6. BREACH OF CONTRACT<br>7. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY<br>8. QUASI-CONTRACT / UNJUST ENRICHMENT<br><br>**JURY TRIAL DEMAND** |

1.     Plaintiff Peter Landsheft ("Plaintiff"), individually and on behalf of all others similarly situated, as more fully described below (the "Class" and "Class Members"), brings this class action complaint against Defendant Apple Inc., ("Defendant" or "Apple"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.     INTRODUCTION

2.     Last summer, Apple launched a pervasive marketing campaign across all media platforms to promote its latest iPhone 16 model, spotlighting what it branded as the groundbreaking "Apple Intelligence" suite of features, including significant AI-driven enhancements to Siri.

3.     For months, the trillion-dollar tech giant touted these AI capabilities as the cornerstone of the new iPhone's appeal, promising consumers a product that would redefine smartphone use in the new AI economy.

4.     Apple's advertisements saturated the internet, television, and other airwaves to cultivate a clear and reasonable consumer expectation that these transformative features would be available upon the iPhone's release.

5.     This drove unprecedented excitement in the market, even for Apple, as the company knew it would, and as part of Apple's ongoing effort to convince consumers to upgrade at a premium price and to distinguish itself from competitors deemed to be winning the AI-arms race.

6.     But Apple also knew none of it was true. Recently, under mounting pressure from outraged consumers and industry scrutiny, Apple was forced to acknowledge that the heralded Apple Intelligence features, including the Siri enhancements that fueled the greatest consumer excitement, did not exist then and do not exist now.

7.     Worse, Apple has admitted that if these features ever materialize, it won't be until 2026—two years after its pervasive marketing campaign built on a lie.

8.     Against this backdrop, Apple deceived millions of consumers into purchasing new phones they did not need based on features that do not exist, in violation of multiple false advertising and consumer protection laws.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

9.      This putative class action therefore seeks injunctive relief to ensure Apple permanently ceases its deceptive conduct, together with monetary damages to recover the unlawful price premium that millions of consumers paid for Apple's mirage of innovation.

10.      Plaintiff Mr. Landsheft is one of those consumers, and brings this lawsuit on behalf of himself and all similarly situated purchasers ("Class Members") of the Apple iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro and iPhone 16 Pro Max (the "Products"). Defendant advertised that these products would be equipped with specific "Apple Intelligence" features ("Apple Intelligence") even though they are not.

11.      **The Products.** Prior to 2024, Apple knew its customer base was increasingly interested in generative AI features. To substantially increase sales of the upcoming iPhone 16 series, Apple announced at the annual Worldwide Developer Conference ("WWDC") on June 10, 2024, a release of its own artificial intelligence model, "Apple Intelligence".[1]

12.      Apple promoted Apple Intelligence as a grouping of Generative AI tools on its upcoming lineup of iPhones and other devices. Defendant Apple indicated that the Apple iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro and iPhone 16 Pro Max, along with certain other Apple products, would come enabled with Apple Intelligence, and the improved capabilities present in those features.

13.      As has been revealed, however, Apple knew at the time of making its false promises that these features did not exist, but were instead still in early development (at best) and thus would not be included with the newly released iPhones.

14.      **Challenged Representations.** Apple's fraud on the market began in approximately mid-2024, when it first launched marketing for the new iPhone Products. Its false campaign persisted for months prior to, and after, the new iPhone 16 release across all media. The Challenged Representations conveyed that the Products would be equipped with specific artificial intelligence

---

[1]  Samantha Kelly, *Apple Introduces AI to its products at WWDC*, CNN, (June 10, 2024) https://www.cnn.com/business/live-news/apple-wwdc-keynote-06-10-24/index.html#:~:text=Apple%20introduced%20%E2%80%9CApple%20Intelligence%E2%80%9D%20%E2%80%93,host%20of%20Apple%20product%20updates.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

features under the "Apple Intelligence" umbrella. These representations include but are not limited to:

- "With Apple Intelligence, Siri can draw on a user's personal context to answer questions."[2]

- "Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, 'Play that podcast that Jamie recommended,' and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, 'When is Mom's flight landing?' and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time."[3]

- "With Apple Intelligence, Siri will be able to take hundreds of new actions in and across Apple and third-party apps. For example, a user could say, 'Bring up that article about cicadas from my Reading List,' or 'Send the photos from the barbecue on Saturday to Malia,' and Siri will take care of it."[4]

- "Apple introduced the new iPhone 16 lineup, built from the ground up for Apple Intelligence and featuring the faster, more efficient A18 and A18 Pro chips — making these the most advanced and capable iPhone models ever."[5]

- That Siri would be able to obtain and provide information to the user based on integration of all apps on the iPhone, for example, being able to search, via

---

[2] Apple Newsroom, *Apple Intelligence is available today on iPhone, iPad, and Mac*, APPLE (October 28, 2024) https://www.apple.com/newsroom/2024/10/apple-intelligence-is-available-today-on-iphone-ipad-and-mac

[3] Apple Newsroom, *Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the core of iPhone, iPad and Mac*, APPLE (June 10, 2024) https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/.

[4] *Id.*

[5] Apple Newsroom, *Apple Intelligence Comes to iPhone, iPad, and Mac Starting Next Month*, APPLE (Sept. 9, 2024) https://www.apple.com/newsroom/2024/09/apple-intelligence-comes-to-iphone-ipad-and-mac-starting-next-month/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

voice command, the name of an individual the user met several months ago at a specific location.[6]

15.     The Challenged Representations were widely and prominently dispersed throughout Defendant's official website, social media, regularly-aired television advertisements, and Defendant's authorized retail vendors. Apple's falsehoods were viewed widely by the Public, as Apple intended, including because the company elected to run the deceptive campaign during the baseball playoffs and NFL season when it knew millions of viewers nationwide would be an especially captive audience for its fraudulent advertising.

16.     **The Deception of the Challenged Representations and Unlawful Marketing & Sale of the Products.** The Challenged Representations misled reasonable consumers into believing the Products possessed certain AI qualities, capabilities, and features, they simply do not have. As a result, Apple charged consumers for Products they would not have purchased, or at least not at its premium price, had the advertising been honest. Beyond exploiting unsuspecting consumers, Apple also gained an unfair advantage over competitors in the market who do not tout non-existent AI features, or who actually deliver them as promised.

17.     Due to the risks and proliferation of false AI-related advertising in the consumer market, the California Attorney General's office has issued a dedicated Legal Advisory to warn companies specifically that California consumer protection laws "prohibit false advertising regarding the capabilities, availability, and utility of AI products [.]"

18.     Apple, founded and based in California, is intimately familiar with these consumer protection laws. But in the race for AI market share, it decided to violate them anyway, misleading consumers into believing that the Products possessed AI features, functions, and benefits the Products simply do not have and, according to company and industry insiders, may never have. Even if the promised features arrive years later, they will likely be available across competing technologies by then as well, rendering Apple's early campaign of supposedly unique and "innovative" capabilities meaningless. Based on its historical production cadence, it is also likely

---

[6] Omar Sohail, *Apple Intelligence Ad Showing New Siri Has Been Removed*, WCCFTECH (Mar. 8, 2025) https://wccftech.com/apple-intelligence-ad-showing-new-siri-has-been-removed/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

that Apple would be marketing another new iPhone series, leaving consumers who bought into Apple's false promises for the 16 series stuck with outdated technology for which they also overpaid. This is exactly the kind of calculated deception and market impact that California consumer protection laws, and similar laws nationwide, were designed to prevent.

19.    Below is a depiction of some of Apple's representations of Apple Intelligence features used to advertise the iPhone 16 lineup. However, the core features either do not exist or do not perform as claimed in the advertisement.

***Figures 1 and 2***[7]



///
///
///
///
///
///

---

[7] Screenshots of Siri's new AI-powered capabilities and release date from Apple's online advertisement, released to the public in September 2024.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12



13    ***Figure 3***[8]

14

15

16

17

18

19

20

21

22

23

24



25    ///

26    ///

27

28

---

[8] Screenshot of "iPhone 16 Pro" from Apple's "Apple Intelligence" online advertisement released in September 2024.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

***Figure 4***[9]



Apple Intelligence — the personal intelligence system for iPhone, iPad, and Mac — combines the power of generative models with personal context to deliver intelligence that's useful and relevant to the user.

***Figure 5***[10]



---

[9] Image from Apple's official website, announcing "Apple Intelligence". *See* https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/.

[10] Image from Apple's official website, announcing Siri's AI-powered advanced features. *See* https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*__Figure 6__*[11]



*__Figure 7__*[12]



---

[11] *Id.*
[12] *Id.*

CLASS ACTION COMPLAINT

21. **Consumer Demand for Artificial Intelligence Products.** Consumers are increasingly seeking sophisticated artificial intelligence software for their phones and electronic products. According to a recent survey, 60% of consumers now consider AI features important when choosing their next smartphone, including 21% who say AI features are very important.[13] AI-powered Voice Assistants, such as Siri, are considered most useful and sought after by consumers.[14]

22. **Challenged Representations on the Products' Advertising and Marketing.** Defendant takes advantage of consumers' desire for cutting-edge artificial intelligence software and features on their phones, especially as Apple has been facing competition from other large smartphone manufacturers like Samsung and Google's Android.[15]

23. **Primary Dual Objectives.** Plaintiff brings this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (defined *infra*), for dual primary objectives. *One*, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class, a monetary recovery of the price premium Plaintiff and consumers have overpaid for the Products as a result of the Challenged Representations, as consistent with permissible law (including, for example, damages,[16] restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). *Two*, Plaintiff seeks on Plaintiff's individual behalf and on behalf of the Class and the public, injunctive relief to remedy the deceptive conduct. Injunctive relief is necessary to stop any current and future false advertising and otherwise remedy prior false advertising. Injunctive relief could require Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations; disclosure of the Product's prior false advertising and removal or modification of the Challenged Representations, including a corrective advertising campaign to correct its prior false and misleading representations;

---

[13] Rishad Dsouza, *AI on smartphones – what features do consumers value most?* YouGov (Sept. 30, 2024) https://business.yougov.com/content/50614-ai-on-smartphones-what-features-do-consumers-value-most.
[14] *Id.*
[15] Daniel Howley, *Apple's AI Strategy Is Showing Troubling Cracks*, Yahoo Finance (Mar. 12, 2025) https://finance.yahoo.com/news/apples-ai-strategy-is-showing-troubling-cracks-150559429.html.
[16] Except as to the Consumer Legal Remedies Act ("CLRA") claim.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

modification of the Products so that they live up to the Challenged Representations; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## II.    <u>JURISDICTION</u>

24.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

25.    This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of this forum by conducting substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

## III.    <u>VENUE</u>

26.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## IV.    <u>PARTIES</u>

27.    **Plaintiff Peter Landsheft** is a citizen of California and has resided in San Diego, California, at all times relevant to this Complaint. Plaintiff purchased the Apple iPhone 16 Pro Max from Apple in October 2024, via his phone carrier, after relying on Apple's pervasive marketing campaign and believing that his new phone would contain the increased AI capabilities that Defendant repeatedly touted as part of its advertising.

28.    **Reliance on Challenged Labeling Claims.** In deciding to make the purchase, Plaintiff viewed and relied on Apple's advertising and marketing, including the Challenged Representations, leading Plaintiff to believe that the iPhone 16, would have the capabilities advertised, including the new features as part of "Apple Intelligence." Plaintiff relied heavily on this when deciding to purchase the Product.

29.    **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff did not know the Challenged Representations were false—i.e., that the iPhone would not be equipped with

1   capabilities and features advertised.

2       30.   **No Notice of Contradictions.** Plaintiff did not notice any disclaimer, qualifier, or

3   other explanatory statement or information on the Products' advertising and marketing that

4   contradicted the prominent Challenged Representations or otherwise suggested that the iPhone

5   would not have the advertised capabilities.

6       31.   **Causation/Damages.** Plaintiff would not have purchased the Products or would not

7   have paid as much for the Products, had Defendant not made the false and misleading Challenged

8   Representations and/or had Plaintiff otherwise known that the Challenged Representations were not

9   true—i.e., that the Products did not contain the capabilities that had been promised with Apple

10  Intelligence.

11      32.   **Desire to Repurchase.** Plaintiff desires to purchase Defendant's products again if the

12  Challenged Representations were true—i.e., if Defendant's products actually had the capabilities

13  advertised including the Apple Intelligence and advanced Siri features.

14      33.   **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff is not

15  personally familiar with the technology behind the Products or their manufacturing and

16  development, as Plaintiff does not possess any specialized knowledge, skill, experience, or

17  education in artificial intelligence or smartphone software. Plaintiff in the future would therefore be

18  unable to determine whether the Products' Challenged Representations are true—i.e., whether the

19  capabilities of the Products are in fact as advertised.

20      34.   **Inability to Rely.** Plaintiff is, and continues to be, unable to rely on the truth of the

21  Challenged Representations on the Products' advertising and marketing.

22      35.   **Plaintiff's and Public's Future Harm.** Defendant continues to market and sell the

23  Products and has not taken appropriate action to make clear the falsity or misleading nature of the

24  Challenged Representations. Accordingly, Plaintiff is at risk of reasonably, but

25  incorrectly, assuming that Defendant has fixed the products to perform as advertised and that its

26  product features are accurately described.

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

36.    **Defendant Apple Inc.** is an active California corporation with its principal place of business located at One Apple Park Way, Cupertino, California 95014 (near San Jose). Apple regularly conducts business throughout California and in this judicial district.

37.    At all relevant times, Defendant was conducting business in the state of California, including the Class Period. Defendant is one of the owners, manufacturers, marketers, and distributors of the Products, and is the company that created, authorized, and controlled the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout California and the nation by Defendant and its agents to deceive and mislead consumers in the State of California and throughout the United States into purchasing the Product.

## V.    FACTUAL ALLEGATIONS

### A.    Global Smartphone Industry

38.    Apple is the leading smartphone manufacturer, holding 23% of the global smartphone share in Quarter 4 of 2024.[17] The global smartphone market grew 7% in 2024, reaching 1.22 billion units worldwide.[18] Apple shipped roughly 226 million iPhones worldwide in 2024.[19] Of the units shipped, shipments of the falsely-advertised 16 Pro and Pro Max in 2024 were at least 11% higher than the 15 Pro and Pro Max in 2023, reaching over 55 million units.[20]

---

[17]    *Global Smartphone Market Share: Quarterly*, COUNTERPOINT (Mar. 3, 2025), https://www.counterpointresearch.com/insight/global-smartphone-share/.
[18]    *Global smartphone market soared 7% in 2024 as vendors prepare for tricky 2025*, CANALYS (Feb. 3, 2025), https://canalys.com/newsroom/worldwide-smartphone-market-2024.
[19]    *Id.*
[20]    *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

39.    The smartphone industry is expected to rapidly grow, in part due to Generative AI. The "Gen AI smartphone" is projected to be the fastest-growing segment in the smartphone category, outperforming the non-AI smartphone segment.[21]

**B.    Apple Behind in the Artificial Intelligence "Arms Race"**

40.    As tech companies race to develop artificial intelligence technology, Apple has struggled to keep up and is "seemingly being lapped in the AI race." Apple has drawn criticism for being slow to announce its AI strategy, while rivals such as Microsoft, Alphabet, Amazon, and Meta have pulled ahead.[22]

41.    Apple's competitors, Samsung and Google, use Google's Gemini AI platform and continue to add more AI functionality to their devices. To compete, Apple is promising to add their own AI features but then not delivering them.[23]

42.    Getting ready to launch iOS 18, and leading up to the Products' release, Apple announced Apple Intelligence, even though core features did not exist and without ample time to properly integrate the promised AI technology into Apple's operating systems.[24] Consumers did not know this truth, nor would they have any reason to because of Apple's pervasive and purposely false marketing campaign centered on delivering supposedly new and unprecedented AI technology and capabilities with the iPhone 16 series. As a result, millions were falsely enticed to buy the Products, only to find out that the promised features do not exist and may not exist for years to come, if ever.

---

[21]    Francisco Jeronimo, *The Rise of Gen AI Smartphones*, IDC (July 5, 2024), https://blogs.idc.com/2024/07/05/the-rise-of-gen-ai-smartphones/#:~:text=Market%20Opportunity,78.4%25%20for%202023%2D2028.

[22]    *Apple Intelligence has failed to boost iPhone sales*, MSN (Jan. 11, 2025), https://www.msn.com/en-us/technology/artificial-intelligence/apple-intelligence-has-failed-to-boost-iphone-sales-ming-chi-kuo/ar-BB1rhczl?ocid=BingNewsVerp.

[23]    Daniel Howley, *Apple's AI strategy is showing troubling cracks*, YAHOO! FINANCE (March 12, 2025),          https://finance.yahoo.com/news/apples-ai-strategy-is-showing-troubling-cracks-150559429.html.

[24]    Stevie Bonifield, *Apple Intelligence just ran into more bad news — and Siri is the problem*, YAHOO! TECH (March 3, 2025), https://www.yahoo.com/tech/apple-intelligence-just-ran-more-202000273.html.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

43.    For example, some sources now predict that the next-generation Siri as featured in Apple's deceptive advertising won't be ready until iOS 20 in 2027 at the earliest, 3 years after the Apple Intelligence announcement in 2024.[25]

44.    Further, Bloomberg's Mark Gurman reported that Apple executives, including software engineer Craig Federighi, "voiced strong concerns internally that the features didn't work properly — or as advertised — in their personal testing."[26] Sources also reported that employees in Apple's AI division "believe that work on the features could be scrapped altogether" and that the features may have to be rebuilt "from scratch."[27]

45.    Apple knew it could not release the promised technology on time, if ever, and yet continued to falsely advertise the Products, prioritizing profits over truth in its quest to regain ground in the race for AI market share.

## C.    The Products' Advertising and Marketing

46.    Not only has Defendant marketed and advertised the Products with the Challenged Representations, but Defendant has engaged in a marketing campaign initiated before and continuing throughout the Class Period (defined *infra*) that repeats and reinforces the Challenged Representations. Defendant's pervasive advertising included online and television advertising as well as numerous press releases, media statements, and product demonstration videos, touting non-existent features without making clear to consumers that the Products would lack advertised capabilities.

47.    For example, in September 2024 Defendant released a commercial for its new iPhone lineup, with actress Bella Ramsey showing Siri's personalization features and upgraded experience on the iPhone 16. This was aired extensively on television as well as online.[28] But in truth, the

---

[25] Samantha Kelly, *Major Siri Redesign May Be Delayed Again, Report Says*, CNET (March 3, 2025) https://www.cnet.com/tech/services-and-software/major-siri-redesign-may-be-delayed-again-report-says/.

[26] Jay Peters, *Apple Delays Upgraded Siri Intelligence Longer Than We Thought*, THE VERGE (March 7, 2025) https://www.theverge.com/news/626035/apple-delays-upgraded-siri-intelligence-longer-than-we-thought.

[27] *Id.*

[28] Omar Sohail, *Apple Intelligence Ad Showing New Siri Has Been Removed*, WCCFTECH (March 8, 2025) https://wccftech.com/apple-intelligence-ad-showing-new-siri-has-been-removed/.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Products do not have the capabilities as depicted. Following Defendant's announcement of the "delay" of the next generation Siri on March 7, 2025, Defendant pulled this particular commercial from YouTube. Still, it has failed to retract all the similarly false representations in the market that began in the Summer of 2024, much less take any action that would adequately remedy the consumers harmed by the company's widespread deception.

**D.**    **Plaintiff and Reasonable Consumers Were Misled into Buying the Products to Their Detriment**

48.    **Reasonable Consumer's Perception.** The Challenged Representations lead reasonable consumers, like Plaintiff, into believing that the Products conform to the Challenged Representations—meaning, consumers are led to believe that the iPhone 16 would contain the capabilities advertised and perform as claimed by Apple in prior presentations and marketing of the iPhone 16.

49.    **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning that it is important to consumers that the iPhone 16 would contain the capabilities advertised as present in the Apple Intelligence features. Apple knew that claiming its new iPhone lineup would have these AI capabilities would be material to the public given how popular AI is generally and thus used a mirage of AI innovation, to drive sales of the iPhone 16 and to obtain an unfair competitive edge over other manufacturers actually providing advanced AI features (or not falsely promising that they do).

50.    **Reliance.** The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products.

51.    **Falsity.** The Challenged Representations are deceptive because the Products do not contain the technical capabilities that Apple advertised.

52.    **Consumers Lack Knowledge of Falsity.** The Class who purchased the Products, including Plaintiff, did not know and had no reason to know, at the time of purchase, that the Products' Challenged Representations were false, misleading, deceptive, and unlawful.

53.    **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that

Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside the Products' design/purpose to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

a.   **Knowledge of Reasonable Consumers' Perception.** Defendant knew or should have known that its false claims regarding the capabilities of the Apple Intelligence functions would mean that those consumers would believe the iPhone 16 was capable of those functions, and would induce the consumers to purchase it.

b.   **Knowledge of Falsity.** Defendant advertised the Apple Intelligence functions for the iPhone 16 lineup knowing that it could not actually provide the capabilities that it was advertising.

c.   **Knowledge of Materiality.** Defendant knew or should have known of the Challenged Representations' materiality to consumers. Apple advertised Apple Intelligence as a way to enhance sales of its iPhones and other products, knowing that consumers highly prized artificial intelligence capabilities. Apple made the false and misleading representations with the knowledge that the Apple Intelligence software nor the Products had the capabilities Apple claimed in order to artificially inflate demand, and the price, for the iPhone 16 series.

d.   **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations'—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the representations in deciding to buy the Products, Defendant deliberately chose to market, and continue marketing, the Products with the Challenged

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Representations thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations would mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted.

54.    **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attributes claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's Challenged Representations, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**E.    <u>No Adequate Remedy at Law</u>**

55.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.    **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b.    **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, over a long period of

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1   time, in order to gain an unfair advantage over competitor products and to take

2   advantage of consumers' desire for Products that comport with the Challenged

3   Representations. The UCL also creates a cause of action for violations of law

4   (such as statutory or regulatory requirements and court orders related to similar

5   representations made on the type of products at issue). Thus, Plaintiff and

6   Class members may be entitled to restitution under the UCL, while not entitled

7   to damages under other causes of action asserted herein (e.g., the FAL requires

8   actual or constructive knowledge of the falsity; the CLRA is limited to certain

9   types of Plaintiff (individuals who seek or acquire, by purchase or lease, any

10   goods or services for personal, family, or household purposes) and other

11   statutorily enumerated conduct). Similarly, unjust enrichment/restitution is

12   broader than breach of warranty. For example, in some states, breach of

13   warranty may require privity of contract or pre-lawsuit notice, which are not

14   typically required to establish unjust enrichment/restitution. Thus, Plaintiff

15   and Class members may be entitled to recover under unjust

16   enrichment/restitution, while not entitled to damages under breach of

17   warranty, because they purchased the Products from third-party retailers or did

18   not provide adequate notice of a breach prior to the commencement of this

19   action.

20   c.   **Injunctive Relief to Cease Misconduct and Dispel Misperception.**

21   Injunctive relief is appropriate on behalf of Plaintiff and members of the Class

22   because Defendant continues to misrepresent the Products with the

23   Challenged Representations. Injunctive relief is necessary to prevent

24   Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful

25   conduct described herein and to prevent future harm—none of which can be

26   achieved through available legal remedies (such as monetary damages to

27   compensate past harm). Further, injunctive relief, in the form of a corrective

28   advertising campaign and affirmative disclosures, is necessary to dispel the

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

public misperception about the Products that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Product's true nature and an advertising campaign focused on correcting the prior false and misleading statements. An injunction requiring affirmative disclosures, as well as corrective advertising, to dispel the public's misperception and prevent the ongoing deception, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future sales of Products, and quantities of past/future sales of Products.

d.  **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e.  **California vs. Nationwide Class Claims**. The California Class Members assert additional claims based on California state law in addition to that asserted by the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f.  **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced.

CLASS ACTION COMPLAINT

No class has been certified yet. No expert discovery has commenced. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.    CLASS ACTION ALLEGATIONS

56.    **Class Definition.** Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of the Class defined as follows:

**Nationwide Class**

All residents of the United States who, within the applicable statute of limitations periods, purchased the Products for purposes other than resale ("**Nationwide Class**"); and

**California Subclass**

All residents of California who, within four years prior to the filing of this action, purchased the Products for purposes other than resale ("**California Subclass**").

57.    Collectively, the Nationwide Class and California Subclass are referred to as the "**Classes**".

58.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

59.  **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

60.  **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. The Nationwide Class consists of millions of purchasers dispersed throughout the United States, and the California Subclass likewise consists of at least thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

61.  **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

    a.  Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

    b.  Whether Defendant's conduct of advertising and selling the Products was false or deceptive.

    c.  Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

    d.  Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

    e.  Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

    f.  Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

g.   Whether Defendant's advertising and marketing of the Products are misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.   Whether Defendant knew or by the exercise of reasonable care should have known its advertising and marketing were and are misleading in violation of Business and Professions Code section 17500, *et seq.*;

i.   Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.   Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.   Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

l.   Whether Plaintiff and the Class paid more money for the Products than they actually received;

m.   How much more money Plaintiff and the Class paid for the Products than they actually received;

n.   Whether Plaintiff and the Class are entitled to injunctive relief; and

o.   Whether Defendant was unjustly enriched by its unlawful conduct.

62.   **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

63.   **Typicality.** Plaintiff's claims are typical of the claims of the Class Members Plaintiff seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

64.    **Adequacy.** Plaintiff is an adequate representative of the Class he seeks to represent because Plaintiff's interests do not conflict with the interests of the Class Members. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

65.    **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories. All iPhones have to be registered when activated, during which time, Apple collects the information about the user including their email addresses and more – and thus maintains information regarding its purchasers.

66.    **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

   b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

   c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

d.      When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

67.     **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

68.     **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

69.     **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.   CAUSES OF ACTION

### COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

**(*On Behalf of the California Subclass and the Nationwide Class*)**

70.     **Incorporation by Reference.** Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

71.     **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

72.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

73.    **False Advertising Claims.** Defendant, in its pervasive advertising and marketing of the Products, made misleading statements regarding the quality and characteristics of the Products—specifically, the Challenged Representations regarding the capabilities of Apple Intelligence. Instead, the Products lacked the advertised functionality of Apple Intelligence, failing to perform tasks and provide features as represented in Defendant's marketing materials. Furthermore, contrary to Defendant's claims of advanced AI capabilities, the Products offered a significantly limited or entirely absent version of Apple Intelligence, misleading consumers about its actual utility and performance. Worse yet, Defendant promoted its Products based on these overstated AI capabilities, leading consumers to believe they were purchasing a device with features that did not exist or were materially misrepresented. Such claims were made by Defendant in marketing its product.

74.    **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising because the Products lack the advertised capabilities of Apple Intelligence. Thus, the claims regarding the advanced AI features are not capable of performing as advertised, and the Products fail to deliver the advertised functionality for everyday use and during various activities, as directed and intended by Defendant. Further, the Products are promoted for their sophisticated AI, leading consumers to expect a level of intelligence that is not actually present. Defendant knew (and knows) that the Products do not possess the advertised Apple Intelligence capabilities, posing a misrepresentation of their functionality, and yet Defendant intentionally advertised and marketed the Products to deceive reasonable consumers and continues to do so presently.

75.    **Misleading Advertising Claims Cause Purchase of Products.** Defendant's advertising and marketing of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products possess the advanced AI capabilities Apple advertised, and, thus, are equipped with the specific capabilities advertised.

76.    **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations— namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

77.    **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

78.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

79.    **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

80.    **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and marketing of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

81.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

82.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

83.    For all Class members outside of the California Subclass, these claims are brought under the relevant consumer protection statute for the state in which they reside. For each state, the relevant statutes are as follows: Alabama—Deceptive Trade Practices Act (Ala. Code § 8-19-1, *et*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*seq.*); Alaska—Unfair Trade Practices and Consumer Protection Act (Alaska Stat. § 45.50.471, *et seq.*); Arizona—Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*); Arkansas—Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*); Colorado—Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut—Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110a, *et seq.*); Delaware—Consumer Fraud Act (Del. Code Ann. tit. 6, § 2511, *et seq.*); District of Columbia—D.C. Code § 28-3901, *et seq.*; Florida—Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.20, *et seq.*); Georgia—Fair Business Practices Act (Ga. Code Ann. § 10-1-390, *et seq.*); Hawaii—Haw. Rev. Stat. § 480-1, *et seq.*); Idaho—Consumer Protection Act (Idaho Code Ann. § 48-601, *et seq.*); Illinois—Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*); Indiana—Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, *et seq.*); Iowa—Iowa Code § 7.14.16, *et seq.*); Kansas—Consumer Protection Act (Kan. Stat. Ann. § 50-623, *et seq.*); Kentucky—Consumer Protection Act (Ky. Rev. Stat. Ann. § 367.110, *et seq.*); Louisiana—Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. § 51:1401, *et seq.*); Maine—Unfair Trade Practices Act (Me. Rev. Stat. Ann. tit. 5, § 205A, *et seq.*); Maryland—Maryland Consumer Protection Act (Md. Code Ann., Com. Law § 13-101, *et seq.*); Massachusetts—Regulation of Business Practice and Consumer Protection Act (Mass. Gen. Laws Ann. ch. 93A, §§ 1-11); Minnesota—False Statement in Advertising Act (Minn. Stat. § 8.31, Minn. Stat. § 325F.67), Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.*); Mississippi—Consumer Protection Act (Miss. Code Ann. § 75-24, *et seq.*); Missouri—Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*); Montana—Unfair Trade Practices and Consumer Protection Act (Mont. Code. Ann. § 30-14-101, *et seq.*); Nebraska—Consumer Protection Act (Neb. Rev. Stat. § 59-1601); Nevada—Trade Regulation and Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*, Nev Rev. Stat. § 41.600); New Hampshire—Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*); New Jersey—N.J. Stat. Ann. § 56:8-1, *et seq.*); New Mexico—Unfair Practices Act (N.M. Stat. § 57-12-1, *et seq.*); New York—N.Y. Gen. Bus. Law §§ 349, 350, N.Y. Exec. Law § 63(12); North Carolina—N.C. Gen. Stat. § 75-1.1, *et seq.*); North Dakota—N.D. Cent. Code § 51-15-01, *et seq.*); Ohio—Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01, *et seq.*); Oklahoma—Consumer Protection

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Act (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon—Unlawful Trade Practices Law (Or. Rev. Stat. § 646.605, *et seq.*); Pennsylvania—Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. Ann. § 201-1, *et seq.*); Rhode Island—Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Carolina—Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*); South Dakota—Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*); Tennessee—Consumer Protection Act (Tenn. Code Ann. § 47-18-101, *et seq.*); Texas—Deceptive Trade Practices—Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*); Utah—Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*); Vermont—Consumer Fraud Act (Vt. Stat. Ann. tit. 9, § 2451, *et seq.*); Virginia—Consumer Protection Act (Va. Code Ann. § 59.1-196, *et seq.*); Washington—Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia—W. Va. Code § 46A-6-101, *et seq.*); Wisconsin—Wis. Stat. § 100.18, 100.20; Wyoming—Consumer Protection Act (Wyo. Stat. Ann. § 40-12-101, *et seq.*).

### *"Unfair" Prong*

84.     **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

85.     **Injury.** Defendant's action of falsely advertising the Products with the Challenged Representations encouraged consumers to purchase the Products with the expectation that the Apple Intelligence features would be as capable as advertised. However, the Apple Intelligence features do not perform as advertised, causing financial injuries to consumers, who do not receive Products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive advertising and marketing of the Products. Accordingly, the injuries caused by Defendant's deceptive advertising and marketing outweigh any benefits.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

86. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

87. **No Utility.** Here, Defendant's conduct of advertising the Products as having artificial intelligence capabilities they do not actually have results in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

88. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

89. **Unfair Conduct.** Defendant's advertising and marketing of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

90. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

91. **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

92. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of advertising and marketing the Products with the Challenged Representations.

93. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact, have lost money and purchased an inferior product as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products which were advertised as having advanced

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

artificial intelligence capabilities that were at least as good as, if not better, than the products of other competitors in the market. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and marketing were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

94.    **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

95.    **Fraudulent & Material Challenged Representations.** Defendant used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations are deceptive, and Defendant knew, or should have known, of its deception. The Challenged Representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

96.    **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

97.    **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and deceptive Challenged Representations to their detriment in that they purchased the Products.

98.    **Reasonably Available Alternatives.** Defendant has reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

99.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

CLASS ACTION COMPLAINT

100. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing the Products with the Challenged Representations.

101. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that were advertised as having advanced artificial intelligence capabilities that were at least as good as, if not better, than the products of other competitors in the market. Instead, the software included did not come close to what was advertised, and was well below the capabilities of other competing products. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

102. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

103. **Violations of CLRA and FAL.** Defendant's advertising and marketing of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

104. **Fraud.** Additionally, Defendant's use of the Challenged Misrepresentations to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

105. **Additional Violations.** Defendant's conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business &

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated in this lawsuit.

106. **Unlawful Conduct.** Defendant's advertising and marketing of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

107. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Products with the Challenged Representations.

108. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

109. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of deceptive advertising of the Products.

110. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that the Products were not equipped with the capabilities being advertised. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### COUNT TWO

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

**(*On Behalf of the California Subclass*)**

111. **Incorporation by reference.** Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

112. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

113. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

114. **Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Challenged Representations disseminated to the public through the Products' advertising and marketing. These representations were deceptive because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

115. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

116. **Intent to Sell.** Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

117. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result, as well as a corrective advertising campaign to correct prior misrepresentations.

118. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the

intent to cause Plaintiff and consumers to pay for a Product that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive and subjected Plaintiff and consumers to unjust hardship, and knowingly disregarded their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

119.  **Incorporation by Reference.** Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

120.  **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

121.  **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

122.  **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a) because they are tangible objects that Plaintiff and the Class purchased primarily for personal, family, or household purposes.

123.  **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c) because it is a corporation.

124.  **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d) because they are individuals who purchased

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

the Products for personal, family, or household purposes.

125.  **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e) because Plaintiff entered into an agreement with Defendant or its authorized vendors to purchase the Products.

126.  **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the misleading, deceptive, and fraudulent Challenged Representations:

     a.    Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

     b.    Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . when they are of another."

     c.    Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [] as advertised."

127.  **Knowledge.** Defendant's uniform and material representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Challenged Representations were misleading.

128.  **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

129.  **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

130.  **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

substantial factor. The Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

131.  As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

132.  Pursuant to Section 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the misleading claims challenged herein and requiring Defendant to undertake a corrective advertising campaign to correct its prior false and misleading representations. Plaintiff also requests a court order requiring Defendant to provide restitution to Plaintiff and the Class for the money wrongfully acquired. Unless this injunctive relief is granted, Plaintiff will suffer irreparable harm.

133.  Plaintiff respectfully request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendant should be compelled to provide restitution to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations.

134.  Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

135.  Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant has failed to make clear that the Products do not contain Apple Intelligence capabilities as originally advertised. Injunctive relief is necessary to correct past harm and prevent future harm— none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of advertising or marketing modifications as well as a corrective advertising campaign, is necessary to dispel public misperception about the Products that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include providing Apple Intelligence capabilities as advertised or making clear to consumers that the Products were

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

not capable of the abilities advertised. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the Products), rendering injunctive relief a necessary remedy.

## COUNT FOUR

### Fraud

### (on behalf of the Nationwide Class)

136.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

137.    Plaintiff brings this claim individually and on behalf of the Class under California law.

138.    Defendant affirmatively misrepresented the capabilities of the Products when selling and marketing them.

139.    Defendant also knew that its misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

140.    Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

141.    Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

142.    Plaintiff and Class Members had a right to rely upon Defendant's representations as Defendant maintained monopolistic control over knowledge of the true quality of the Products.

143.    Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## COUNT FIVE

### Negligent Misrepresentation

### (*on behalf of the Nationwide Class*)

144.   Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

145.   Plaintiff brings this claim individually and on behalf of the Class under California law.

146.   Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Products.

147.   Defendant breached its duty to Plaintiff and the Class by advertising the products as having capabilities they do not actually have.

148.   Defendant knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, detailed, or otherwise represented or suitable for their intended use and were otherwise not as warranted and represented by Defendant.

149.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Products had they known that the Products do not conform to the Product's marketing, advertising, or statements.

150.   Plaintiff and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available.

## COUNT SIX

### Breach of Contract

### (*on behalf of the Nationwide Class*)

151.   Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

152.   Defendant expressly warranted that the Products would perform as advertised. Defendant's claims regarding the Products constituted an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

that the goods would conform to the stated promise. Plaintiff and the Class Members placed importance on Defendant's claims.

153. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class Members.

154. Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class Members by not providing Products that conform to the advertising and marketing claims.

155. As a result of Defendant's breach of contract, Plaintiff and the Class Members have been damaged in the amount to be determined at trial.

## COUNT SEVEN

### Breach Of Implied Warranty of Merchantability

#### (*on behalf of the Nationwide Class*)

156. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

157. Plaintiff brings this claim individually and on behalf of the Class under California law.

158. Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

159. Defendant is a merchant with respect to the Products at issue.

160. In order to be merchantable, goods must conform to the promises or affirmations of fact made in the advertising of the product.

161. Defendant breached the implied warranty of merchantability to Plaintiff and the Class in its representations that the Products contained the Apple Intelligence capabilities advertised when that was actually false.

162. As a result of Defendant's misleading conduct, Plaintiff and the Class did not receive merchantable goods as impliedly warranted by Defendant.

163. Defendant did not exclude or modify the Product's implied warranty of merchantability.

CLASS ACTION COMPLAINT

164.   As a proximate result of Defendant's breach of its implied warranty, Plaintiff and the Class incurred damages. Plaintiff and the Class were damaged as a result of Defendant's failure to comply with its obligations under the implied warranty, since Plaintiff and the Class paid for a Product that did not have the promised quality and nature, paid a premium for the Product when they could have instead purchased other less expensive smartphones or other products, and lost the opportunity to purchase similar products that provided the capabilities advertised.

165.   As a result of Defendant's breach of contract, Plaintiff and the Class Members have been damaged in the amount to be determined at trial.

## COUNT EIGHT

### Quasi-Contract / Unjust Enrichment

### (*on behalf of the Nationwide Class*)

166.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

167.   Plaintiff brings this claim individually and on behalf of the Class under California law.

168.   To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

169.   Plaintiff and Class members conferred monetary benefits on Defendant by purchasing the Products. Defendant's profits are funded entirely from their generated revenues – payments made by or on behalf of Plaintiff and Class Members. As such, a portion of these payments was attributable to Defendant's Challenged Representations.

170.   Defendant knew that Plaintiff and the Class conferred a benefit which Defendant accepted, and through which, Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that contrary to its representations, the Products did not have the technical capabilities they had advertised, these misleading representations caused injuries to Plaintiff and Class members because they would not have purchased the Product if the true facts were known.

171.    Defendant enriched itself by saving the costs they reasonably should have spent on ensuring that the Products had the technical capabilities advertised, and conform with their advertised representations.

172.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, requests judgment against Defendant as follows:

a.    **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b.    **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c.    **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d.    **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class requested herein, consistent with applicable law and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1      pursuant to only those causes of action so permitted;

2      e.     **Punitive Damages/Penalties:** For an order awarding punitive damages,

3      statutory penalties, and/or monetary fines, consistent with applicable law and

4      pursuant to only those causes of action so permitted;

5      f.     **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs,

6      consistent with applicable law and pursuant to only those causes of action so

7      permitted;

8      g.     **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-

9      judgment interest, consistent with applicable law and pursuant to only those

10      causes of action so permitted; and

11      h.     **All Just & Proper Relief:** For such other and further relief as the Court deems

12      just and proper.

13      <u>**JURY TRIAL DEMANDED**</u>

14      Plaintiff demands a trial by jury on all issues and causes of action so triable.

15

16   DATED: March 19, 2025           Respectfully submitted,

17                **CLARKSON LAW FIRM, P.C.**

18                */s/ Yana Hart*

19                Ryan J. Clarkson, Esq.
               Yana Hart, Esq.

20                Bryan P. Thompson, Esq.
               22525 Pacific Coast Highway

21                Malibu, CA 90265
               Tel: (213) 788-4050

22

23                *Attorneys for Plaintiff and*
               *the Proposed Classes*

24

25

26

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT