**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN237882)
sclarkson@clarksonlawfirm.com
Yana Hart (SBN 306499)
yhart@clarksonlawfirm.com
Bryan P. Thompson (SBN 354683)
bthompson@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, California 90265
Telephone: (213) 788-4050
Facsimile: (213) 788-4070

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Brian Danitz (SBN 247403)
bdanitz@cpmlegal.com
Karin B. Swope (*Pro Hac Vice*)
kswope@cpmlegal.com
Pierce H. Stanley (SBN 352152)
pstanley@cpmlegal.com
Caroline A. Yuen (SBN 354388)
cyuen@cpmlegal.com
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Interim Co-Lead Counsel for*
*Plaintiffs and the Proposed Classes*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
lking@kaplanfox.com
Matthew B. George (SBN 239322)
mgeorge@kaplanfox.com
Blair E. Reed (SBN 316791)
breed@kaplanfox.com
Clarissa R. Olivares (SBN 343455)
colivares@kaplanfox.com
1999 Harrison Street, Suite 1560
Oakland, California 94612
Telephone: (415) 772-4700
Facsimile: (415) 772-4707

Frederic S. Fox (*to be admitted Pro Hac Vice*)
ffox@kaplanfox.com
800 Third Avenue, 38th Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **PETER LANDSHEFT,** individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>**APPLE INC.**, a California Corporation,<br><br>Defendant. | CASE NO: 5:25-cv-02668-NW<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................... 1

    A.    The Products. ............................................................................................. 4
    B.    Challenged Representations. ..................................................................... 4
    C.    The Advanced AI-powered Siri Was a Top Purchase Driver Fueling Sales. ....................... 9

II.   THE PARTIES ....................................................................................................... 10

    A.    Plaintiffs .................................................................................................. 10
    B.    Defendant ................................................................................................. 79

III.  JURISDICTION AND VENUE ........................................................................... 79

IV.   INTRADISTRICT ASSIGNMENT ..................................................................... 80

V.    FACTUAL ALLEGATIONS ................................................................................ 80

    A.    Apple's History of Innovation ................................................................ 80
    B.    Apple's Entry Into the AI "Arms Race" ................................................. 81
    C.    Apple Introduces "Apple Intelligence" and Enhanced Siri ................... 83
    D.    Apple Deliberately Leveraged Media Hype Strategically Amplifying Their Misrepresentations ................................................................................ 87
    E.    Apple Launches iPhone 16, Doubling Down on its False AI Claims.................. 88
    F.    The "Ramsey Ad" – Apple Doubles down on its False And Misleading iPhone 16 Marketing Campaign ............................................................................ 91
    G.    "Apple Intelligence" and "New Era of Siri" Pervasive Advertisements ................ 96
    H.    Purchasers Expressed Their Frustration While Apple Continued To Mislead The Public.101
    I.    March 7, 2025 – Apple Finally Admits Its Deception.................................... 103
    J.    National Advertising Division Finds Apple's AI Advertising Misleading, Recommends Discontinuing or Modifying AI Claims ................................................ 106
    K.    Apple's Continued Delays Fuel Consumer Dissatisfaction............................... 107
    L.    Apple's 2025 WWDC Largely Avoids Spending Time on Enhanced Siri..................... 108
    M.    Apple Engaged in Deceptive Conduct to Obtain an Unfair Competitive Advantage........ 112

VI.   CLASS ACTION ALLEGATIONS ................................................................... 113

VII.  CHOICE OF LAW .............................................................................................. 118

VIII. CLAIMS FOR RELIEF ...................................................................................... 119

IX.   PRAYER FOR RELIEF ..................................................................................... 205

X.    JURY TRIAL DEMAND .................................................................................... 206

Plaintiffs, individually and on behalf of all others similarly situated, as more fully described below (the "Class" and "Class Members") file this Consolidated Amended Class Action Complaint against Defendant Apple Inc. ("Defendant" or "Apple"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

1.    Last year, Apple launched its new series 16 iPhone. As is now widely known, Apple falsely represented what the iPhone 16 could do, in an effort to reverse its trend of declining iPhone sales and capitalize on consumer excitement for truly innovative and advanced AI features. Apple promoted AI capabilities that did not exist at the time, do not exist now, and will not exist for two or more years, if ever, all while marketing them as the breakthrough innovation of the iPhone 16. This class action arises from that widespread deception, which violated multiple false advertising, unfair competition, and consumer protection laws.

2.    Apple is one of the most profitable technology companies in history. It built its reputation on innovation, most notably through its most successful invention, the iPhone. But in recent years, critics have increasingly questioned whether Apple has lost its edge[1]. As Forbes noted in 2019, "Apple's woes go far beyond their ability to sell their flagship smartphones. The company's challenges surround one simple fact: Apple is not innovative anymore across any category."[2]

---

[1] *See, e.g.*, Jefferson Graham, *iPhone 6S's nice features are far from revolutionary*, USA TODAY (Sep. 9, 2015), https://www.usatoday.com/story/tech/2015/09/09/new-iphone-6s---first-impressions/71941978/ (describing the lackluster iPhone 6S and lamenting that "for those who want to get excited, see you next September for the iPhone 7. Here's a newsflash: it will be re-designed, and described as the "most advanced," "best" and "revolutionary" iPhone ever."); *see also Is the iPhone 7, innovation for innovation's sake?* MEDIUM (Sep. 7, 2016), https://medium.com/the-unprofessionals/is-apple-creating-artificial-low-hanging-fruit-83a138f81c15 (opining with the release of the iPhone 7 in September 2016 that "Cupertino has been pushed into a corner, iPhone sales have stagnated, it clearly needs to innovate again and it seems that all the low hanging fruit have already been picked."; *Apple shows its steepest quarterly decline in iPhone sales since pandemic's outset*, NPR (May 3, 2024), https://www.npr.org/2024/05/03/1248865513/apple-quarterly-decline-iphone-sales (noting investors' concerns that Apple is "losing its edge as other tech giants such as Microsoft and Google sprint out to the early lead in artificial intelligence technology[.]").

[2] Greg Petro, *At its Core, Apple Is No Longer Innovative*, FORBES (Jun. 7, 2019), https://www.forbes.com/sites/gregpetro/2019/06/07/at-its-core-apple-is-no-longer-innovative/ (noting also that Apple is falling behind when it comes to the AI space.).

3.     That perception intensified with the rise of Artificial Intelligence, particularly following OpenAI's release of ChatGPT in November 2022, which redefined consumer expectations and triggered a wave of generative AI innovation across the tech industry. Apple was reportedly "caught off guard" by the AI boom[3] and viewed as falling behind its competitors in the race to integrate AI into consumer products.[4]

4.     Apple badly needed a perceived AI breakthrough to recapture consumer enthusiasm. That came in mid-2024 when Apple launched a sweeping marketing campaign introducing "Apple Intelligence," a suite of supposed next generation generative AI features, to promote its new iPhone 16 lineup. Apple marketed the iPhone 16 as "[t]he first iPhone built for Apple Intelligence." [5]

5.     The centerpiece of this campaign was a dramatically enhanced Siri, promoted as an on-device AI-powered personal assistant designed to revolutionize the smartphone experience and serve as the defining innovation of the new iPhone series. Apple claimed that Apple Intelligence would enable this new, "personalized" Siri to perform a wide range of sophisticated tasks such as performing multi-step tasks across a user's apps. Apple showcased examples such as locating a podcast mentioned in a text or personal email, sending photos by voice command, and retrieving documents from a reading list.

6.     Apple emphasized that Enhanced Siri would intelligently interact with users' personal data across device applications and apply that data to solve everyday problems, transforming Siri from a limited voice interface into a full-fledged AI assistant.

---

[3] Mark Gurman, *Inside Apple's Big Plan to Bring Generative AI to All Its Devices*, BLOOMBERG (Oct. 22, 2023), https://www.bloomberg.com/news/newsletters/2023-10-22/what-is-apple-doing-in-ai-revamping-siri-search-apple-music-and-other-apps-lo1ffr7p (stating, "Apple largely sat on the sidelines when OpenAI's ChatGPT took off like a rocket last year. . . . I can tell you in no uncertain terms that Apple executives were caught off guard by the industry's sudden AI fever and have been scrambling since late last year to make up for lost time.")
[4] Samantha Murphy Kelly, *iPhone sales are plunging. Here's why*, CNN (Apr. 16, 2024), https://www.cnn.com/2024/04/15/tech/iphone-sales-plunging/index.html (stating, "Apple has not articulated a strong message about artificial intelligence, at a time when many tech companies are doubling down on related strategies and features.")
[5] Archived version of Apple's iPhone 16 page, dated September 11, 2024, *Wayback Machine*, INTERNET ARCHIVE, https://web.archive.org/web/20240911122231/https://www.apple.com/iphone-16/, *last accessed* Jun. 24, 2025.

7. Apple's promises were not limited to niche tech media. Apple unveiled "Apple Intelligence" and Enhanced Siri as the focal point of its widely viewed and publicized annual Worldwide Developers Conference ("WWDC") in June 2024, then repeated and amplified those claims at the iPhone 16 launch and regularly thereafter across television, online platforms, and retail channels. Apple targeted consumers nationwide at times designed to maximize exposure, including Major League Baseball playoffs and NFL football broadcasts. Consistent with Apple's ability to dominate the news cycle based on product announcements, media coverage further amplified the core messaging.

8. One of Apple's most prominent campaigns coincided with the official launch of the iPhone 16 and featured acclaimed actor Bella Ramsey, star of *Game of Thrones* and *The Last of Us,* showcasing Siri's AI capabilities. These commercials depicted a fully operable Enhanced Siri working as advertised. These ads aired extensively across television, YouTube, social media, and even in movie theaters, amplifying consumer belief that Enhanced Siri was real, available, and revolutionary.

9. By the time the iPhone 16 series launched in September 2024, Apple's campaign had generated immense consumer excitement. Its message was clear: Apple Intelligence and Siri's new era was here. Consumers responded accordingly. Millions purchased or upgraded to the iPhone 16 based on Apple's promise of transformative AI functionality. For many, this marked the first compelling reason in years to spend over $800 on a new iPhone.

10. The problem is, none of it was true. The iPhone 16 was delivered to consumers without "Apple Intelligence," and Enhanced Siri never came.

11. It wasn't until March 2025, after millions of customers bought iPhones expecting the heralded features, that Apple admitted the surprising truth: (i) Enhanced Siri did not exist at the time Apple began widely promoting it, including advertising showing the feature "in action," (ii) it still did not exist months later, and (iii) it would not be available, if ever, until sometime in 2026—two years after the company built its Apple Intelligence and iPhone 16 series marketing campaign around it.

12.    Apple's admission coincided with the public release of a finding by the National Advertising Division that Apple's marketing for the iPhone 16 was false and misleading, as well as Apple's retraction of advertising that, months after the series16 launch, continued to showcase an operable Enhanced Siri even though no such feature exists.

13.    Public reaction to Apple's bait and switch tactics was swift and pointed. Consumers expressed shock, disappointment, and frustration. Many stated publicly they would never have purchased or upgraded to the iPhone 16 had they known the truth. This widespread sentiment echoed Morgan Stanley's November 2024 market research, which identified advanced AI features as a top driver of smartphone upgrades, with an "'Upgraded Siri digital assistant'" as "the Apple Intelligence feature prospective new model iPhone buyers were **most interested in**[.]" [6]

14.    Against this backdrop, Apple materially misrepresented the capabilities of the series 16 iPhone and deceived millions of consumers into spending hundreds of dollars on a phone they did not need, based on features that do not exist.  This putative class action seeks monetary damages to recover the unlawful price premium paid by millions who were misled by Apple's mirage of innovation.

**A.  The Products.**

15.    Plaintiffs bring this lawsuit on behalf of themselves and similarly situated purchasers of the Apple iPhone 16, iPhone 16e, iPhone 16Plus, iPhone 16 Pro, and iPhone 16 Pro Max ("iPhone 16" or the "Products"), which are priced from $599 to upwards of $1,199 before upgrades.

**B.  Challenged Representations.**

16.    Beginning with its widely publicized developer conference in June 2024 and continuing at the iPhone 16 launch event and in featured ads to follow, Apple aggressively promoted "Apple Intelligence," featuring a next-generation Siri as the flagship innovation.[7] ("Enhanced Siri").

---

[6] *Apple survey work points to improving iPhone upgrade rates, says Morgan Stanley,* BUSINESS INSIDER (Nov. 25, 2024),    https://markets.businessinsider.com/news/stocks/apple-survey-work-points-to-improving-iphone-upgrade-rates-says-morgan-stanley-1034061399;    *see also* Brandon Evans, *Apple estimates lowered on tariffs, Siri update delay: Morgan Stanley,* SEEKING ALPHA, (Mar. 12, 2025), *https://seekingalpha.com/news/4419782-apple-estimates-lowered-on-tariffs-siri-update-delay-morgan-stanley*
[7] Samantha Kelly, *Apple Introduces AI to its products at WWDC*, CNN, (June 10, 2024) https://www.cnn.com/business/live-news/apple-wwdc-keynote-06-10-

Apple showcased Enhanced Siri "in action" as though it were fully functional and available, despite lacking any real working version of the product. At the time, Apple also had no reasonable basis to believe it could deliver the advanced Siri functionality with the Series 16 iPhone.

17.    Apple's pervasive marketing campaign[8] persisted for months prior to, and after the release of iPhone 16 series, saturating all major media platforms through March 2025. The campaign conveyed that the iPhone 16 series would be equipped with an advanced Siri capable of quickly and accurately analyzing data across a variety of applications, drawing from an iPhone user's personal context, and applying that data to solve everyday problems. Among the representations made by Apple were the following:

- "Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, 'Play that podcast that Jamie recommended,' and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, 'When is Mom's flight landing?' and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time."[9]

- "With Apple Intelligence, Siri will be able to take hundreds of new actions in and across Apple and third-party apps. For example, a user could say, 'Bring up that article about cicadas from my Reading List,' or 'Send the photos from the barbecue on Saturday to Malia,' and Siri will take care of it."[10]

18.    Consistent with these misrepresentations, Apple claimed Siri would be able to obtain and provide information to the user based on integration of all apps on the iPhone, for example,

---

[8] 24/index.html#:~:text=Apple%20introduced%20%E2%80%9CApple%20Intelligence%E2%80%9D%20%E2%80%93,host%20of%20Apple%20product%20updates.

[8] *Id; see also* https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/

[9] Apple Newsroom, *Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the core of iPhone, iPad and Mac*, APPLE (Jun. 10, 2024) https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/, *last accessed* May 29, 2025.

[10] *Id.*

being able to search, via voice command, the name of an individual the user met several months ago at a specific location.[11]

19.    To further ignite global excitement about Apple Intelligence and Enhanced Siri's next-generation context-awareness, Apple enlisted acclaimed actor, Bella Ramsey, an internationally recognized celebrity known for their roles in *Game of Thrones* and *The Last of Us,* to star in its advertisements. Ramsey's reputation for authenticity and broad appeal gave Apple's multi-million dollar campaign, and the Enhanced Siri featured in it, a uniquely relatable, inclusive, and emotionally-resonant tone. It instantly captured the public's attention.

20.    Starting in September 2024, when Apple launched the iPhone 16 series officially, Apple aired these advertisements extensively across major television broadcasts, including high-visibility slots during MLB playoffs, NFL games, extended to YouTube (pre-roll ads[12]), social media channels (TikTok, Instagram, Facebook), and even in movie theaters. MLB playoffs and NFL

---

[11] Omar Sohail, *Apple Intelligence Ad Showing New Siri Has Been Removed*, WCCFTECH (Mar. 8, 2025) https://wccftech.com/apple-intelligence-ad-showing-new-siri-has-been-removed/.

[12] Pre-roll ads are video advertisements that play before the YouTube video a person clicked on to watch.

broadcasts during which the ads aired alone generally draw between 20-40 million viewers per game. The Ramsey ads are estimated to have reached hundreds of millions of consumers nationwide.



21.    Through these ads and media placements, Apple also directed customers to its website, which is one of the most visited websites globally, averaging between 450-660 million monthly visits. There, Apple proudly promoted "Apple Intelligence," heralding in particular the "new era for Siri:"



22.     While Apple depicted several features under "Apple Intelligence," most were not unique among smartphones nor particularly interesting to average consumers—trifles like making cute photo videos or generating new emojis. The most ambitious, headline-grabbing, and desired feature, Enhanced Siri, was therefore the centerpiece of Apple's marketing efforts. This promised consumers something groundbreaking: an AI personal assistant so deeply integrated with users' data and activities that it could understand their relationships, personal preferences, and day-to-day needs. As Apple touted, it was a breakthrough in functionality that would revolutionize smartphone use for the new AI era.

23.     Throughout the course of Apple's deceptive campaign, the company discussed Enhanced Siri as if it existed and depicted its advanced features across a wide range of marketing images and videos, including Bella Ramsey interacting with Siri as if its advanced features were already operational.

24.     Consumers also reasonably believed these features would be available on the Products when they launched based on core statements repeated by Apple across its Apple

Intelligence campaign including that Apple Intelligence is "coming this fall" (in 2024), is "available now," and "available today."

25.     As the National Advertising Division would later hold, "[t]he description of Siri's updated functionality below Apple's unqualified claim that Apple Intelligence is "available now"... reasonably convey[ed] the message that the updated Siri functionality was available as part of the iPhone 16 launch, which it was not."[13]

26.     Each of Apple's misrepresentations contributed to the core deception leading consumers to believe the series 16 iPhone, "Built for Apple Intelligence," would have exciting new personalized interactions driven by a revolutionary new Siri deemed available, shown to be working and otherwise heralded, but that in truth never existed.

**C.  Enhanced Siri Was a Top Purchase Driver Fueling Sales.**

27.     A November 2024 Smartphone Survey from Morgan Stanley revealed that Apple's artificial intelligence was "an emerging catalyst" to iPhone upgrades.[14] It was also listed as a top five driver of smartphone upgrades for the first time.[15] As explained by Morgan Stanley's analyst Erik Woodring, "'Upgraded Siri digital assistant' was the Apple Intelligence feature prospective new model iPhone buyers (globally) were most interested in."[16]

28.     When the promised features did not come, consumer outrage followed. Disappointed and confused by Apple's bait and switch tactics, many purchasers stated that they "would have never upgraded had [they] known this phone would not have those features,"[17] and expressed disappointment that they were duped into buying a new iPhone 16 under false pretenses.

---

[13] *See National Advertising Division v. Apple Inc.,* Case No. 7410 ("NAD Decision"), p. 7: "The description of Siri's updated functionality below Apple's unqualified claim that Apple Intelligence is 'available now' also reasonably conveys the message that the updated Siri functionality was available as part of the iPhone 16 launch, which it was not."

[14] TheFly, *Apple survey work points to improving iPhone upgrade rates, says Morgan Stanley*, NASDAQ, (Nov. 25, 2024) https://www.nasdaq.com/articles/apple-survey-work-points-to-improving-iphone-upgrade-rates-says-morgan-stanley.

[15] Brandon Evans, *Apple estimates lowered on tariffs, Siri update delay: Morgan Stanley*, SEEKING ALPHA, (Mar. 12, 2025) https://seekingalpha.com/news/4419782-apple-estimates-lowered-on-tariffs-siri-update-delay-morgan-stanley.

[16] *Id.*

[17] *See, e.g.*, Apple Support Community, *Why is the Apple Intelligence not included on my iPhone 16?,* APPLE (Oct. 2, 2024), https://discussions.apple.com/thread/255784851.

## II.  THE PARTIES

**A. Plaintiffs**

### ALABAMA

29.     Plaintiff **Shaun Carroll** is a citizen of Alabama at all relevant times. On September 19, 2024, Carroll purchased the iPhone 16 Pro Max from AT&T's online store for approximately $1,399.99 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

30.     In particular, Carroll recalls seeing and specifically relying on "Apple Intelligence" on iPhone 16 advertisements showcasing Enhanced Siri features, such as an ability to act as a digital personal assistant, such as the ability to pull information from multiple applications and perform other complicated tasks. This included Apple's Bella Ramsey television commercial that demonstrated a fully operational Enhanced Siri, as well as other Apple advertisements, marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

31.     Carroll reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

32.     Carroll believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Carroll had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

33.     However, after purchasing and setting up his phone, Carroll discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Carroll, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

1    were materially false and misleading including because the advertised Enhanced Siri has not yet

2    been developed and is not available on the iPhone 16. But for Apple's materially false and

3    misleading promotion of the iPhone 16, Carroll would not have purchased his iPhone 16 or would

4    have paid significantly less for it. As a result of Apple's conduct, Carroll has been injured through

5    purchase and overpayment for the phone as it does not have the capabilities promised.

6                                            **ALASKA**

7           34.    Plaintiff **Gary Rasmussen** is a citizen of Alaska at all relevant times. On October 15,

8    2025, Rasmussen purchased an iPhone 16 Pro from an Apple Store in Anchorage, Alaska, for

9    approximately $999 after viewing countless technical write-ups, blog posts, and articles online

10   regarding the promised AI features.

11          35.    In particular, Rasmussen recalls seeing and specifically relying on demonstrations

12   and descriptions of iPhone 16's Enhanced Siri, as well as other Apple advertisements marketing the

13   iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand

14   new AI-powered personal assistant and defining innovation of the new iPhone series.

15          36.    Rasmussen reasonably interpreted the Apple Intelligence advertisements to mean that

16   the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

17   consistent with the widespread public understanding at the time based on Apple's pervasive

18   marketing campaign.

19          37.    Rasmussen believed Apple's advertisements regarding iPhone 16's Apple

20   Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a

21   smartphone with an AI personal assistant. At the time of purchase, Rasmussen had no reason to

22   believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other

23   explanatory statement or information on the Product's advertising and marketing that contradicted

24   his understanding that the iPhone 16 would be equipped with Enhanced Siri.

25          38.    However, after purchasing and setting up his phone, Rasmussen discovered that the

26   phone did not have the promised features and is substantially inferior to what Apple advertised.

27   Unbeknownst to Rasmussen, Apple's statements regarding the iPhone 16's integrated Siri AI

28   capabilities were materially false and misleading including because the advertised Enhanced Siri has

not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Rasmussen would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Rasmussen has been injured through purchase and overpayment for the phone, as it does not have the capabilities promised.

## ARIZONA

39.     Plaintiff **Kiana Schlessner** is a citizen of Arizona at all relevant times. On September 16, 2024, Schlessner purchased an iPhone 16 Pro from Spectrum's website after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

40.     In particular, Schlessner recalls seeing and specifically relying on online advertisements on Apple's website demonstrating "Apple Intelligence" features, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series, and otherwise highlighting the new personalized Siri.

41.     Schlessner reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

42.     Schlessner believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Schlessner had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

43.     However, after purchasing and setting up her phone, Schlessner discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Schlessner, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and

1    misleading promotion of the iPhone 16, Schlessner would not have purchased her iPhone 16 or

2    would have paid significantly less for it. As a result of Apple's conduct, Schlessner has been injured

3    through purchase and overpayment for the phone as it does not have the capabilities promised.

4                                          **CALIFORNIA**

5         44.    Plaintiff **Peter Landsheft** is a citizen of California at all relevant times. In October

6    2024, Landsheft purchased an iPhone 16 Pro Max from Apple, via his phone carrier, for

7    approximately $1,153.00, after viewing pervasive advertisements for the new iPhone 16 series that

8    aired between Summer 2024 and prior to the date of purchase.

9         45.    In particular, Landsheft specifically recalls seeing and specifically relying on the

10   representations of Apple's new Artificial Intelligence features, especially the Enhanced Siri

11   functions, including the ability to act as a personal assistant, including gathering information across

12   various applications, including on-screen awareness, (such as emails, texts, calendar, and more), as

13   well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence,

14   the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining

15   innovation of the new iPhone series.

16        46.    Landsheft reasonably interpreted the Apple Intelligence advertisements to mean that

17   the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

18   consistent with the widespread public understanding at the time based on Apple's pervasive

19   marketing campaign.

20        47.    Landsheft believed Apple's advertisements regarding iPhone 16's Apple Intelligence

21   and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

22   AI personal assistant. At the time of purchase, Landsheft had no reason to believe that Apple's

23   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

24   statement or information on the Product's advertising and marketing that contradicted his

25   understanding that the iPhone 16 would be equipped with Enhanced Siri.

26        48.    However, after purchasing and setting up his phone, Landsheft discovered that the

27   phone did not have the promised features and is substantially inferior to what Apple advertised.

28   Unbeknownst to Landsheft, Apple's statements regarding the iPhone 16's integrated Siri AI

capabilities were materially false and misleading including because Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Landsheft would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Landsheft has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

49.     Plaintiff **Tyshaun Butler** is a citizen of California at all relevant times. On September 13, 2024, Butler preordered and purchased a iPhone 16 Pro Max and a iPhone 16 Plus from Apple's online store for approximately $2,434.09, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

50.     In particular, Butler recalls seeing and specifically relying on Apple's marketing emails for the iPhone 16, as well as its Apple Intelligence ads on social media and in retail stores, showcasing Enhanced Siri, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

51.     Butler reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

52.     Butler believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Butler had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

53.     However, after purchasing and setting up his phone, Butler discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Butler, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet

been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Butler would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Butler has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

**COLORADO**

54.    Plaintiff **Jacob Anderson** is a citizen of Colorado at all relevant times. On November 1, 2024, Anderson purchased an iPhone 16 Pro Max from AT&T's online store for approximately $1,599.99 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

55.    In particular, Anderson recalls seeing and specifically relying on the representations regarding of Apple's next iPhone's new artificial intelligence features, especially the Enhanced Siri functions, including its ability to gather and use personal information across email and all device applications to provide highly personalized assistance to iPhone users made at Apple's WWDC 2024, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

56.    Anderson reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

57.    Anderson believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Anderson had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

58.    However, after purchasing and setting up his phone, Anderson discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised.

Unbeknownst to Anderson, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Anderson would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Anderson has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

### CONNECTICUT

59.     Plaintiff **Russell Crafts** is a citizen of Connecticut at all relevant times. On December 5, 2024, Crafts purchased an iPhone 16 Pro from T-Mobile's online store for approximately $850, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

60.     In particular, Crafts recalls seeing and specifically relying on television advertisements highlighting a fully operable Enhanced Siri, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

61.     Crafts reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

62.     Crafts believed Apple's advertisements regarding iPhone 16's  Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Crafts had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

63.     However, after purchasing and setting up his phone, Crafts discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised.

Unbeknownst to Crafts, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Crafts would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Crafts has been injured through purchase and overpayment for the iPhone as it does not have the capabilities promised.

## FLORIDA

64.     Plaintiff **David Ramirez** is a citizen of Florida at all relevant times. On or around September 20, 2024, Ramirez purchased an iPhone 16 from a T-Mobile store in Gainesville, Florida for approximately $1,289.99, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

65.     In particular, Ramirez recalls seeing and specifically relying on Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

66.     Ramirez reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

67.     Ramirez believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI powered personal assistant. At the time of purchase, Ramirez had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with the advanced Siri.

68.     However, after purchasing and setting up his phone, Ramirez discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Ramirez, Apple's statements regarding the iPhone 16's integrated Siri AI

capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Ramirez would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Ramirez has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

69.     Plaintiff **Michael Murphy** is a citizen of Florida at all relevant times. On or around December 28, 2024, Murphy purchased an iPhone 16 Pro Max from an Apple Store in Sarasota, Florida for approximately $1,155 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

70.     In particular, Murphy  recalls seeing and specifically relying on Apple's promotions marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

71.     Murphy reasonably interpreted the Apple Intelligence advertisements to mean that the purchased iPhone 16 would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

72.     Murphy believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Murphy had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

73.     However, after purchasing and setting up his phone, Murphy discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Murphy, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and

misleading promotion of the iPhone 16, Murphy would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Murphy has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## GEORGIA

74.     Plaintiff **Kristopher Huggins** is a citizen of Georgia at all relevant times. On September 13, 2024, Huggins preordered an iPhone 16 Pro from his carrier, AT&T, through their online store for approximately $1,299, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

75.     In particular, Huggins recalls seeing and specifically relying on Apple's YouTube advertisements and representations made at Apple's annual developer's conference WWDC 2024 regarding Enhanced Siri's capabilities, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

76.     Huggins reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

77.     Huggins believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Huggins had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

78.     However, after purchasing and setting up his phone, Huggins discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Huggins, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and

1    misleading promotion of the iPhone 16, Huggins would not have purchased his iPhone 16 or would

2    have paid significantly less for it. As a result of Apple's conduct, Huggins has been injured through

3    purchase and overpayment for the phone as it does not have the capabilities promised.

4    79.    Plaintiff **Steven Geisel** is a citizen of Georgia at all relevant times. On September 23,

5    2024, Geisel purchased an iPhone 16 Pro from Xfinity Mobile's online store for approximately

6    $1,299 after viewing pervasive advertisements for the new iPhone 16 series that aired between

7    Summer 2024 and prior to the date of purchase.

8    80.    In particular, Geisel recalls seeing and specifically relying on representations Apple

9    made regarding Enhanced Siri at its  2024 WWDC, including its new ability to perform multi-step

10    tasks across a user's app and otherwise interact intelligently with users' personal data, like  searching

11    your calendar, creating reminders, and understanding and performing complex tasks with cross-app

12    and on-screen contextual and personalized awareness, as well as other Apple advertisements

13    marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was

14    Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new

15    iPhone series.

16    81.    Geisel reasonably interpreted the Apple Intelligence advertisements to mean that the

17    Products would be equipped with Enhanced Siri and would have the advertised functionalities,

18    consistent with the widespread public understanding at the time based on Apple's pervasive

19    marketing campaign.

20    82.    Geisel believed Apple's advertisements regarding iPhone 16's Apple Intelligence and

21    Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI

22    personal assistant. At the time of purchase, Geisel had no reason to believe that Apple's

23    advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

24    statement or information on the Product's advertising and marketing that contradicted his

25    understanding that the iPhone 16 would be equipped with Enhanced Siri.

26    83.    However, after purchasing and setting up his phone, Geisel discovered that the phone

27    did not have the promised features and is substantially inferior to what Apple advertised.

28    Unbeknownst to Geisel, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Geisel would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Geisel has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## ILLINOIS

84.    Plaintiff **Michael Hopkins** is a citizen of Illinois at all relevant times. On October 5, 2024, Hopkins purchased an iPhone 16 Pro from Apple's online store for approximately $1,167.69, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

85.    In particular, Hopkins recalls seeing and specifically relying on Apple video advertisements and Apple's 2024 WWDC presentation emphasizing Enhanced Siri's capabilities, and he also saw Apple's later advertisements marketing the iPhone 16's incorporation of Apple Intelligence and related new Enhanced Siri functionality. Hopkins recalls Apple's advertisements regarding Siri's ability to access and analyze information across multiple iPhone 16 applications to create highly personalized and user-specific responses. Hopkins also recalls other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

86.    Hopkins reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

87.    Hopkins believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Hopkins had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with the Enhanced Siri.

88. However, after purchasing and setting up his phone, Hopkins discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Hopkins, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Hopkins would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Hopkins has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

89. Plaintiff **David Campos** is a citizen of Illinois at all relevant times. On September 21, 2024, Campos purchased an iPhone 16 Pro Max from Boost Mobile's online store for approximately $1,285, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

90. In particular, Campos recalls seeing and specifically relying on Apple's 2024 WWDC spotlighting Enhanced Siri' capabilities, subsequent online videos and advertisements from Apple explaining and demonstrating that the iPhone 16 was equipped with Enhanced Siri and would be able to perform advanced functions, acting as a digital personal assistant that would be able to obtain and perform tasks across multiple apps with highly-personalized intelligence. Campos recalls other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

91. Campos reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

92. Campos believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

AI personal assistant. At the time of purchase, Campos had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

93. However, after purchasing and setting up his phone, Campos discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Campos, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Campos would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Campos has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

94. Plaintiff **Scott Domek** is a citizen of Illinois at all relevant times. On September 10, 2024, Domek preordered an iPhone 16 Pro from Apple's online store for approximately $1,299, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

95. In particular, Domek recalls seeing and specifically relying on Apple's website representations and promotional materials, which demonstrated Enhanced Siri, including its ability to perform cross-app functions and with on-screen and highly-intelligent personalized awareness. He also recalls seeing other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

96. Domek reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

97. Domek believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

AI personal assistant. At the time of purchase, Domek had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

98.    However, after purchasing and setting up his phone, Domek discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Domek, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Domek would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Domek has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## INDIANA

99.    Plaintiff **Krystal Rodriguez** is a citizen of Indiana at all relevant times. On September 27, 2024, Rodriguez purchased an iPhone 16 from Xfinity Mobile's online store for approximately $929.99, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

100.    In particular, Rodriguez recalls seeing and specifically relying on Apple's TV and social media ads for the iPhone 16, representations Apple made during its 2024 WWDC developer's conference regarding Enhanced Siri, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

101.    Rodriguez reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

102.    Rodriguez believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

AI personal assistant. At the time of purchase, Rodriguez had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

103. However, after purchasing and setting up her phone, Rodriguez discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Rodriguez, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Rodriguez would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Rodriguez has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

104. Plaintiff **Colby J. Stafford** is a citizen of Indiana at all relevant times. On September 18, 2024, Stafford pre-ordered an iPhone 16 Pro Max from Apple's online store for approximately $1,199, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

105. In particular, Stafford recalls seeing and specifically relying on the representations about Enhanced Siri Apple made during its 2024 WWDC, as well as various Apple advertisements on social media demonstrating that artificial intelligence would be integrated with Enhanced Siri on iPhone 16.

106. Stafford reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

107. Stafford believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Stafford had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1    statement or information on the Product's advertising and marketing that contradicted his

2    understanding that the iPhone 16 would be equipped with Enhanced Siri.

3        108.    However, after purchasing and setting up his phone, Stafford discovered that the

4    phone did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Stafford, Apple's statements regarding the iPhone 16's integrated Siri AI

6    capabilities were materially false and misleading including because the advertised advanced Siri has

7    not yet been developed and is not available on the iPhones. But for Apple's materially false and

8    misleading promotion of the iPhone 16, Stafford would not have purchased his iPhone 16 or would

9    have paid significantly less for it. As a result of Apple's conduct, Stafford has been injured through

10    purchase and overpayment for the phone as it does not have the capabilities promised.

11                                          **IOWA**

12        109.    Plaintiff **Susan Rizzio** is a citizen of Iowa at all relevant times. On September 20,

13    2024, Rizzio purchased an iPhone 16 Pro Max from Apple's authorized reseller, a UScellular online

14    store for approximately $1,199.00, after viewing pervasive advertisements for the new iPhone 16

15    series that aired between Summer 2024 and prior to the date of purchase.

16        110.    In particular, Rizzio recalls seeing and specifically relying on multiple Apple

17    advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of

18    which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the

19    new iPhone series.

20        111.    Rizzio reasonably interpreted the Apple Intelligence advertisements to mean that the

21    Products would be equipped with Enhanced Siri and would have the advertised functionalities,

22    consistent with the widespread public understanding at the time based on Apple's pervasive

23    marketing campaign.

24        112.    Rizzio believed Apple's advertisements regarding iPhone 16's Apple Intelligence

25    and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

26    AI personal assistant. At the time of purchase, Rizzio had no reason to believe that Apple's

27    advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

28

statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

113. However, after purchasing and setting up her phone, Rizzio discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Rizzio, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Rizzio would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Rizzio has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

114. Plaintiff **Matthew Karadsheh** is a citizen of Iowa at all relevant times. On October 30, 2024, Karadsheh purchased an iPhone 16 from a UScellular store in Bettendorf, Iowa for approximately $829.00, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

115. In particular, Karadsheh recalls seeing and specifically relying on Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

116. Karadsheh reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

117. Karadsheh believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Karadsheh had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

118.    However, after purchasing and setting up his phone, Karadsheh discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Karadsheh, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Karadsheh would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Karadsheh has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

**KENTUCKY**

119.    Plaintiff **Brooklyn Swanson** is a citizen of Kentucky at all relevant times. On January 4, 2025, Swanson purchased two iPhone 16 Plus phones from Verizon online for $929.99 each after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

120.    In particular, Swanson recalls seeing and specifically relying on TV commercials and other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

121.    Swanson reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

122.    Swanson believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Swanson had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

123.    However, after purchasing and setting up her phone, Swanson discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Swanson, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Swanson would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Swanson has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## MARYLAND

124.    Plaintiff **Kaitlyn DiFerdinando** is a citizen of Maryland at all relevant times. On October 24, 2024, DiFerdinando purchased an iPhone 16 from an Apple Store in Towson, Maryland for approximately $799, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

125.    In particular, DiFerdinando recalls seeing and specifically relying on video advertisements featuring Bella Ramsey interacting with an operable Enhanced Siri to help Ramsay remember someone's name and multiple billboards advertising iPhone 16 with Apple Intelligence, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

126.    DiFerdinando reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

127.    DiFerdinando believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, DiFerdinando no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other

explanatory statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

128.    However, after purchasing and setting up her phone, DiFerdinando that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to DiFerdinando, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16,  DiFerdinando would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, DiFerdinando has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

129.    Plaintiff **Henrietta Owusu** is a citizen of Maryland at all relevant times. In September 2024, Owusu purchased an iPhone 16 Pro from an Apple Store in Columbia, Maryland, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

130.    In particular, Owusu recalls seeing and specifically relying on Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series. Owusu additionally viewed and relied on promotional materials regarding iPhone 16's Apple Intelligence and Enhanced Siri from iDrop News and during Apple's September 2024 iPhone 16 launch event.

131.    Owusu reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

132.    Owusu believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Owusu had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1    statement or information on the Product's advertising and marketing that contradicted her

2    understanding that the iPhone 16 would be equipped with Enhanced Siri,

3        133.    However, after purchasing and setting up her phone, Owusu discovered that the

4    phone did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Owusu, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

6    were materially false and misleading including because the advertised Enhanced Siri has not yet

7    been developed and is not available on the iPhones. But for Apple's materially false and misleading

8    promotion of the iPhone 16, Owusu would not have purchased her iPhone 16 or would have paid

9    significantly less for it. As a result of Apple's conduct, Owusu has been injured through purchase

10   and overpayment for the phone as it does not have the capabilities promised.

11                                  **MASSACHUSETTS**

12       134.    Plaintiff **Lily Biagini** is a citizen of Massachusetts at all relevant times. On November

13   27, 2024, Biagini purchased an iPhone 16 from an Apple Store in Marlboro, Massachusetts for

14   approximately $1,000 after viewing pervasive advertisements for the new iPhone 16 series that aired

15   between Summer 2024 and prior to the date of purchase.

16       135.    In particular, Biagini specifically recalls seeing and specifically relying on Apple

17   advertisements on YouTube marketing Enhanced Siri and the iPhone 16's incorporation of Apple

18   Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant

19   and defining innovation of the new iPhone series.

20       136.    Biagini reasonably interpreted the Apple Intelligence advertisements to mean that the

21   Products would be equipped with Enhanced Siri and would have the advertised functionalities,

22   consistent with the widespread public understanding at the time based on Apple's pervasive

23   marketing campaign.

24       137.    Biagini believed Apple's advertisements regarding iPhone 16's  Apple Intelligence

25   and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

26   AI personal assistant. At the time of purchase, Biagini had no reason to believe that Apple's

27   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

28

statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri,

138. However, after purchasing and setting up her phone, Biagini discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Biagini, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Biagini would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Biagini has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## MICHIGAN

139. Plaintiff **Hunter Morgan** is a citizen of Michigan at all relevant times. On September 20, 2024, Morgan purchased an iPhone 16 Pro Max from Spectrum Mobile online for approximately $1,199, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

140. In particular, Morgan recalls seeing and specifically relying on advertisements that highlighted an Enhanced Siri, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

141. Morgan reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

142. Morgan believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Morgan had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1   statement or information on the Product's advertising and marketing that contradicted his

2   understanding that the iPhone 16 would be equipped with Enhanced Siri.

3          143.    However, after purchasing and setting up his phone, Morgan discovered that the

4   phone did not have the promised features and is substantially inferior to what Apple advertised.

5   Unbeknownst to Morgan, Apple's statements regarding the iPhone 16's integrated Siri AI

6   capabilities were materially false and misleading including because the advertised Enhanced Siri has

7   not yet been developed and is not available on the iPhones. But for Apple's materially false and

8   misleading promotion of the iPhone 16, Morgan would not have purchased his iPhone 16 or would

9   have paid significantly less for it. As a result of Apple's conduct, Morgan has been injured through

10  purchase and overpayment for the phone as it does not have the capabilities promised.

11                                        **MINNESOTA**

12         144.    Plaintiff **Jared Bukovich** is a citizen of Minnesota at all relevant times. On or about

13  September 20, 2024, Bukovich purchased an iPhone 16 Pro Max from Apple's online store for

14  approximately $1,599, after viewing pervasive advertisements for the new iPhone 16 series that aired

15  between Summer 2024 and prior to the date of purchase.

16         145.    In particular, Bukovich recalls seeing and specifically relying on Apple's video

17  advertisements including Apple's television commercial for Apple Intelligence featuring Bella

18  Ramsey interacting with an operable Enhanced Siri intelligently assisting with remembering

19  someone's name, as well as other Apple advertisements marketing the iPhone 16's incorporation of

20  Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal

21  assistant and defining innovation of the new iPhone series.

22         146.    Bukovich reasonably interpreted the Apple Intelligence advertisements to mean that

23  the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

24  consistent with the widespread public understanding at the time based on Apple's pervasive

25  marketing campaign.

26         147.    Bukovich believed Apple's advertisements regarding iPhone 16's Apple Intelligence

27  and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

28  AI personal assistant. At the time of purchase, Bukovich had no reason to believe that Apple's

advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

148.    However, after purchasing and setting up his phone, Bukovich discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Bukovich, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Bukovich would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Bukovich has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

149.    Plaintiff **Michael Joseph Abata** is a citizen of Minnesota at all relevant times. On October 6, 2024, Abata purchased an iPhone 16 Pro from Apple's online store for approximately $1,099 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

150.    In particular, Abata recalls seeing and specifically relying on Apple's social media ads about its new artificial intelligence features, as well as Apple's representations at its 2024 WWDC describing Enhanced Siri's capabilities and other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

151.    Abata reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

152.    Abata believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Abata had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1   statement or information on the Product's advertising and marketing that contradicted his

2   understanding that the iPhone 16 would be equipped with Enhanced Siri.

3       153.    However, after purchasing and setting up his phone, Abata discovered that the phone

4   did not have the promised features and is substantially inferior to what Apple advertised.

5   Unbeknownst to Abata, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

6   were materially false and misleading including because the advertised advanced Siri has not yet been

7   developed and is not available on the iPhones. But for Apple's materially false and misleading

8   promotion of the iPhone 16, Abata would not have purchased his iPhone 16 or would have paid

9   significantly less for it. As a result of Apple's conduct, Abata has been injured through purchase and

10  overpayment for the phone as it does not have the capabilities promised.

11      154.    Plaintiff **Lloyd Hagemo** is a citizen of Minnesota at all relevant times. On November

12  4, 2024, Hagemo purchased an iPhone 16 Pro Max from an Apple Store in Edina, Minnesota for

13  approximately $1,399.00, after viewing pervasive advertisements for the new iPhone 16 series that

14  aired between Summer 2024 and prior to the date of purchase.

15      155.    In particular, Hagemo recalls seeing and specifically relying on Apple's commercials

16  regarding iPhone 16's Apple Intelligence and Enhanced Siri on television, Apple's in-store

17  advertisements for Apple Intelligence, as well as other Apple advertisements marketing the iPhone

18  16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new

19  AI-powered personal assistant and defining innovation of the new iPhone series.

20      156.    Hagemo reasonably interpreted the Apple Intelligence advertisements to mean that

21  the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

22  consistent with the widespread public understanding at the time based on Apple's pervasive

23  marketing campaign.

24      157.    Hagemo believed Apple's advertisements regarding iPhone 16's Apple Intelligence

25  and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

26  AI personal assistant. At the time of purchase, Hagemo had no reason to believe that Apple's

27  advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

28

1    statement or information on the Product's advertising and marketing that contradicted his

2    understanding that the iPhone 16 would be equipped with Enhanced Siri.

3         158.    However, after purchasing and setting up his phone, Hagemo discovered that the

4    phone did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Hagemo, Apple's statements regarding the iPhone 16's integrated Siri AI

6    capabilities were materially false and misleading including because the advertised Enhanced Siri has

7    not yet been developed and is not available on the iPhones. But for Apple's materially false and

8    misleading promotion of the iPhone 16, Hagemo would not have purchased his iPhone 16 or would

9    have paid significantly less for it. As a result of Apple's conduct, Hagemo has been injured through

10   purchase and overpayment for the phone as it does not have the capabilities promised.

11                                    **MISSISSIPPI**

12        159.    Plaintiff **Olivia Joy Mitton** is a citizen of Mississippi at all relevant times. On or

13   about September 20, 2024, Mitton purchased an iPhone 16 Pro from AT&T's online store for

14   approximately $1,099.99, after viewing pervasive advertisements for the new iPhone 16 series that

15   aired between Summer 2024 and prior to the date of purchase.

16        160.    In particular, Mitton specifically recalls seeing and relying on Apple's advertisements

17   demonstrating Enhanced Siri's  ability to act as a highly-personal and intelligent virtual assistant, as

18   well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence,

19   the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining

20   innovation of the new iPhone series.

21        161.    Mitton reasonably interpreted the Apple Intelligence advertisements to mean that the

22   Products would be equipped with Enhanced Siri and would have the advertised functionalities,

23   consistent with the widespread public understanding at the time based on Apple's pervasive

24   marketing campaign.

25        162.    Mitton believed Apple's advertisements regarding iPhone 16's Apple Intelligence

26   and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

27   AI personal assistant. At the time of purchase, Mitton had no reason to believe that Apple's

28   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1    statement or information on the Product's advertising and marketing that contradicted her

2    understanding that the iPhone 16 would be equipped with Enhanced Siri.

3    163.    However, after purchasing and setting up her phone, Mitton discovered that the phone

4    did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Mitton, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

6    were materially false and misleading including because the advertised advanced Siri has not yet been

7    developed and is not available on the iPhones. But for Apple's materially false and misleading

8    promotion of the iPhone 16, Mitton would not have purchased her iPhone 16 or would have paid

9    significantly less for it. As a result of Apple's conduct, Mitton has been injured through purchase

10   and overpayment for the phone as it does not have the capabilities promised.

11                                        **MISSOURI**

12   164.    Plaintiff **David Freeman** is a citizen of Missouri at all relevant times. On or about

13   September 18, 2024, Freeman purchased an iPhone 16 from T-Mobile for approximately $1,199.99,

14   after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer

15   2024 and prior to the date of purchase.

16   165.    In particular, Freeman  recalls seeing and specifically relying on the statements made

17   in Apple's 2024 WWDC highlighting capabilities of Apple Intelligence and Enhanced Siri, as well

18   as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the

19   centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining

20   innovation of the new iPhone series.

21   166.    Freeman reasonably interpreted the Apple Intelligence advertisements to mean that

22   the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

23   consistent with the widespread public understanding at the time based on Apple's pervasive

24   marketing campaign.

25   167.    Freeman believed Apple's advertisements regarding iPhone 16's Apple Intelligence

26   and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

27   AI personal assistant. At the time of purchase, Freeman had no reason to believe that Apple's

28   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1  statement or information on the Product's advertising and marketing that contradicted his

2  understanding that the iPhone 16 would be equipped with Enhanced Siri.

3       168.    However, after purchasing and setting up his phone, Freeman discovered that the

4  phone did not have the promised features and is substantially inferior to what Apple advertised.

5  Unbeknownst to Freeman, Apple's statements regarding the iPhone 16's integrated Siri AI

6  capabilities were materially false and misleading including because the advertised advanced Siri has

7  not yet been developed and is not available on the iPhones. But for Apple's materially false and

8  misleading promotion of the iPhone 16, Freeman would not have purchased his iPhone 16 or would

9  have paid significantly less for it. As a result of Apple's conduct, Freeman has been injured through

10  purchase and overpayment for the phone as it does not have the capabilities promised.

11       169.    Plaintiff **Ronald Zemke** is a citizen of Missouri at all relevant times. On September

12  14, 2024, Zemke purchased an iPhone 16 Pro Max from a T-Mobile kiosk at Costco, after viewing

13  pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to

14  the date of purchase.

15       170.    In particular, Zemke recalls seeing and specifically relying on Apple's

16  representations regarding Apple Intelligence and Enhanced Siri at Apple's 2024 WWDC, as well as

17  other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the

18  centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining

19  innovation of the new iPhone series.

20       171.    Zemke reasonably interpreted the Apple Intelligence advertisements to mean that the

21  Products would be equipped with Enhanced Siri and would have the advertised functionalities,

22  consistent with the widespread public understanding at the time based on Apple's pervasive

23  marketing campaign.

24       172.    Zemke believed Apple's advertisements regarding iPhone 16's Apple Intelligence

25  and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

26  AI personal assistant. At the time of purchase, Zemke had no reason to believe that Apple's

27  advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

28

1    statement or information on the Product's advertising and marketing that contradicted his

2    understanding that the iPhone 16 would be equipped with Enhanced Siri.

3        173.    However, after purchasing and setting up his phone, Zemke discovered that the phone

4    did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Zemke, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

6    were materially false and misleading including because the advertised advanced Siri has not yet been

7    developed and is not available on the iPhones. But for Apple's materially false and misleading

8    promotion of the iPhone 16, Zemke would not have purchased his iPhone 16 or would have paid

9    significantly less for it. As a result of Apple's conduct, Zemke has been injured through purchase

10   and overpayment for the phone as it does not have the capabilities promised.

11       174.    Plaintiff **Michael Wood** is a citizen of Missouri at all relevant times. On September

12   13, 2024, Wood preordered an iPhone 16 Plus from Apple for approximately $1,029.00, after

13   viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and

14   prior to the date of purchase.

15       175.    In particular, Wood recalls seeing and specifically relying on the Apple WWDC

16   conference 2024 on YouTube depicting the next iPhone Apple Intelligence capabilities, including

17   Enhanced Siri, and later advertisements that the iPhone 16 would be equipped with Apple

18   Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant

19   and defining innovation of the new iPhone series.

20       176.    Wood reasonably interpreted the Apple Intelligence advertisements to mean that the

21   Products would be equipped with Enhanced Siri and would have the advertised functionalities,

22   consistent with the widespread public understanding at the time based on Apple's pervasive

23   marketing campaign.

24       177.    Wood believed Apple's advertisements regarding iPhone 16's Apple Intelligence and

25   Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI

26   personal assistant. At the time of purchase, Wood had no reason to believe that Apple's

27   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

28

1    statement or information on the Product's advertising and marketing that contradicted his

2    understanding that the iPhone 16 would be equipped with Enhanced Siri.

3        178.    However, after purchasing and setting up his phone, Wood discovered that the phone

4    did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Wood, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

6    were materially false and misleading including because the advertised Enhanced Siri has not yet

7    been developed and is not available on the iPhones. But for Apple's materially false and misleading

8    promotion of the iPhone 16, Wood would not have purchased his iPhone 16 or would have paid

9    significantly less for it. As a result of Apple's conduct, Wood has been injured through purchase and

10   overpayment for the phone as it does not have the capabilities promised.

11       179.    Plaintiff **Mark Adams** is a citizen of Missouri at all relevant times. On September

12   13, 2024, Adams preordered an iPhone 16 Plus from Apple online for approximately $1,029.00,

13   after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer

14   2024 and prior to the date of purchase.

15       180.    In particular, Adams recalls seeing and specifically relying on the representations

16   made in Apple's 2024 WWDC  highlighting Enhanced Siri, a commercial featuring Bella Ramsey's

17   use of iPhone 16 that demonstrated Enhanced Siri's capabilities such as viewing and performing

18   tasks across multiple applications and helping Ramsey recall the name of someone they had met, as

19   well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence,

20   the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining

21   innovation of the new iPhone series.

22       181.    Adams reasonably interpreted the Apple Intelligence advertisements to mean that the

23   Products would be equipped with Enhanced Siri and would have the advertised functionalities,

24   consistent with the widespread public understanding at the time based on Apple's pervasive

25   marketing campaign.

26       182.    Adams believed Apple's advertisements regarding iPhone 16's Apple Intelligence

27   and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

28   AI personal assistant. At the time of purchase, Adams had no reason to believe that Apple's

advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

183.    However, after purchasing and setting up his phone, Adams discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Adams, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Adams would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Adams has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

### MONTANA

184.    Plaintiff **Jennifer Conway** is a citizen of Montana at all relevant times. In September 2024, Conway purchased an iPhone 16 Plus from T-Mobile's online store, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

185.    In particular, Conway recalls seeing and specifically relying on Apple's advertisements for the iPhone 16 on social media, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

186.    Conway reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

187.    Conway believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI  personal assistant. At the time of purchase, Conway had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

188.    However, after purchasing and setting up her phone, Conway discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Conway, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Conway would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Conway has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## NEBRASKA

189.    Plaintiff **Mary L. Ryan** is a citizen of Nebraska at all relevant times. On October 12, 2024, Ryan purchased an iPhone 16 Plus from an Apple Store in Omaha, Nebraska for approximately $929.00, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

190.    In particular, Ryan recalls seeing and specifically relying on television advertisements demonstrating Apple's new artificial intelligence features, Enhanced Siri's highly advanced ability to recall personalized information across multiple apps in order to answer detailed questions, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

191.    Ryan reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

192.    Ryan believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Ryan had no reason to believe that Apple's

1    advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

2    statement or information on the Product's advertising and marketing that contradicted her

3    understanding that the iPhone 16 would be equipped with Enhanced Siri.

4        193.    However, after purchasing and setting up her phone, Ryan discovered that the phone

5    did not have the promised features and is substantially inferior to what Apple advertised.

6    Unbeknownst to Ryan, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

7    were materially false and misleading including because the advertised advanced Siri has not yet been

8    developed and is not available on the iPhones. But for Apple's materially false and misleading

9    promotion of the iPhone 16, Ryan would not have purchased her iPhone 16 or would have paid

10   significantly less for it. As a result of Apple's conduct, Ryan has been injured through purchase and

11   overpayment for the phone as it does not have the capabilities promised.

12                                     **NEVADA**

13       194.    Plaintiff **John Wells** is a citizen of Nevada at all relevant times. On or about

14   December 31, 2024, Wells purchased an iPhone 16 Plus from a Best Buy store in Las Vegas, Nevada

15   for $929.99, after viewing pervasive advertisements for the new iPhone 16 series that aired between

16   Summer 2024 and prior to the date of purchase.

17       195.    In particular, Wells  recalls seeing and specifically relying on Apple advertisements

18   on YouTube and on billboards claiming that Enhanced Siri would be able to process personal

19   information and complete advanced commands across a series of applications, as well as other Apple

20   advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of

21   which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the

22   new iPhone series.

23       196.    Wells reasonably interpreted the Apple Intelligence advertisements to mean that the

24   Products would be equipped with Enhanced Siri and would have the advertised functionalities,

25   consistent with the widespread public understanding at the time based on Apple's pervasive

26   marketing campaign.

27       197.    Wells believed Apple's advertisements regarding iPhone 16's Apple Intelligence and

28   Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI

1    personal assistant. At the time of purchase, Wells had no reason to believe that Apple's

2    advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

3    statement or information on the Product's advertising and marketing that contradicted his

4    understanding that the iPhone 16 would be equipped with Enhanced Siri.

5        198.    However, after purchasing and setting up his phone, Wells discovered that the phone

6    did not have the promised features and is substantially inferior to what Apple advertised.

7    Unbeknownst to Wells, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

8    were materially false and misleading including because the advertised advanced Siri has not yet been

9    developed and is not available on the iPhones. But for Apple's materially false and misleading

10    promotion of the iPhone 16, Wells would not have purchased his iPhone 16 or would have paid

11    significantly less for it. As a result of Apple's conduct, Wells has been injured through purchase and

12    overpayment for the phone as it does not have the capabilities promised.

13        199.    Plaintiff **Michael Accardi** is a citizen of Nevada at all relevant times.  On or about

14    January 3, 2025, Accardi purchased an iPhone 16, from Optimum Mobile for $799.00, after viewing

15    pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to

16    the date of purchase.

17        200.    In particular, Accardi recalls and specifically relied on Apple advertisements

18    emphasizing the advanced capabilities of Enhanced Siri.

19        201.    Accardi reasonably interpreted the advertisements to mean that the Products would

20    be equipped with Enhanced Siri, and would have the advertised functionalities, consistent with the

21    widespread public understanding at the time based on Apple's pervasive marketing campaign.

22        202.    Accardi believed Apple's advertisements regarding Apple Intelligence and Enhanced

23    Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal

24    assistant. At the time of purchase, Accardi had no reason to believe that Apple's advertisements were

25    false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on

26    the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would

27    be equipped with Enhanced Siri.

28

203.    However, after purchasing and setting up his phone, Accardi discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Accardi, Apple's statements regarding the Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Accardi would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Accardi has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## NEW HAMPSHIRE

204.    Plaintiff **William Passmore** is a citizen of New Hampshire at all relevant times. On September 30, 2024, Passmore purchased an iPhone 16 Pro from an Apple Store in Salem, New Hampshire for approximately $1,499.00, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

205.    In particular, Passmore recalls seeing and specifically relying on Apple's keynote presentations at WWDC 2024 and the iPhone 16 launch featuring Enhanced Siri, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

206.    Passmore reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

207.    Passmore believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI  personal assistant. At the time of purchase, Passmore had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

208.    However, after purchasing and setting up his phone, Passmore discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Passmore, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Passmore would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Passmore has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

### NEW JERSEY

209.    Plaintiff **Esther Woory Choi** is a citizen of New Jersey at all relevant times. On November 16, 2024, Choi purchased an iPhone 16 from her phone carrier, T-Mobile, in Orange, New Jersey for approximately $829.99 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

210.    In particular, Choi recalls seeing and specifically relying on Apple advertisements on social media and in the T-Mobile store highlighting the iPhone 16's new artificial intelligence features, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series. These advertisements prompted her to upgrade her phone earlier than she otherwise would have.

211.    Choi reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

212.    Choi believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Choi had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

213.    However, after purchasing and setting up her phone, Choi discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Choi, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16,  Choi would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Choi has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

214.    Plaintiff **Drew Franklin** is a citizen of New Jersey at all relevant times. On or about September 13, 2024, Franklin pre-ordered an iPhone 16 Pro from Apple's online store for approximately $1,099 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

215.    In particular, Franklin recalls seeing and specifically relying on Apple's representations regarding the iPhone 16, specifically related to its artificial intelligence capabilities and Enhanced Siri, made during the series 16 launch event on September 9, 2024 and in an Apple Newsroom press release titled "Introducing Apple Intelligence" published the same day, which featured Enhanced Siri capabilities.

216.     Franklin also recalls relying on a multitude of additional Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

217.    Franklin reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

218.    Franklin believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Franklin had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

219.    However, after purchasing and setting up his phone, Franklin discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Franklin, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Franklin would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Franklin has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

220.    Plaintiff **Marc Case** is a citizen of New Jersey at all relevant times. On October 2, 2024, Case purchased an iPhone 16 Pro Max from an Apple Store in Freehold, New Jersey for approximately $1,199.00, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

221.    In particular, Case recalls seeing and specifically relying on representations made during Apple's 2024 WWDC regarding Enhanced Siri,  as well as other subsequent Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

222.    Case reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

223.    Case believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, At the time of purchase, Case had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with the Enhanced Siri.

224.    However, after purchasing and setting up his phone, Case discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Case, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhone. But for Apple's materially false and misleading promotion of the iPhone 16, Case would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Case has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

225.    Plaintiff **Sam Leone** is a citizen of New Jersey at all relevant times. On September 13, 2024, Leone preordered an iPhone 16 Pro online from Verizon, after viewing pervasive advertisements that aired between Summer 2024 and prior to the date of purchase.

226.    In particular, Leone  recalls seeing and specifically relying on representations made during Apple's 2024 WWDC regarding  artificial intelligence functions that would enable Siri to complete advanced tasks across multiple applications, Apple's representations as to Enhanced Siri during the September 2024 series 16 launch event, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

227.    Leone reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

228.    Leone believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI

personal assistant. At the time of purchase, Leone had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

229.    However, after purchasing and setting up his phone, Leone discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Leone, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Leone would have paid significantly less for it. As a result of Apple's conduct, Leone has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

230.    Plaintiff **Grace Kim** is a citizen of New Jersey at all relevant times. On or around September 23, 2024, Kim purchased an iPhone 16 Pro from AT&T's online store for approximately $1,100, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

231.    In particular, Kim recalls seeing and specifically relying on Apple's representations at its 2024 WWDC about advanced artificial intelligence functions, including Enhanced Siri, as well as other later advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

232.    Kim reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

233.    Kim believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Kim had no reason to believe that Apple's advertisements

were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

234.    However, after purchasing and setting up her phone, Kim that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Kim, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Kim would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Kim has been injured through purchase and overpayment for the phone as it did does not have the capabilities promised.

235.    Plaintiff **Amanda Marrocco** is a citizen of New Jersey at all relevant times. On January 8, 2025, Marrocco purchased an iPhone 16 Pro Max from an Apple store in Cherry Hill, New Jersey, for approximately $1,199 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

236.    In particular, Marrocco specifically recalls seeing and relying on Apple advertisements on social media, news articles regarding Apple's WWDC, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

237.    Marrocco reasonably interpreted the advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities.

238.    Marrocco believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI powered personal assistant. At the time of purchase, Marrocco had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with the advanced Siri.

239.    However, after purchasing and setting up her phone, Marrocco discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Marrocco, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading because the advertised advanced Siri has not yet been developed and is not available on the iPhone 16. But for Apple's materially false and misleading promotion of the iPhone 16, Marrocco would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Marrocco has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

### NEW MEXICO

240.    Plaintiff **Derrick Wallace** is a citizen of New Mexico at all relevant times. On September 26, 2024, Wallace purchased an iPhone 16 Pro Max from his carrier, FirstNet, in-store in Pueblo, Colorado for approximately $1,200 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

241.    In particular, Wallace recalls seeing and specifically relying on Apple's TV and social media advertisements concerning the iPhone 16,  as well as representations Apple made during its 2024 WWDC  featuring Enhanced Siri, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

242.    Wallace reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

243.    Wallace believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Wallace had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

244.    However, after purchasing and setting up his phone, Wallace discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Wallace, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16s, Wallace would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Wallace has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

**NEW YORK**

245.    Plaintiff **Christian Varbanovski** is a citizen of New York at all relevant times. On September 20, 2024, Varbanovski purchased an iPhone 16 Pro from the Apple Store in New York County, New York for approximately $1,414.29, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

246.    In particular, Varbanovski  recalls seeing and specifically relying on the Apple's promise that the iPhone 16 was "built for Apple Intelligence," a large billboard by his apartment which read "Hello Apple Intelligence," as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

247.    Varbanovski reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

248.    Varbanovski believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Varbanovski had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

249.   However, after purchasing and setting up his phone, Varbanovski discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Varbanovski, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Varbanovski would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Varbanovski has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

250.   Plaintiff **Margot Robinson** is a citizen of New York at all relevant times. On September 21, 2024, Robinson purchased, through financing, an iPhone 16 from a Verizon store in Northport, New York for approximately $1,111, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

251.   In particular, Robinson recalls seeing and specifically relying on advertisements on Apple's website demonstrating that, with Apple Intelligence, the new, personalized Enhanced Siri could extract information from across multiple apps on the iPhone 16, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

252.   Robinson reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

253.   Robinson believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Robinson had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1    statement or information on the Product's advertising and marketing that contradicted her

2    understanding that the iPhone 16 would be equipped with Enhanced Siri.

3        254.    However, after purchasing and setting up her phone, Robinson discovered that the

4    phone did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Robinson, Apple's statements regarding the iPhone 16's integrated Siri AI

6    capabilities were materially false and misleading including because the advertised advanced Siri has

7    not yet been developed and is not available on the iPhones. But for Apple's materially false and

8    misleading promotion of the iPhone 16, Robinson would not have purchased her iPhone 16 or would

9    have paid significantly less for it. As a result of Apple's conduct, Robinson has been injured through

10   purchase and overpayment for the phone as it does not have the capabilities promised.

11       255.    Plaintiff **Brian Beach** is a citizen of New York at all relevant times. On or around

12   January 28, 2025, Beach purchased an iPhone 16 Pro from a T-Mobile store in New York for

13   approximately $999 after viewing pervasive advertisements for the new iPhone 16 series that aired

14   between Summer 2024 and prior to the date of purchase.

15       256.    In particular, Beach recalls seeing and specifically relying on Apple's advertisements

16   for Apple Intelligence and the iPhone 16 in various places, including television and social media.

17   Beach relied on advertisements that demonstrated that the new iPhone 16, with the Enhanced Siri

18   features, could act as a personal assistant, capable of scheduling appointments and performing other

19   complicated tasks across multiple apps, as well as other Apple advertisements which marketed the

20   iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand

21   new AI-powered personal assistant and defining innovation of the new iPhone series.

22       257.    Beach reasonably interpreted the advertisements to mean that the  Products would be

23   equipped with Enhanced Siri and would have the advertised functionalities.

24       258.    Beach believed Apple's advertisements regarding iPhone 16's Apple Intelligence and

25   Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI

26   powered personal assistant. At the time of purchase, Beach had no reason to believe that Apple's

27   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

28

statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with the advanced Siri.

259. However, after purchasing and setting up his phone, Beach discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Beach, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhone 16. But for Apple's materially false and misleading promotion of the iPhone 16, Beach would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Beach has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

260. Plaintiff **Mario Silva** is a citizen of New York at all relevant times. On December 13, 2024, Silva purchased an iPhone 16 Pro through Apple's online store for approximately $1,099 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

261. In particular, Silva specifically recalls seeing and relying on Apple's advertisements on social media, Apple's website, and "Apple Day" highlighting the iPhone 16's new artificial intelligence capabilities, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

262. Silva reasonably interpreted the advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities.

263. Silva believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI powered personal assistant. At the time of purchase, Silva had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with the advanced Siri.

264.    However, after purchasing and setting up his phone, Silva discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Silva, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhone 16. But for Apple's materially false and misleading promotion of the iPhone 16 Apple Intelligence AI-enabled features, Silva would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Silva has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## NORTH CAROLINA

265.    Plaintiff **Mariah L. Nelson** is a citizen of North Carolina at all relevant times. On October 29, 2024, Nelson purchased an iPhone 16 from AT&T's online store for approximately $1,199.99, through financing, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

266.    In particular, Nelson recalls seeing and specifically relying on Apple's advertising regarding Enhanced Siri including representations Apple made at the 2024 WWDC, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

267.    Nelson reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

268.    Nelson believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Nelson had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

269.    However, after purchasing and setting up her phone, Nelson discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Nelson, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Nelson would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Nelson has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

270.    Plaintiff **Frank Gray Stevenson, Jr.** is a citizen of North Carolina at all relevant times. On September 19, 2024, Stevenson purchased an iPhone 16 Pro from the Apple Store (online) for approximately $1,148.00, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

271.    In particular, Stevenson recalls seeing and specifically relying on Apple ads he saw on streaming media platforms & social media (TikTok & Instagram) featuring Enhanced Siri as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

272.    Stevenson reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

273.    Stevenson believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Stevenson had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1    statement or information on the Product's advertising and marketing that contradicted his

2    understanding that the iPhone 16 would be equipped with Enhanced Siri.

3    274.    However, after purchasing and setting up his phone, Stevenson discovered that the

4    phone did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Stevenson, Apple's statements regarding the AI capabilities of Enhanced Siri were

6    materially false and misleading including because the advertised Enhanced Siri had not yet been

7    developed and was not available on the iPhone 16. But for Apple's materially false and misleading

8    promotion of the iPhone 16, Stevenson would not have purchased his iPhone 16 Pro or would have

9    paid significantly less for it. As a result of Apple's conduct, Stevenson has been injured through

10   purchase and overpayment for the phone as it does not have the capabilities promised.

11    **OHIO**

12   275.    Plaintiff **Daniel Ruiz** is a citizen of Ohio at all relevant times. On September 13,

13   2024, Ruiz preordered an iPhone 16 Pro from Best Buy's online store for approximately $1,174.24,

14   after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer

15   2024 and prior to the date of purchase.

16   276.    In particular, Ruiz recalls seeing and specifically relying on Apple advertisements on

17   social media regarding Enhanced Siri and its representations at 2024 WWDC  highlighting Apple

18   Intelligence,  including Enhanced Siri's featured ability to integrate and act intelligently on

19   information from across apps, as well as other Apple advertisements marketing the iPhone 16's

20   incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-

21   powered personal assistant and defining innovation of the new iPhone series.

22   277.    Ruiz reasonably interpreted the Apple Intelligence advertisements to mean that the

23   Products would be equipped with Enhanced Siri and would have the advertised functionalities,

24   consistent with the widespread public understanding at the time based on Apple's pervasive

25   marketing campaign.

26   278.    Ruiz believed Apple's advertisements regarding iPhone 16's Apple Intelligence and

27   Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI

28   personal assistant. At the time of purchase, Ruiz had no reason to believe that Apple's advertisements

1    were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information

2    on the Product's advertising and marketing that contradicted his understanding that the iPhone 16

3    would be equipped with Enhanced Siri.

4        279.    However, after purchasing and setting up his phone, Ruiz discovered that the phone

5    did not have the promised features and is substantially inferior to what Apple advertised.

6    Unbeknownst to Ruiz, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

7    were materially false and misleading including because the advertised Enhanced Siri has not yet

8    been developed and is not available on the iPhones. But for Apple's materially false and misleading

9    promotion of the iPhone 16 would not have purchased his iPhone 16 or would have paid significantly

10   less for it. As a result of Apple's conduct, Ruiz has been injured through purchase and overpayment

11   for the phone as it does not have the capabilities promised.

12       280.    Plaintiff **Ryan Bulcher** is a citizen of Ohio at all relevant times. On September 11,

13   2024, Bulcher preordered an iPhone 16 Pro Max from Apple's online store for approximately

14   $1,199, after viewing pervasive advertisements for the new iPhone 16 series that aired between

15   Summer 2024 and prior to the date of purchase.

16       281.    In particular, Bulcher recalls seeing and specifically relying on Apple's television

17   advertisements and online advertisements highlighting the iPhone 16's new artificial intelligence

18   capabilities, especially Enhanced Siri, as well as other Apple advertisements marketing the iPhone

19   16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new

20   AI-powered personal assistant and defining innovation of the new iPhone series.

21       282.    Bulcher reasonably interpreted the Apple Intelligence advertisements to mean that

22   the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

23   consistent with the widespread public understanding at the time based on Apple's pervasive

24   marketing campaign.

25       283.    Bulcher believed Apple's advertisements regarding iPhone 16's Apple Intelligence

26   and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

27   AI personal assistant. At the time of purchase, Bulcher had no reason to believe that Apple's

28   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

1    statement or information on the Product's advertising and marketing that contradicted his

2    understanding that the iPhone 16 would be equipped with Enhanced Siri.

3        284.    However, after purchasing and setting up his phone, Bulcher discovered that the

4    phone did not have the promised features and is substantially inferior to what Apple advertised.

5    Unbeknownst to Bulcher, Apple's statements regarding the iPhone 16's integrated Siri AI

6    capabilities were materially false and misleading including because Enhanced Siri has not yet been

7    developed and is not available on the iPhones. But for Apple's materially false and misleading

8    promotion of the iPhone 16, Bulcher would not have purchased his iPhone 16 or would have paid

9    significantly less for it. As a result of Apple's conduct, Bulcher has been injured through purchase

10    and overpayment for the phone as it does not have the capabilities promised.

11    **OKLAHOMA**

12        285.    Plaintiff **Lindsey K. Williams** is a citizen of Oklahoma at all relevant times. On

13    February 1, 2025, Williams purchased an iPhone 16 Plus from AT&T, after viewing pervasive

14    advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date

15    of purchase.

16        286.    In particular, Williams recalls seeing and specifically relying on Apple

17    advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of

18    which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the

19    new iPhone series.

20        287.    Williams reasonably interpreted the Apple Intelligence advertisements to mean that

21    the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

22    consistent with the widespread public understanding at the time based on Apple's pervasive

23    marketing campaign.

24        288.    Williams believed Apple's advertisements regarding iPhone 16's Apple Intelligence

25    and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

26    AI personal assistant. At the time of purchase, Williams had no reason to believe that Apple's

27    advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

28

statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

289.    However, after purchasing and setting up her phone, Williams discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Williams, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Williams would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Williams has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

290.    Plaintiff **Christian Hackelman** is a citizen of Oklahoma at all relevant times. On September 13, 2024, Hackelman preordered an iPhone 16 Pro from his carrier, AT&T, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

291.    In particular, Hackelman recalls seeing and relying specifically on Apple advertisements throughout social media  and representations it made during its 2024 WWDC regarding  artificial intelligence and advanced tasks Enhanced Siri could complete by  recognizing his activity patterns and acting intelligently across multiple applications on the phone with personalized awareness, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

292.    Hackelman reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

293.    Hackelman believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase Hackelman had no reason to

1   believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other

2   explanatory statement or information on the Product's advertising and marketing that contradicted

3   his understanding that the iPhone 16 would be equipped with Enhanced Siri.

4          294.    However, after purchasing and setting up his phone, Hackelman discovered that the

5   phone did not have the promised features and is substantially inferior to what Apple advertised.

6   Unbeknownst to Hackelman, Apple's statements regarding the iPhone 16's integrated Siri AI

7   capabilities were materially false and misleading including because the advertised Enhanced Siri has

8   not yet been developed and is not available on the iPhones. But for Apple's materially false and

9   misleading promotion of the iPhone 16, Hackelman would not have purchased his iPhone 16 or

10  would have paid significantly less for it. As a result of Apple's conduct, Hackelman has been injured

11  through purchase and overpayment for the phone as it does not have the capabilities promised.

**OREGON**

13         295.    Plaintiff **Kaitlin Goodman** is a citizen of Oregon at all relevant times. On December

14  1, 2024, Goodman purchased an iPhone 16 online through her mobile carrier, AT&T, after viewing

15  pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to

16  the date of purchase.

17         296.    In particular, Goodman specifically recalls seeing and relying on Apple's social

18  media advertisements for the iPhone 16, statements Apple made at the 2024 WWDC, , billboards

19  advertising the "smarter Siri," and television commercials touting artificial intelligence productivity

20  features and Enhanced Siri's advanced capabilities, as well as other Apple advertisements marketing

21  the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a

22  brand new AI-powered personal assistant and defining innovation of the new iPhone series.

23         297.    Goodman reasonably interpreted the Apple Intelligence advertisements to mean that

24  the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

25  consistent with the widespread public understanding at the time based on Apple's pervasive

26  marketing campaign.

27         298.    Goodman believed Apple's advertisements regarding iPhone 16's Apple Intelligence

28  and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

AI personal assistant. At the time of purchase, Goodman no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

299.    However, after purchasing and setting up her phone, Goodman discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Goodman, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, ot have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Goodman has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

300.    Plaintiff **Taylor E. Oldfield-Zepeda** is a citizen of Oregon at all relevant times. On October 3, 2024, Oldfield-Zepeda purchased an iPhone 16 Pro from the Apple Store in Tigard, Oregon for approximately $1,099, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

301.    In particular, Oldfield-Zepeda recalls seeing and specifically relying on Apple's TV commercials, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

302.    Oldfield-Zepeda reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

303.    Oldfield-Zepeda believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Oldfield-Zepeda had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or

1  other explanatory statement or information on the Product's advertising and marketing that

2  contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

3      304.    However, after purchasing and setting up her phone, Oldfield-Zepeda discovered that

4  the phone did not have the promised features and is substantially inferior to what Apple advertised.

5  Unbeknownst to Oldfield-Zepeda, Apple's statements regarding the iPhone 16's integrated Siri AI

6  capabilities were materially false and misleading including because the advertised advanced Siri has

7  not yet been developed and is not available on the iPhones. But for Apple's materially false and

8  misleading promotion of the iPhone 16, Oldfield-Zepeda would not have purchased her iPhone 16

9  or would have paid significantly less for it. As a result of Apple's conduct, Oldfield-Zepeda has been

10  injured through purchase and overpayment for the phone as it does not have the capabilities

11  promised.

12  **PENNSYLVANIA**

13      305.    Plaintiff **Colton Lipchak** is a citizen of Pennsylvania at all relevant times. On

14  September 19, 2024, Lipchak purchased an iPhone 16 Pro from Apple's online store for

15  approximately $1,100, after viewing pervasive advertisements for the new iPhone 16 series that aired

16  between Summer 2024 and prior to the date of purchase.

17      306.    In particular, Lipchak  recalls seeing and specifically relying on Apple's television

18  and online advertisements that highlighted Enhanced Siri's supposedly new abilities to perform

19  actions across multiple applications, as well as other Apple advertisements marketing the iPhone

20  16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new

21  AI-powered personal assistant and defining innovation of the new iPhone series.

22      307.    Lipchak reasonably interpreted the Apple Intelligence advertisements to mean that

23  the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

24  consistent with the widespread public understanding at the time based on Apple's pervasive

25  marketing campaign.

26      308.    Lipchak believed Apple's advertisements regarding iPhone 16's Apple Intelligence

27  and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

28  AI  personal assistant. At the time of purchase, Lipchak had no reason to believe that Apple's

1   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

2   statement or information on the Product's advertising and marketing that contradicted his

3   understanding that the iPhone 16 would be equipped with Enhanced Siri.

4        309.   However, after purchasing and setting up his phone, Lipchak discovered that the

5   phone did not have the promised features and is substantially inferior to what Apple advertised.

6   Unbeknownst to Lipchak, Apple's statements regarding the iPhone 16's integrated Siri AI

7   capabilities were materially false and misleading including because the advertised Enhanced Siri has

8   not yet been developed and is not available on the iPhones. But for Apple's materially false and

9   misleading promotion of the iPhone 16,  Lipchak would not have purchased his iPhone 16 or would

10  have paid significantly less for it. As a result of Apple's conduct, Lipchak has been injured through

11  purchase and overpayment for the phone as it does not have the capabilities promised.

12       310.   Plaintiff **Connor McKee** is a citizen of Pennsylvania at all relevant times. On

13  February 1, 2025, McKee purchased an iPhone 16 Pro from a T-Mobile store in Philadelphia,

14  Pennsylvania, for $999.99, after viewing pervasive advertisements for the new iPhone 16 series that

15  aired between Summer 2024 and prior to the date of purchase.

16       311.   In particular, McKee recalls seeing and specifically relying on Apple's video

17  advertisements including the Bella Ramsey television commercial demonstrating an operable

18  Enhanced Siri helping Ramsey to remember someone's name, as well as other Apple advertisements

19  marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was

20  Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new

21  iPhone series.

22       312.   McKee reasonably interpreted the advertisements to mean that the Products would

23  be equipped with Enhanced Siri, and would have the advertised functionalities.

24  McKee believed Apple's advertisements regarding Apple Intelligence and Enhanced Siri to be

25  truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At

26  the time of purchase, McKee had no reason to believe that Apple's advertisements were false, and

27  did not notice any disclaimer, qualifier, or other explanatory statement or information on the

28

Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

314.    However, after purchasing and setting up his phone, McKee discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to McKee, Apple's statements regarding the Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16 Apple Intelligence AI-enabled features, McKee would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, McKee has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## RHODE ISLAND

315.    Plaintiff **Luke Grave** was a citizen of Rhode Island when he purchased the iPhone 16, and subsequently moved to Connecticut in April 2025. On October 1, 2024, Graves purchased an iPhone 16 Pro Max from his carrier, AT&T, for approximately $1,199.99 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

316.    In particular, Graves recalls seeing and specifically relying on various Apple advertisements and billboards touting the new Apple Intelligence features, especially ,Enhanced Siri's ability to perform advanced tasks across apps, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

317.    Graves reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

318.    Graves believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI  personal assistant. At the time of purchase, Graves had no reason to believe that Apple's

1   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

2   statement or information on the Product's advertising and marketing that contradicted his

3   understanding that the iPhone 16 would be equipped with Enhanced Siri.

4        319.    However, after purchasing and setting up his phone, Graves discovered that the phone

5   did not have the promised features and is substantially inferior to what Apple advertised.

6   Unbeknownst to Graves, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

7   were materially false and misleading including because the advertised Enhanced Siri has not yet

8   been developed and is not available on the iPhones. But for Apple's materially false and misleading

9   promotion of the iPhone 16, Graves would not have purchased his iPhone 16 or would have paid

10  significantly less for it. As a result of Apple's conduct, Graves has been injured through purchase

11  and overpayment for the phone as it does not have the capabilities promised.

12  **SOUTH CAROLINA**

13       320.    Plaintiff **Orlando Roddy** is a citizen of South Carolina at all relevant times. On or

14  around February 8, 2025, Roddy purchased an iPhone 16 Pro from his mobile carrier, Spectrum

15  Mobile, for approximately $999.00 after viewing pervasive advertisements for the new iPhone 16

16  series that aired between Summer 2024 and prior to the date of purchase.

17       321.    In particular, Roddy recalls seeing and specifically relying on Apple's television

18  advertisements depicting the new artificial intelligence features integrated into Enhanced Siri, as

19  well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence,

20  the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining

21  innovation of the new iPhone series.

22       322.    Roddy reasonably interpreted the Apple Intelligence advertisements to mean that the

23  Products would be equipped with Enhanced Siri and would have the advertised functionalities,

24  consistent with the widespread public understanding at the time based on Apple's pervasive

25  marketing campaign.

26       323.    Roddy believed Apple's advertisements regarding iPhone 16's Apple Intelligence

27  and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

28  AI personal assistant. At the time of purchase, Roddy had no reason to believe that Apple's

advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

324.    However, after purchasing and setting up his phone, Roddy discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Roddy, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Roddy would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Roddy has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

325.    Plaintiff **Jack Scalfani** is a citizen of Tennessee at all relevant times. On October 11, 2024, Scalfani purchased four iPhone 16 Pro Max's from AT&T for approximately $1,199.99 each, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

326.    In particular, Scalfani recalls seeing and specifically relying on Apple's advertisements for the iPhone 16 on social media as well as its representations at the WWDC 2024 showcasing  Apple Intelligence and Enhanced Siri including its ability to act intelligently on information from across multiple apps, as well as other Apple's subsequent advertisements marketing the iPhone 16's incorporation of the promised Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

327.    Scalfani reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

328.    Scalfani believed Apple's advertisements regarding Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI  personal

assistant. At the time of purchase, Scalfani had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

329.    However, after purchasing and setting up his phone, Scalfani discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Scalfani, Apple's statements regarding the Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Scalfani would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Scalfani has been injured through purchase and overpayment for the phone as it does not have the capabilities promised. has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

330.    Plaintiff **Adam Ragsdale** is a citizen of South Carolina at all relevant times. On or about September 13, 2024, Ragsdale preordered an iPhone 16 Pro Max from T-Mobile's online store for approximately $1,399.99 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

331.    In particular, Ragsdale  recalls seeing and specifically relying on Apple Intelligence advertisements it saw Apple promoting  "everywhere" in various places, including, but not limited to, during the 2024 WWDC keynote, on Apple's social media, and on Apple television advertisements in his home in South Carolina, as well as other Apple advertisements regarding the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

332.    Ragsdale reasonably interpreted the advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities.

333.    Ragsdale believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Ragsdale had no reason to believe that Apple's

1   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

2   statement or information on the Product's advertising and marketing that contradicted his

3   understanding that the iPhone 16 would be equipped with Enhanced Siri.

4          334.    However, after purchasing and setting up his phone, Ragsdale discovered that the

5   phone did not have the promised features and is substantially inferior to what Apple advertised.

6   Unbeknownst to Ragsdale, Apple's statements regarding the iPhone 16's integrated Siri AI

7   capabilities were materially false and misleading including because the advertised advanced Siri has

8   not yet been developed and is not available on the iPhone 16. But for Apple's materially false and

9   misleading promotion of the iPhone 16, Ragsdale would not have purchased his iPhone 16 or would

10  have paid significantly less for it. As a result of Apple's conduct, Ragsdale has been injured through

11  purchase and overpayment for the phone as it does not have the capabilities promised.

12                                         **TEXAS**

13         335.    Plaintiff **Matthew Floyd** is a citizen of Texas at all relevant times. On or about

14  December 20, 2024, Floyd purchased an iPhone 16 Pro online from his phone carrier Visible for

15  approximately $1,189.68, after viewing pervasive advertisements for the new iPhone 16 series that

16  aired between Summer 2024 and prior to the date of purchase.

17         336.    In particular, Floyd recalls seeing and specifically relying on various Apple ads, as

18  well as a promotional video from Apple highlighting the improved Enhanced Siri, as well as other

19  Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece

20  of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of

21  the new iPhone series.

22         337.    Floyd reasonably interpreted the Apple Intelligence advertisements to mean that the

23  Products would be equipped with Enhanced Siri and would have the advertised functionalities,

24  consistent with the widespread public understanding at the time based on Apple's pervasive

25  marketing campaign.

26         338.    Floyd believed Apple's advertisements regarding iPhone 16's Apple Intelligence and

27  Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI

28  personal assistant. At the time of purchase, Floyd had no reason to believe that Apple's

1   advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory

2   statement or information on the Product's advertising and marketing that contradicted his

3   understanding that the iPhone 16 would be equipped with Enhanced Siri.

4          339.    However, after purchasing and setting up his phone, Floyd discovered that the phone

5   did not have the promised features and is substantially inferior to what Apple advertised.

6   Unbeknownst to Floyd, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities

7   were materially false and misleading including because the advertised advanced Siri has not yet been

8   developed and is not available on the iPhones. But for Apple's materially false and misleading

9   promotion of the iPhone 16 Apple Intelligence AI-enabled features, Floyd would not have purchased

10  his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Floyd has

11  been injured through purchase and overpayment for the phone as it does not have the capabilities

12  promised.

13         340.    Plaintiff **Michael Dallas Gotschall** is a citizen of Texas at all relevant times. On or

14  around November 4, 2024, Gotschall purchased an iPhone 16 Pro from Visible for approximately

15  $999, after viewing pervasive advertisements for the new iPhone 16 series that aired between

16  Summer 2024 and prior to the date of purchase.

17         341.    In particular, Gotschall recalls seeing and specifically relying on Apple's video

18  advertisements including Apple's Bella Ramsey television commercial depicting an operable

19  Enhanced Siri helping Ramsey remember someone's name, Apple's 2024 WWDC presentation,

20  Apple's launch event for the iPhone 16, as well as other Apple advertisements marketing the iPhone

21  16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new

22  AI-powered personal assistant and defining innovation of the new iPhone series.

23         342.    Gotschall reasonably interpreted the Apple Intelligence advertisements to mean that

24  the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

25  consistent with the widespread public understanding at the time based on Apple's pervasive

26  marketing campaign.

27         343.    Gotschall believed Apple's advertisements regarding iPhone 16's Apple Intelligence

28  and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an

AI personal assistant. At the time of purchase, Gotschall had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

344.    However, after purchasing and setting up his phone, Gotschall discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Gotschall, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, Gotschall would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Gotschall has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

**UTAH**

345.    Plaintiff **Skyler Vincent Mamone Feldt** is a citizen of Utah at all relevant times. On October 3, 2024, Feldt purchased an iPhone 16 Pro Max from an Apple Store in Murray, Utah for approximately $1500 after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

346.    In particular, Feldt recalls seeing and specifically relying on a video advertisement featuring Bella Ramsey in which Ramsey asks Siri a question without referring to a calendar, and Siri (in seconds) searched applications and found an answer in a calendar and provided Ramsey with an answer. Feldt also recalls seeing other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

347.    Feldt reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

348.    Feldt believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Feldt had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

349.    However, after purchasing and setting up his phone, Feldt discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Feldt, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised Enhanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16 Apple Intelligence AI-enabled features, Feldt would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Feldt has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

350.    Plaintiff **Mukesh Jethwani** is a citizen of Utah at all relevant times. On September 13, 2024, Jethwani purchased an iPhone 16 Pro Max from Apple's online store for approximately $2,000.16, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

351.    In particular, Jethwani specifically recalls seeing and relying on a video advertisement featuring the Bella Ramsey in which Ramsey asks Siri a question and Siri quickly answers it by accessing the calendar and other information, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant.

352.    Jethwani reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

353.    Jethwani believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Jethwani had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

354.    However, after purchasing and setting up his phone, Jethwani discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Jethwani, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16 , Jethwani would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Jethwani has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## VIRGINIA

355.    Plaintiff **Nyrek Mason** is a citizen of Virginia at all relevant times. On September 25, 2024, Mason purchased an iPhone 16 from an Apple Store in Washington, D.C. for approximately $847, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

356.    In particular, Mason recalls seeing and specifically relying on Apple's television and YouTube advertisements, billboards, and Apple's online marketing materials, which demonstrated new artificial intelligence features, such as an improved and advanced Siri, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

357.    Mason reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

358.    Mason believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI powered personal assistant. At the time of purchase, Mason had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

359.    However, after purchasing and setting up his phone, Mason discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Mason, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16 , Mason would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Mason has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## WASHINGTON

360.    Plaintiff **Jacob Kicha** is a citizen of Washington at all relevant times. On January 5, 2025, Kicha purchased an iPhone 16 Pro from an Apple Store in Bellevue, Washington for approximately $1,211.10, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

361.    In particular, Kicha recalls seeing and specifically relying on Apple's WWDC presentation in June 2024, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

362.    Kicha reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

363.    Kicha believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Kicha had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

364.    However, after purchasing and setting up his phone, Kicha discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Kicha, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16 Apple Intelligence AI-enabled features, Kicha would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Kicha has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## WEST VIRGINIA

365.    Plaintiff **Kyra Burke** is a citizen of West Virginia at all relevant times. On February 28, 2025, Burke purchased an iPhone 16 from a T-Mobile store in Morgantown, West Virginia, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

366.    In particular, Burke recalls seeing and specifically relying on advertisements describing Enhanced Siri's enhanced capabilities, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

367.    Burke reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities,

consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

368.    Burke believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Burke had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted her understanding that the iPhone 16 would be equipped with Enhanced Siri.

369.    However, after purchasing and setting up her phone, Burke discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Burke, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhones. But for Apple's materially false and misleading promotion of the iPhone 16, , Burke would not have purchased her iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Burke has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## WISCONSIN

370.    Plaintiff **Clint Gammons** is a citizen of Wisconsin at all relevant times. On October 28, 2024, Gammons purchased an iPhone 16 Pro Max from a Spectrum store in Appleton, Wisconsin, after viewing pervasive advertisements for the new iPhone 16 series that aired between Summer 2024 and prior to the date of purchase.

371.    In particular, Gammons recalls seeing and specifically relying on Apple ads on TV and social media regarding Apple Intelligence and Enhanced Sirias well as the information Apple provided at the 2024 WWDC  regarding Apple Intelligence, specifically the information related to Enhanced Siri, as well as other Apple advertisements marketing the iPhone 16's incorporation of Apple Intelligence, the centerpiece of which was Enhanced Siri, a brand new AI-powered personal assistant and defining innovation of the new iPhone series.

372.    Gammons reasonably interpreted the Apple Intelligence advertisements to mean that the Products would be equipped with Enhanced Siri and would have the advertised functionalities, consistent with the widespread public understanding at the time based on Apple's pervasive marketing campaign.

373.    Gammons believed Apple's advertisements regarding iPhone 16's Apple Intelligence and Enhanced Siri to be truthful, and wanted to be one of the first owners of a smartphone with an AI personal assistant. At the time of purchase, Gammons had no reason to believe that Apple's advertisements were false, and did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's advertising and marketing that contradicted his understanding that the iPhone 16 would be equipped with Enhanced Siri.

374.    However, after purchasing and setting up his phone, Gammons discovered that the phone did not have the promised features and is substantially inferior to what Apple advertised. Unbeknownst to Gammons, Apple's statements regarding the iPhone 16's integrated Siri AI capabilities were materially false and misleading including because the advertised advanced Siri has not yet been developed and is not available on the iPhone 16. But for Apple's materially false and misleading promotion of the iPhone 16, Gammons would not have purchased his iPhone 16 or would have paid significantly less for it. As a result of Apple's conduct, Gammons has been injured through purchase and overpayment for the phone as it does not have the capabilities promised.

## B.  Defendant

375.    Defendant APPLE INC. is a California incorporated company headquartered at 1 Infinite Loop, Cupertino, California 95014. The Company designs, manufactures, and markets mobile communication and media devices, including the iPhone line of smartphones. Apple also sells a variety of software, services, and accessories for use with iPhones.

## III.  JURISDICTION AND VENUE

376.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The proposed Class consists of millions of individual purchasers nationwide. The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs.  At least one proposed Class Member is a citizen of a state different from Apple.

377.    This Court also has personal jurisdiction over Apple, which is incorporated under California law and is headquartered in Cupertino, California in Santa Clara County.

378.    Venue is proper in this Court under 28 U.S.C. § 1391. Apple resides in, and has its most significant contacts with, the Northern District of California, with its principal place of business located near San Jose in Cupertino, California. A substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district.

## IV.   INTRADISTRICT ASSIGNMENT

379.    Assignment to the San Jose Division is appropriate under Local Civil Rule 3-2(c) and (e). A substantial part of the events or omissions which give rise to the claims alleged herein occurred at Apple's headquarters, which is located in Santa Clara County.

## V.   FACTUAL ALLEGATIONS

### C.  Apple's History of Innovation

380.    Apple has a history of innovation. Its early inventions—Apple Computer I and II—revolutionized the personal computer market and enabled the company to go public four years after its founding in 1976.[18] After completely changing how people use and think about computers, the late Steve Jobs, Apple's founder and visionary, left the company in 1985.[19] Apple continued to enjoy initial success, but without the kind of innovation that made it successful in the first place, the company's financials started to suffer in the 1990s and it lost market share to competitors. In 1997, facing impending bankruptcy, Apple brought Jobs back into the fold, and he was reinstated as CEO.

381.    With Jobs back at the helm, Apple made several more ground-breaking inventions that helped Apple reestablish itself as a technology industry leader, but one product in particular cemented Apple as a true market-leader: the iPhone. First introduced at Apple's 2007 WWDC, the iPhone remains Apple's most popular product by sales revenue almost 20 years later. For the years

---

[18] Research Guides, *This Month in Business History: The Founding of Apple Computer, Inc.*, LIBRARY OF CONGRESS (Apr. 2008), https://guides.loc.gov/this-month-in-business-history/april/apple-computer-founded (last updated Apr. 2023); *see also* Will Meyer, *Fading Brilliance: Is Apple's Innovation Engine Running on Empty?*, MEDIUM (Jun. 9, 2023), https://medium.com/@geektogeek/fading-brilliance-is-apples-innovation-engine-running-on-empty-63e5c9477f30 (updated Nov. 2023).
[19] *Id.*

that followed the iPhone's invention, Apple continued to lead the market, launching a new generation of iPhone nearly once a year.

382.    Siri, a digital feature that recognized voice prompts using machine learning, was first introduced as an app that was made available on Apple's operating system in 2010. Apple acquired Siri and integrated it into the iPhone 4 in October 2011, forever coupling the iPhone with Siri. Apple made leaps and bounds in the smartphone market, and consumers and technology-enthusiasts soon came to eagerly anticipate and expect revolutionary technological advances with every iPhone launch. For the most part, Apple delivered.

383.    In the last few years, however, iPhone launches have garnered significantly less buzz both among regular consumers and technology-enthusiasts. Critics have attributed the relative lack of excitement to innovation stagnation at Apple. Newer generations of iPhones were regarded as containing only minor improvements over the previous generations. Given the lack of breakthrough innovation, many Apple consumers had begun deciding simply to keep their current series of iPhone rather than upgrade and purchase a new phone. Therefore, while Apple had historically enjoyed year-on-year growth in iPhone revenue, iPhone sales revenue declined for the first time in 2023.

**D.   Apple's Entry Into the AI "Arms Race"**

384.    In November 2022, OpenAI released ChatGPT, a technology shifting AI chatbot that sparked global public interest in artificial intelligence. The shift in the competitive landscape was quickly recognized in the market for smart phones. Deloitte, a professional services and consulting network, "predicts that the share of shipped gen[erative] AI-enabled smartphones could exceed 30% by the end of 2025."[20]

385.    Riding the wave of AI innovation and market demand, Google developed and released a new Pixel smartphone powered by Google's proprietary Gemini AI virtual personal assistant.[21] Apple's other primary competitor, Samsung, has also launched its Samsung Galaxy S25,

---

[20] *On-device generative AI could make smartphones more exciting—if they can deliver on the promise*, DELOITTE, https://www2.deloitte.com/us/en/insights/industry/technology/technology-media-and-telecom-predictions/2025/gen-ai-on-smartphones.html, *last accessed* May 29, 2025.

[21] *Google AI*, GOOGLE STORE, https://store.google.com/intl/en/ideas/categories/ai/, *last accessed* May 29, 2025.

which it advertises as "an AI powered, pocket-sized personal assistant designed to keep you organized and unstoppable."[22]

386.    As tech companies raced to develop AI technology, Apple struggled to keep up and was seen as "seemingly being lapped in the AI race."[23] Apple drew criticism for being slow to announce its AI strategy, much less deliver on one, while rivals such as Microsoft, Alphabet, Amazon, and Meta pulled ahead.[24]    Reportedly, Apple was "caught off guard" by the sudden consumer interest in AI[25] and experienced plunging sales as a result.[26]

387.    Apple knew that its customer base was increasingly interested in generative AI features. It also knew that its competitors were developing their own AI features at break-neck pace. In an effort to catch-up, in the first half of 2024, Apple was reported to be in talks with several companies regarding their AI models, including Google regarding Gemini and OpenAI regarding ChatGPT.[27] In June 2024, Apple announced that it had partnered with OpenAI to integrate ChatGPT into its operating software.

---

[22] *Galaxy AI,* SAMSUNG, https://www.samsung.com/us/galaxy-ai/, *last accessed* May 29, 2025.
[23] *Everyone is a loser in the Apple Intelligence race,* APPLEINSIDER (Mar. 11, 2025), https://appleinsider.com/articles/25/03/11/everyone-is-a-loser-in-the-apple-intelligence-race.
[24] *Apple Intelligence has failed to boost iPhone sales*, MSN (Jan. 11, 2025), https://www.msn.com/en-us/technology/artificial-intelligence/apple-intelligence-has-failed-to-boost-iphone-sales-ming-chi-kuo/ar-BB1rhczl?ocid=BingNewsVerp.
[25] Mark Gurman, *Inside Apple's Big Plan to Bring Generative AI to All Its Devices*, BLOOMBERG (Oct. 22, 2023), https://www.bloomberg.com/news/newsletters/2023-10-22/what-is-apple-doing-in-ai-revamping-siri-search-apple-music-and-other-apps-lo1ffr7p (stating, "Apple largely sat on the sidelines when OpenAI's ChatGPT took off like a rocket last year. . . . I can tell you in no uncertain terms that Apple executives were caught off guard by the industry's sudden AI fever and have been scrambling since late last year to make up for lost time.")
[26] Samantha Murphy Kelly, *iPhone sales are plunging. Here's why*, CNN (Apr. 16, 2024), https://www.cnn.com/2024/04/15/tech/iphone-sales-plunging/index.html (stating, "Apple has not articulated a strong message about artificial intelligence, at a time when many tech companies are doubling down on related strategies and features.")
[27] *See* Martin Coulter, *Apple in talks to let Google's Gemini power iPhone AI features, Bloomberg News says*, REUTERS (Mar. 18, 2024), https://www.reuters.com/technology/apple-talks-let-googles-gemini-power-iphone-ai-features-bloomberg-news-says-2024-03-18/; *see also Apple renews talks with OpenAI for iPhone generative AI features, Bloomberg News reports*, REUTERS (Apr. 26, 2024), https://www.reuters.com/technology/apple-renews-talks-with-openai-iphone-generative-ai-features-bloomberg-news-2024-04-26/.

### E.  Apple Introduces "Apple Intelligence" and Enhanced Siri

388.    Soon after, Apple announced its brand-new artificial intelligence offering, named "Apple Intelligence," at its annual WWDC on June 10, 2024.[28]

389.    WWDC is one of the most highly anticipated and widely publicized technology events in the United States each year. Consumers, investors and media outlets tune in virtually or otherwise closely follow the conference to learn if Apple will be releasing anything new and noteworthy, especially in advance of a new iPhone series, expected each Fall.

390.    Product announcements made at WWDC also make national headlines, with widespread coverage across primetime TV, cable news, national and local newspapers, radio, podcasts, the blogosphere, and more. Apple carefully selects, curates, and choreographs its messaging, aware that it will be repeated and amplified around the world by newscasters, newsmakers, and everyday consumers. Apple has long understood its ability to dominate the national dialogue each year at this time.

391.    With iPhone sales declining in recent years and the 16 series coming that Fall, Apple also knew that it needed a breakthrough innovation to reignite market enthusiasm and drive new purchases and upgrades. The 2024 WWDC made clear that Apple's answer was "Apple Intelligence."

392.    At the event, Apple CEO Tim Cook and the rest of the Apple Team devoted an outsized amount of time to touting the capabilities of Apple Intelligence. According to the company, Apple Intelligence was a new grouping of generative AI tools for its upcoming lineup of Apple devices—such as the new iPhone 16 series, as well as forthcoming laptops, desktop computers, and tablets.

393.    Central to these capabilities was Enhanced Siri: an on-device, AI personal assistant said to offer, "richer language understanding capabilities," deliver "natural, more contextually relevant, and more personal" interactions, and capable of "simplif[ying] and accelerat[ing] everyday tasks [.]"

---

[28] *WWDC24 Highlights*, APPLE, https://nr.apple.com/dF1k5h1Ft2, *last accessed* June 4, 2025.

394.    Craig Federighi, Senior Vice President of Software Engineering at Apple, introduced a segment on Apple Intelligence by stating that "[t]his is a moment we've been working towards for a long time."[29] He described Apple Intelligence as "the personal intelligence system that puts powerful generative models right at the core of your iPhone, iPad, and Mac. It draws on your personal context to give you intelligence that is most helpful and relevant to you. . . . And it is deeply integrated into our platforms and throughout the apps you rely on to communicate, work, and express yourself."[30]

395.    Federighi continued, explaining that Apple "designed Apple Intelligence so it can tap into [the applications consumers use daily] **and carry out tasks on your behalf.** So you can say things like: 'Pull up the file that Joz shared with me last week,' or 'Show me all the photos of Mom, Olivia, and me,' or 'Play the podcast that my wife sent the other day.' We are designing Apple Intelligence to be able **to orchestrate these and hundreds of other actions for you**[.]"[31]

396.    Federighi then explained how it all, supposedly, works: "Apple Intelligence is grounded in your personal information and context, with the ability to retrieve and analyze the most relevant data from across your apps, as well as to reference the content on your screen, like an email or calendar event you are looking at."[32]

397.    In another example of Apple Intelligence's abilities, Federighi hypothesized that he had a work meeting that may prevent him from reaching his daughter's theater performance on time. He explained that "Apple Intelligence can process the relevant personal data to assist me. It can understand who my daughter is, the relevant play details she sent several days ago, the time and location for my meeting, and predicted traffic between my office and the theater."[33]

398.    Likewise, Kelsey Peterson, Apple's Director of Machine Learning and AI, detailed how Enhanced Siri would be the vehicle for these remarkable new capabilities, explaining: "Imagine that I am planning to pick my mom up from the airport, and I'm trying to figure out my timing. Siri

---

[29] Apple, *WWDC 2024*, YOUTUBE (Jun. 10, 2024), https://www.youtube.com/watch?v=RXeOiIDNNek (quoted language at 1:06:40).
[30] *Id.* (quoted language at 1:07:07).
[31] *Id.* (quoted language at 1:10:13).
[32] *Id.* (quoted language at 1:10:45).
[33] *Id.* (quoted language at 1:11:15).

is going to be able to help me do this so easily. Siri, when is my mom's flight landing? What's awesome is that Siri actually cross-references flight details that my mom shared with me by email with real-time flight tracking to give her me up-to-date arrival time. . . . That's just a glimpse of the ways in which Siri is going to become more powerful and more personal thanks to Apple Intelligence."[34]

399.    Federighi concluded by stating that Apple Intelligence will be available to try out in English this fall. "We are bringing it to users in beta as part of iOS 18, iPad OS 18, and MacOS Sequoia this fall, with some features and additional languages and platforms coming out over the course of the next year."[35]

400.    While Apple mentioned Apple Intelligence features other than Enhanced Siri, none depicted truly advanced AI functionality. As Wall Street journalist Joanna Stern observed, "[Apple] said Apple Intelligence around 60 times," but in reality, "[s]ome of these intelligence announcements are just table stakes[;] Samsung and Google already have them."[36]

401.    Enhanced Siri, however, was different, set to "break new ground," and particularly exciting for consumers. That's because "[e]ver since Siri's birth, Apple has been promising that it can do things for you just by asking. Not exactly yet. Maybe now is Siri's moment. The assistant is getting smarter at what it can do with your personal information. . . The big thing is that you can now type to Siri, making it much more like a chat bot, but unlike those other chat bots, Apple is making the point that Siri knows all about you and your personal info, it eventually will be able to understand what appears on your screen. You can ask Siri to find something even if you don't remember if it's in a message, email, or note, and it can work across apps or for times when you are filling out a form and need to input your driver's license, Siri will be able to find a photo of your license, extract your ID number and type it into the form for you…."

---

[34] *Id*. (quoted language at 1:22:15).
[35] *Id.* (quoted language at 1:40:55) (emphasis added).
[36] *Apple Intelligence, New Siri in iOS 18: Apple's Big AI Push at WWDC 2024*, WALL STREET JOURNAL (June 10, 2024), https://www.wsj.com/video/series/joanna-stern-personal-technology/apple-intelligence-new-siri-in-ios-18-apples-big-ai-push-at-wwdc-2024/FD50299F-678B-409A-B4D8-CE0F4AEED862?msockid=2f5e429e81c7677423a257bf802966ca

402.    Consumers reasonably understood the advanced Apple Intelligence features Apple heavily promoted at the WWDC, including Enhanced Siri, would be available with the next released iPhone. This was consistent with Apple's well-established pattern of introducing major innovations at the WWDC and then launching them on a new iPhone series in the fall.[37]

403.    Apple reinforced these expectations with its press release issued on the same day, introducing Apple Intelligence to the world and declaring that "Siri Enters a new Era[.]"[38] Apple stated: "Powered by Apple Intelligence, Siri becomes more deeply integrated into the system experience. With richer language-understanding capabilities, Siri is more natural, more contextually relevant, and more personal, with the ability to simplify and accelerate everyday tasks."[39]

404.    Apple touted that Enhanced Siri, powered by Apple Intelligence, could search your phone for messages from specific individuals—including email, text, and other messaging apps—locate the name of podcasts, and immediately search for and begin playing the podcast on the consumer's default podcast application.[40] Apple reiterated: with Apple Intelligence, "Siri **can now** take hundreds of new actions in and across apps, including finding book recommendations sent by a friend in Messages and Mail."[41] Apple stressed these features were unique to Apple and could only be enjoyed through the purchase of its newest products. As Tim Cook put it, "this is AI as only Apple can deliver it, and we can't wait for users to experience what it **can** do."[42]

---

[37] *See* fn. 13, *supra*, NAD Decision, p. 5: "Apple typically announces new features over the Summer and rolls out those features in the Fall. Here, Apple announced in June 2024 that Apple Intelligence would be coming with the launch of the iPhone 16 and iPhone 16 Pro in September 2024."
[38] Apple Newsroom, *supra* note 9.
[39] *Id*.
[40] *Id*.
[41] *Id*.

**Screenshot from Apple's official website announcing Apple Intelligence, June 10, 2024**



Apple Intelligence — the personal intelligence system for iPhone, iPad, and Mac — combines the power of generative models with personal context to deliver intelligence that's useful and relevant to the user.

### F. Apple Deliberately Leveraged Media Hype Strategically Amplifying Their Misrepresentations

405.    Apple's AI marketing strategy worked. The announcements at WWDC created a media frenzy across tech blogs, traditional outlets, and social platforms.

406.    For example, *TechCrunch* headlined Apple Intelligence as "the company's new generative AI offering" and quoted CEO Tim Cook's remarks from the WWDC keynote that "[a]ll of this goes beyond artificial intelligence. It's personal intelligence, and it's the next big step for Apple."[42]

407.    Likewise, CNN reported that Apple Intelligence would revolutionize consumers' use of iPhones, "Apple is embracing generative AI – the buzzy form of artificial intelligence that can

---

[42] Brian Heater, *Apple Intelligence is the company's new generative AI offering*, TECHCRUNCH (June 10, 2024), https://techcrunch.com/2024/06/10/apple-intelligence-is-the-companys-new-generative-ai-offering/.

provide thoughtful and thorough responses to questions – through Siri . . . essentially turning it into an iPhone chatbot."[43]

408.    CNBC said, "Apple announced that Siri can tap into OpenAI's ChatGPT when needed. The Company said it wanted users to be able to tap into external models. Siri will ask if you want to share your question with ChatGPT and then will return suggestions from the OpenAI chatbot. ChatGPT is also built into systemwide writing tools. So, for example, Apple said you can create a bedtime story for a child and add images created by ChatGPT."[44] Hundreds of similar articles were written heralding this new era for Apple.

409.    Morgan Stanley's November 2024 AlphaWise Smartphone survey revealed that advanced AI features rank highly as a reason consumers might consider an upgrade.[45] Unsurprisingly, Plaintiffs and the Class were eager to purchase the iPhone 16 with the groundbreaking new Siri.

410.    Apple knew that its announcements at WWDC would drive consumer demand for the iPhone 16, and it did. What Apple also knew, however, was that it was selling vaporware. AI functionality it promoted did not exist. Despite extensive news coverage amplifying its misrepresentations, Apple failed to correct coverage or otherwise inform the public that Enhanced Siri was not an already or soon-to-be-existing product, but rather a far-off aspiration.

411.    As former Apple product marketer turned analyst Michael Gartenberg would later remark: "If ever there's been an example of over-promising and under-delivering, it's Apple Intelligence."[46]

### G.  Apple Launches iPhone 16, Doubling Down on its False AI Claims

412.    On September 9, 2024, Apple hosted "It's Glowtime" launch event for the iPhone 16. Anytime Apple introduces a new iPhone, it makes national news, and this time was no different. As

---

[43] Samantha Murphy Kelly, *Everything Apple announced at its big AI event*, CNN (June 11, 2024), https://www.cnn.com/2024/06/10/tech/apple-ai-next-big-thing/index.html.
[44] Todd Haselton, *Siri will tap into OpenAI's ChatGPT and will be free*, CNBC (June 10, 2024), https://www.cnbc.com/2024/06/10/apple-wwdc-live-updates.html.
[45] Brandon Evans, *Apple estimates lowered on tariffs, Siri update delay: Morgan Stanley*, SEEKING ALPHA, (Mar. 12, 2025) https://seekingalpha.com/news/4419782-apple-estimates-lowered-on-tariffs-siri-update-delay-morgan-stanley.
[46] Tripp Mickle, *What's Wrong With Apple?*, NEW YORK TIMES (April 11, 2025), https://www.nytimes.com/2025/04/11/technology/apple-issues-trump-tariffs.html.

1  it did with WWDC 2024, the flood of media attention amplified the core message of the series 16

2  launch: Apple Intelligence and Siri's new era as an AI personal assistant was here.

3      413.    At the event, Apple spotlighted Apple Intelligence and its centerpiece Enhanced Siri

4  in various ways. Senior Vice President Craig Federighi stated:  the iPhone is a "part of so many

5  things that make you – you, like your relationships and messages, your photos and memories, your

6  calendar, notes and more." He continued: "Now we're bringing together that personal context with

7  the power of generative models to deliver intelligence that understands you, and we are doing it in a

8  way that protects your privacy."[47]

9      414.    Federighi added that "Apple Intelligence" is "the personal intelligence system **at the**

10  **heart of the iPhone 16 lineup**, with the ability to understand and create language as well as images

11  and **take action on your behalf to simplify daily tasks, and each of these powerful capabilities**

12  **is grounded in your personal content.**"[48] He reinforced, "Apple Intelligence **marks the start of a**

13  **new era for Siri,** and makes it more natural, more contextually relevant, and more personal to you

14  with richer language understanding."[49]

15      415.    Apple also explained the breakthrough innovation through real examples, such as:

16  "So when your friend texts you about a new album, you'll be able to simply say, 'play that' . . . and

17  it will be able to take hundreds of new actions in your apps . . ." "[Y]ou'll be able to simply say,

18  'send Erica the photos from Saturday's barbecue,' and Siri will dig up the photos and send them

19  right off with new ways to express yourself and relive memories, along with tools to help you

20  prioritize and focus so you can get more done."[50]

21      416.    Concurrent with the September launch event, Apple issued a press release[51]

22  announcing the iPhone 16 series. The press release lechoed promises made during the launch

23  presentation.

24

---

25  [47] Apple, *Apple Event – September 9*, YOUTUBE (Sep. 9, 2024),
https://www.youtube.com/watch?v=uarNiSl_uh4&t=2393s (quoted language at 47:26).

26  [48] *Id.,* (quoted language at 47:51).
[49] *Id.* (quoted language at 52:34).

27  [50] *Id.* (quoted language at 53:56)

28  [51] *Apple introduces iPhone 16 and iPhone 16 Plus*, INTERNET ARCHIVE,
https://web.archive.org/web/20250710120307/https://www.apple.com/newsroom/2024/09/apple-introduces-iphone-16-and-iphone-16-plus/.

417.    Apple proclaimed that the "iPhone 16 and iPhone 16 Plus mark the beginning of a new era for iPhone with Apple Intelligence delivering powerful, personal, and private experiences for our users."

418.    With respect to Enhanced Siri, it announced, "Siri becomes more deeply integrated into the system experience" and "[w]ith richer language-understanding capabilities, communicating with Siri is more natural and flexible. . . . Siri also now has extensive product knowledge to answer thousands of questions about features on iPhone and other Apple devices."

419.    Apple further touted that a release scheduled for later in 2024 would give Enhanced Siri the ability to "draw on a user's personal context to deliver intelligence that is tailored to them" and "gain onscreen awareness to understand and take action with users' content, as well as take hundreds of new actions in and across Apple and third-party apps."

420.    While Apple indicated minor features would arrive later (such as Image Playground), there was no indication that the much-heralded Enhanced Siri would be unavailable until *years later*, as is now clear.  Instead, Apple reinforced the early arrival of Enhanced Siri with the iPhone release and its Apple Intelligence features: "Coming with the first set of Apple Intelligence features, Siri becomes more natural, contextually relevant, and personal, with an elegant glowing light that wraps around the edge on the screen when active."

421.    The misleading press release was also consistent with Apple's broader advertising campaign, including the Ramsey ad depicting an operable Enhanced Siri. As the National Advertising Division would later underscored in ultimately deeming Apple's campaign misleading, Apple "highlight[ed], in particular, the anticipated updates to Siri's functionality."[52] Across media channels and advertising, Apple repeatedly reinforced that its "Apple Intelligence" and the transformation Siri with "richer language-understanding capabilities," understanding of your personal content and ability to take data and cross reference with various applications would be available with the series 16 launch.

422.    The launch event and surrounding campaign resonated. Reporters got the message Apple was sending, and ran with it, declaring on launch day: **"Apple's iPhone 16 is Worth the**

---

[52] *See  fn.* 14, *supra*, NAD Decision, p. 5.

**Upgrade Thanks to a Much Smarter AI Siri.**"[53] It is therefore no surprise that following the series 16 launch, first-weekend pre-orders were estimated at around 37 million units and continued steadily growing nationwide. [54]

423.    As with WWDC, the iPhone 16 launch reaffirmed Apple's deceptive messaging that consumers were getting a revolutionary new device powered by a next-generation AI assistant. In truth, promised features did not exist.

**H. The "Ramsey Ad" – Apple Doubles down on its False And Misleading iPhone 16 Marketing Campaign**

424.    Concurrent with Apple's September launch event heralding the new iPhone 16, Apple Intelligence, and Siri's new era, Apple also introduced a new series of high-profile advertisements featuring actor Bella Ramsey  to show Enhanced Siri "in action."

425.    In one (the "Ramsey Ad"), Apple depicts actor Ramsey in a hallway, catching sight of an acquaintance whose name they have forgotten. In the moments before the "guy" spots Ramsey, Ramsey asks: "Siri, what's the name of that guy I had a meeting with a couple months ago at Café Grenel?"[55]

426.    Just in time, Enhanced Siri responds: "You met Zac Wingate at Café Grenel."

[53] Robert Leedham, *Apple's iPhone 16 Is Worth the Upgrade Thanks to a Much Smarter AI Siri*, GQ (Sept. 9, 2024), https://www.gq.com/story/apple-iphone-16.
[54] Tripp Mickle, *Apple's Revenue Increases 4 Percent Despite Slowing iPhone Sales*, THE NEW YORK TIMES (Jan. 30, 2025), https://www.nytimes.com/2025/01/30/technology/apple-quarterly-earnings-profit.html.

[55] QuirkyFilms, *Bella Ramsey - iPhone 16 Pro Apple Intelligence (2024) 'Zac,'* YOUTUBE (Sept. 25, 2024), https://www.youtube.com/watch?v=IIOw69HztX0.



427.    In the ad, Zac Wingate is pleasantly surprised that Ramsey remembers him, and while Ramsey pretends to have recognized him organically, the text appears on the screen, reading: "More personal Siri[.]"



428.    In small text, in a faint font, at the bottom of the advertisement, Apple states: "Apple Intelligence coming fall 2024 with Siri and device language set to U.S. English. Some features and languages will be coming over the next year." To the extent noticed by consumers, this underscored

that the features would be delivered as represented, including that "Siri" (reasonably, as featured) would even have its language device preset to English.

429.    The Ramsey Ad also concludes with a series of unequivocal blank screens with sharp eye-catching contrast and reading, first, "Hello, Apple Intelligence" followed by, "iPhone 16 Pro[.]"

430.    Consumers reasonably understood the Ramsey ad and the appearing statements "Apple Intelligence coming fall 2024" to mean that iPhone 16 line up would be equipped with Enhanced Siri—the centerpiece of the WWDC 2024, the iPhone 16 launch press, and depicted as operable in the ad itself.

431.    These representations were false and misleading. Consumers reasonably understood them to mean Enhanced Siri was a real, working feature that would be delivered with their iPhone 16, which was, in Apple's words, the "first phone built for Apple Intelligence." No reasonable consumer would understand Apple's advertising to mean Enhanced Siri would come two years later if at all. This is consistent with what the National Advertising Division would later note—that one of the claims consumers would take from the Ramsey Ad was as follows: "The video demonstration found in the 'More Personal Siri' commercial accurately depicts the performance of Siri features as currently available."[56]

432.    The Ramsey Ad featuring a working Enhanced Siri first aired at or near the same time Apple launched the iPhone 16 for sale. Apple invested heavily in its production and distribution. It tapped Emmy Award winner David Shane to direct it with support from Academy Award-winning cinematographer Erik Messerschmidt. Apple reportedly spent tens of millions on it, running the ad repeatedly across broadcast TV, live in cinemas, online, and across social media.

433.    It also received widespread media and other coverage given that Apple decided to have one of the most noteworthy, upcoming, and buzzworthy young actors star in it, Bella Ramsey, of *Game of Thrones* and *The Last of Us* fame.

434.    As one article explained, commenting on Apple's campaign and its strategic use of celebrity influence: "Apple knows how to play the celebrity game. By bringing Bella Ramsey into

---

[56] *See fn.* 14, *supra*, NAD Decision, p. 2: "The video demonstration found in the "More Personal Siri" commercial1 accurately depicts the performance of Siri features as currently available."

the mix, *they're* not just promoting a product—they're **creating a moment that sticks with you.** It's smart marketing, plain and simple.[57]

435.    The ads began appearing in September 2024 to coincide with Apple's "It's Glowtime" launch event for the series 16 iPhone. It ran in markets across the United States on national television, online platforms, social media, and more. Apple aired it during high-visibility events like the baseball playoffs and NFL season, in particular the ad demonstrating a working version of Enhanced Siri. Apple also aired it during wildly popular shows like the Kelly Clarkson Show, which is watched by millions of households daily. The Ramsey Ad gained massive visibility, with hundreds of millions of impressions on TV alone.

436.    YouTube and other popular streaming platforms also hosted the Ramsey Ad, and it was shared virally across social media platforms given the prominence of its starring actress and the public's excitement over AI. Apple even paid to have it air live in cinemas prior to blockbuster movies in theaters at that time.

437.    As a result, the market became further saturated with the key iPhone 16 message: Apple Intelligence and Siri's new era as an AI personal assistant was here. This drove intense demand for the new iPhones that Apple had not seen in recent years given the stagnation of innovation prior to this release. The effort Apple began at WWDC 2024 to convince consumers to upgrade to the iPhone 16 at a premium price and distinguish itself from competitors in the AI race paid off, with millions taking the bait.

438.    The Ramsey Ad depicted a clearly operable Enhanced Siri. But like Apple's iPhone 16 other advertisements during this period, it did not reasonably inform consumers that Apple intended to launch the iPhone 16 *without* Apple Intelligence or its centerpiece, Enhanced Siri. In truth Apple had not yet even developed a reliable working version of that much heralded feature.

439.    The small text at the bottom of the screen also does not alter Apple's promises and representations for several reasons. If even detected by consumers as compared to the more prominent messaging, the text in fact confirms that Apple Intelligence—the product Ramsey is

---

[57] Arman Lorenzo Burias, *'Last of Us' Star Bella Ramsey Uses Apple Intelligence in iPhone 16 Pro Ad*, DESIGNRUSH (Oct. 15, 2024), https://www.designrush.com/news/bella-ramsey-uses-apple-intelligence-in-iphone-16-pro-ad. (emphasis added)

supposedly relying on in the advertisement—would be available for Siri- and Apple Intelligence-compatible devices, including the iPhone 16, set to U.S. English in fall 2024, and coinciding with the Fall launch.

440.    No reasonable consumers would understand the statement that "some features and languages will be coming over the next year" to mean that the "More personal Siri" assistant—the entire subject of the Ramsey Ad—would be unavailable upon launch of the iPhone 16, much less one, two, or more years later.

441.    This is confirmed by the Ramsey Ad's final lines: "Hello, Apple Intelligence. iPhone 16 Pro[.]" Reasonable consumers understood this to mean that the iPhone 16 would ship with Apple Intelligence enabled and that, while Apple may upgrade features and add new languages, *at the very least* the features depicted as working in Apple's advertisements, including the "more personal Siri" would be functional at launch.

442.    The statements made in that commercial were false on their own, and like the rest of Apple's marketing for the iPhone 16, misled consumers into thinking the iPhone 16 would have features it (still) does not have. Throughout the Fall, Apple continued to make confusing and misleading statements, further deceiving markets and creating a false pretense that festered into a broader false understanding. But for these ongoing misrepresentations and misleading statements, millions of purchasers would not have upgraded, traded for, or purchased an iPhone 16.

443.    Ultimately, the Ramsey Ad was pulled from YouTube on March 10, 2025, three days after Apple came clean that Enhanced Siri did not exist and never had. But Apple heavily broadcasted the Ramsey Ad for at least seven months, knowing from the outset that its contents were materially false and misleading. Apple also kept the ad in distribution long after company insiders reported being increasingly concerned about the market deception.

444.    Apple knew that it could not deliver Enhanced Siri by 2024, or even 2025. Consistent with smartphone market research, however, Apple also knew Enhanced Siri was the primary reason consumers were electing to purchase or upgrade to the new iPhone series. So to maintain its mirage of innovation, and sell more iPhones, Apple continued to publish the advertisement and take advantage of its viral status, while actively concealing the truth.

## I.  "Apple Intelligence" and "New Era of Siri" Pervasive Advertisements

445.    Following a flood of advertisements and media coverage, pre-orders for the Apple Intelligence-enhanced iPhone 16 models, including the iPhone 16, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, opened on Friday, September 13, 2024, and these iPhone models were available for in-store purchase one week later.

446.    The following advertisements appeared persistently on Apple's website, social media, YouTube, online, and/or in physical Apple retail stores/authorized re-sellers of Apple phones, and/or during events & keynotes posted by Apple online: [58]



---

[58] On around September 20, 2024, the line "available starting 9/20" or "coming this fall" changed to "Apple Intelligence available now."









447.    The leading headline across countless advertisements was "iPhone 16 Hello, Apple Intelligence," "coming this fall [2024]" or "available now" Consistent with Apple's otherwise pervasive campaign and product launch events, consumers reasonably understood this to mean that Siri had undergone its significant transformation, evolving from a basic voice prompt into a truly intelligent, contextually aware, and highly capable personal assistant.

448.    Apple's landing page for iPhone 16, under "Apple Intelligence. AI-opening possibilities" (in smaller font:) "coming this fall," also contained a section dedicated to the "new era for Siri," under which in bold, Apple represented "**[w]ith all-new superpowers, Siri will be able to assist you like never before.**"

449.    The first image of the iPhone 16, appearing prominently on the "New Era for Siri" section of the website  for "Apple Intelligence" depicted Siri's capabilities of recalling a mother's email where she said, "Hey honey, flight's all set" and provided details, to let the Enhanced Siri user

know "Your mom's flight is arriving on September 9th at 4:35 pm." Under the depicted photograph of the iPhone 16, Apple promised: "Awareness of your personal context enables Siri to help you in ways that are unique to you. Need your passport number while booking a flight? Siri can help find what you're looking for, without compromising your privacy."



450.     Similar Siri capabilities appeared not only on Apple's "Apple Intelligence" page, but also across media campaigns, and in retail stores depicting Enhanced Siri's ability not only to recall your "mom's flight" but also check the flight data, and let you know that it was "En Route," it's arrival time, as well as the precise terminal.



Siri is able to deliver intelligence that's tailored to the user and their on-device information, like locating details on an upcoming flight or keeping track of a dinner reservation.

### J.  Purchasers Expressed Their Frustration While Apple Continued To Mislead The Public.

451.     Starting approximately September 20, 2024, consumers began receiving their iPhone 16 series. After setting up their new iPhones, purchasers discovered advertised features did not exist. Disappointed, purchasers voiced surprise and frustration.  For example:

"Just trade[d] in my iPhone 12 Pro Max for the 16 expecting it to have all the features that were advertised with Apple Intelligence. But instead I got a phone virtually the same as my 12 with a bit of a hardware upgrade."[59]

"**I would have never upgraded had I known this phone would not have those features.** I'm highly disappointed and feel like I was scammed"[60]

"Every commercial on TV is broadcasting the 16 model with Apple Intelligence. I understand Apple is not advertising it on their website that it's available yet but people don't necessarily buy their phones by reading the fine print on the Apple website. They are buying their phones through social media and television commercials that are promoting the phone with this feature and it is not available yet so it's frustrating."[61]

452.    On October 28, 2024, Apple responded by doubling down, announcing that Apple Intelligence was now available on all iPhones, iPads, and Mac devices, stating, "Users can now tap into Apple Intelligence to refine their writing; summarize notifications, mail, and messages; experience a more natural and capable Siri; remove distracting objects from images with Clean Up; and more."[62] This, again, recreated an expectation that Enhanced Siri was available and would be delivered with the iPhone 16. Again, however, the promised Siri never came.

453.    In response to the October 29, 2024, release, the press again went abuzz with the promise of Apple Intelligence landing on new iPhones, amplifying Apple's fraud. Quoting  Tim Cook, *PCMag* reported that: "Apple Intelligence introduces a new era for iPhone, iPad, and Mac, delivering brand-new experiences and tools that will transform what our users can accomplish" and "Apple Intelligence builds on years of innovation in AI and machine learning to put Apple's generative models at the core of our devices, giving our users a personal intelligence system that is easy to use."[63]

---

[59] *See, e.g.,* Apple Support Community*, Why is the Apple Intelligence not included on my iPhone 16?* APPLE (Oct. 2, 2024), https://discussions.apple.com/thread/255784851?sortBy=rank.
[60] *Id.* (comment dated Oct. 24, 2024).
[61] *Id.* (comment dated Oct. 25, 2025).
[62] Apple Newsroom, *supra* note 11.
[63] Emily Forlini, *Hands On With Apple Intelligence in iOS 18.1: Here's What You Get Right Now*, PCMAG (Oct. 28, 2024), https://www.pcmag.com/news/apple-intelligence-launches-with-ios-181-heres-what-you-get.

454.    Apple purchasers continued to rely on Apple's promises regarding Apple Intelligence's functionality, which enticed consumers to purchase new iPhones on the expectation that they would receive heavily-advertised features such as Enhanced Siri that, in truth, did not exist.

### K.  March 7, 2025 – Apple Finally Admits Its Deception

455.    Unbeknownst to consumers, when Apple showcased its Apple Intelligence features at WWDC, subsequently at the iPhone 16 series launch, and otherwise through nationwide commercials, ad campaigns, and its website, Enhanced Siri did not exist. An early prototype was reportedly barely functional.

456.    Siri's Senior Director Robby Walker ("Walker") recently acknowledged to Apple employees that the delays in delivering the promised functionality were particularly "ugly," especially because Apple had already publicly showed off the features, including in the high-profile Ramsey Ad.[64] "This was not one of these situations where we get to show people our plan after it's done," he said. "We showed people before."[65]

457.    According to *Bloomberg's* Mark Gurman in March 2025, Apple executives had internally expressed strong concerns that the features didn't work properly—or as advertised—in their own testing. Some in Apple's AI division reportedly speculated that the AI features might have to be scrapped altogether, and that Apple may have to rebuild functions from scratch, including the highly-publicized Enhanced Siri.[66] The promised capabilities would therefore be even further delayed.[67]

458.    During an all hands meeting for the Siri division, Walker also warned of further delays, citing competing internal priorities: "We have other commitments across Apple to other projects . . . and we understand those are now potentially more timeline-urgent than the features that have been deferred." He added, "[c]ustomers are not expecting only these new features, but they

---

[64] Mark Gurman, *Hands On With Apple's Siri Chief Calls AI Delays Ugly and Embarrassing, Promises Fixes*, BLOOMBERG (Mar. 14, 2025), https://www.bloomberg.com/news/articles/2025-03-14/apple-s-siri-chief-calls-ai-delays-ugly-and-embarrassing-promises-fixes?embedded-checkout=true.
[65] *Id.*
[66] *Id.*
[67] *Id.*

1    also want a more fully rounded-out Siri,"[70] as had been promised and publicly demoed months

2    before.

3        459.    Behind the scenes, by late March 2025, Apple had quietly undergone a significant

4    leadership change in response to Apple's failure to deliver Enhanced Siri with the iPhone 16 series.

5    Former AI head, John Giannandrea ("Giannandrea") was sidelined and replaced by Apple Vision

6    Pro creator, Mike Rockwell ("Rockwell").[68] According to Gurman, "Chief Executive Officer Tim

7    Cook has lost confidence in the ability of AI head John Giannandrea to execute on product

8    development."[69] Rockwell was moved to report to Craig Federighi, the head of the software

9    department, completely removing Siri from Giannandrea's command.[70]

10       460.    This leadership change signaled Apple's internal acknowledgement of its failure to

11   fulfill its promises on which iPhone 16 purchasers relied. The move "underscore[d] the plight facing

12   Apple: Its AI technology is severely lagging industry rivals, and the company has shown little sign

13   of catching up. The Apple Intelligence platform was late to arrive and largely a flop, despite being

14   the main selling point for the iPhone 16."[71]

15       461.    On March 7, 2025, veteran Apple analyst Johnathan Gruber published a statement

16   from Apple spokeswoman Jacqueline Roy, in which Apple officially conceded that the AI-based

17   Siri features promised in 2024 would not be delivered until 2026, as follows:

18           "We've . . . been working on a more personalized Siri, giving it more
19           awareness of your personal context, as well as the ability to take
             action for you within and across your apps. It's going to take us
20           longer than we thought to deliver on these features and we anticipate
             rolling them out in the coming year."[72]

21

22

23

24   [68] Mark Gurman, *Apple Shuffles AI Executive Ranks in Bid to Turn Around Siri*, BLOOMBERG (March
     20, 2025), https://www.bloomberg.com/news/articles/2025-03-20/apple-vision-pro-chief-mike-
25   rockwell-named-siri-head-giannandrea-keeps-ai-role?embedded-checkout=true&sref=4CbA7ZQa.
     [69] *Id.*
26   [70] *Id.*
     [71] *Id.*
27   [72] John Gruber, *Apple Is Delaying the 'More Personalized Siri' Apple Intelligence Features*,
     DARING FIREBALL (Mar. 7, 2025),
28   https://daringfireball.net/2025/03/apple_is_delaying_the_more_personalized_siri_apple_intelligen
     cefeatures.

462.    Gruber commented: "What Apple is saying here is that these 'more personalized Siri' features are being punted from this year's OS cycle to next year's: to iOS 19 and MacOS 16."[73]

463.    On March 2, 2025, Bloomberg's Gurman aptly captured the wide delta between Apple's marketing claims and the truth. With respect to Enhanced Siri and the Ramsey Ad, he posted: "Just to provide some visual context on the disconnect between Apple marketing and the reality of the Apple AI. **This TV ad for Apple Intelligence was released 5 months ago. It still cannot do what is shown here**."[74]

464.    Although the Ramsey Ad was eventually removed, Apple never formally retracted its other misleading iPhone 16 series claims, nor has it taken action that would adequately remedy consumers harmed by the Company's widespread deception.



465.    As iPhone 16 sales dropped in reaction to the truth, Wall Street analyst at Morgan Stanley, Erik Woodring explained: "'Access to Advanced AI Features' was listed as a top 5 driver of smartphone upgrades for the first time, and an 'Upgraded Siri digital assistant' was the Apple Intelligence feature prospective new model iPhone buyers (globally) were most interested in [.]'"

466.    On April 3, 2025, the *Wall Street Journal* aptly concluded: "**With 'more personal' Siri [. . .], the tech giant[] marketed features [it] ha[s] yet to deliver,**" and aptly concluded, **"They *shouldn't* announce products until they're sure they can deliver them."**[75]

---

[73] *Id.*

[74] Mark Gurman, (@markgurman), X (Mar. 2, 2025, 9:25), https://x.com/markgurman/status/1896250347838202153.

[75] Joanna Stern, *Apple and Amazon Promised Us Revolutionary AI. We're Still Waiting.*, THE WALL STREET JOURNAL (April 3, 2025), https://www.wsj.com/tech/personal-tech/apple-amazon-generative-ai-c22a00b9?msockid=2f5e429e81c7677423a257bf802966ca.

**L.  National Advertising Division Finds Apple's AI Advertising Misleading, Recommends Discontinuing or Modifying AI Claims**

467.    The National Advertising Division ("NAD") and the National Advertising Review Board ("NARB"), established in 1971, serve as the advertising industry's independent system of self-regulation, aimed at fostering consumer trust and truth in advertising. NAD reviews national advertising across all platforms, acting on third-party challenges and through self-initiated inquiries.

468.    As a part of its monitoring program, NAD *sua sponte* initiated a review of Apple's promotional claims regarding Apple Intelligence, including Enhanced Siri. NAD challenged both express and implied representations concerning Siri and other unavailable AI features including the following:

- "Apple Intelligence. Available Now."

. . .

- Siri Functionality:

"Apple Intelligence empowers Siri with onscreen awareness, so it can understand and take action with things on your screen."

"Awareness of your personal context enables Siri to help in ways that are unique to you."

"Siri can use its knowledge of the information on your device to help find what you're looking for, without compromising your privacy."

"Seamlessly take action in and across apps with Siri. You can make a request like "send the email I drafted to April and Lilly" and Siri knows which email you're referencing and which app it's in. And Siri can take actions across apps, so after you ask Siri to enhance a phot for you by saying "Mae this photo pop," you can ask Siri to drop it in a specific note in the Notes apps – without lifting a finger."

469.    After reviewing extensive evidence and rebuttal arguments from Apple, NAD issued its decision in April 2025.  It concluded that Apple's unqualified "Available Now" claim, featured prominently on the top of its Apple Intelligence webpages and paired with detailed AI feature descriptions, reasonably conveyed the message that these features, including Enhanced Siri, were fully available at launch.  In reality, they were not.

470.    With respect to several promised features, NAD held Apple's claims "were not supported at the time they were first made" and that  "Apple did not adequately disclose that the features were not available[.]"  As NAD further explained, "reasonable consumers could take away the messages that these features were available at the time these claims were first made, which they were not." Consequently, NAD recommended that Apple cease making such claims to "avoid conveying the message that features are available when they are not."

471.    NAD also highlighted Apple's heavy focus on promoting Enhanced Siri, stating that "much of Apple's advertising focused on these new features, highlighting in particular, the anticipated updates to Siri functionality." As NAD explained, the **"description of Siri's updated functionality below Apple's unqualified claim that Apple Intelligence is 'available now' also reasonably conveys the message that the updated Siri functionality was available as part of the iPhone 16 launch, which it was not."** In so concluding, NAD did not find any disclosure as to timing, or other qualifier, persuasive.[76]

472.    Apple ultimately advised NAD that the enhancements to Siri were not going to be available as originally promised, and that Apple was "taking steps to update its promotional materials to reflect this change," including the demonstration of an operable Enhanced Siri in the Ramsey Ad. According to NAD, "[t]he voluntarily discontinued claims will be treated for compliance purposes, as though NAD recommended their discontinuation and [Apple] agreed to comply."[77]

**M. Apple's Continued Delays Fuel Consumer Dissatisfaction**

473.    With the announcement of further delays, the Internet was flooded with complaints from consumers who purchased iPhone 16s for Apple Intelligence and Enhanced Siri, but instead received an iPhone that is virtually identical to prior models:

---

[76] *See fn.* 13, *supra*, NAD Decision: "However, none of these disclosures was clear and conspicuous or in close proximity to the claims. Indeed, the press releases and technical support were on completely separate web pages with no link to where the claims were made. Further, these disclosures contradict the broad "available now" claim positioned prominently at the top of the page."

[77] *See  fn.* 13, *supra*, NAD Decision, p. 3.

"Well I already bough [sic] the 16 pro at launch after years of not upgrading, for nothing! I've noticed zero difference between this and my 13 pro. Feel duped big time."[78]

"I should have kept my 13. It was paid off. Need a new screen and perhaps fresh battery but there's literally nothing different with my 16."[79]

"So my 'built for Apple Intelligence' phone is only 'intelligent' enough to create stupid emojis and generate insipid text slop in my notes app. Cool."[80]

"I'm gutted to hear about this delay, this is one feature set I was looking forward to using[.]"[81]

"Garbage. iPhone 16, built for Apple Intelligence, was a scam. I now officially feel ripped off."[82]

474.    Aptly capturing widespread consumer sentiment with respect to the much-heralded Enhanced Siri, one consumer asked: "So will iPhone 16 owners get some sort of compensation for false advertising? **Going to 7 months without one of the main selling points this generation had going for it.**"[83]

**N.  Apple's 2025 WWDC Largely Avoids Spending Time on Enhanced Siri**

475.    On June 9, 2025, Apple's Senior Vice President of Software Engineering Craig Federighi opened the company's latest World Wide Developer's Conference ("WWDC 2025") with a presentation addressing Apple Intelligence,  stating "last year, we took the first steps on a journey to bring you intelligence that's most helpful and relevant for you."[84] He listed features such as

---

[78] @kdw87, REDDIT (Mar. 12, 2025, 9:25 A.M.), https://www.reddit.com/r/apple/comments/1j9o0iw/apple_adds_disclosure_about_delayed_siri_features/.
[79] @razeus, REDDIT (March, 2025) https://www.reddit.com/r/apple/comments/1j9o0iw/apple_adds_disclosure_about_delayed_siri_features/.
[80] @Fer65432_Plays, REDDIT (Mar. 7, 2025, 9:38 A.M.), https://www.reddit.com/r/apple/comments/1j5uob7/apple_delays_apple_intelligence_siri_features.
[81] *Id.*
[82] *Id.*
[83] @jahasv, REDDIT (March 2025), https://www.reddit.com/r/apple/comments/1j5uob7/apple_delays_apple_intelligence_siri_features/?q=compensation&type=comments&cId=871cd604-330b-4965-9809-23938aa24d45&iId=66d6fdad-1657-4488-8bef-3c19fecfe73c
[84] Apple, WWDC 2025, YOUTUBE (Jun. 9, 2025), https://www.youtube.com/watch?v=0_DjDdfqtUE (quoted language at 4:08).

Writing Tools, Genmoji, Image Playground, Clean Up in Photos, among others, claiming Apple delivered "while taking an extraordinary step forward in privacy with private cloud compute."[85]

476.    Yet to the surprise and frustration of many consumers and investors, Apple failed to meaningfully address the status or release timeline for Enhanced Siri, the very centerpiece of Apple Intelligence announced at WWDC 2024. The glaring omission came amid growing calls from the public for accountability, refunds, and transparency regarding the promised, but undelivered, Enhanced Siri.

477.    In stark contrast to the prior year's WWDC, where Apple devoted considerable time to Apple Intelligence, Federighi's 2025 remarks on it lasted just three minutes and ten seconds. With respect to Siri, Federighi represented vaguely that Apple "introduced enhancements that make Siri more natural and more helpful."[86]

478.    But, as Apple knew, this was a far cry from the personalized digital AI assistant it promised would revolutionize smartphone use as the breakthrough innovation of the iPhone 16 series. So to briefly address that glaring failure, Federighi added, ". . . We're continuing our work to deliver the features that make Siri even more personal. This work needed more time to reach our high-quality bar, and we look forward to sharing more about it in the coming year."[87]

479.    Federighi then quickly pivoted to a more optimistic future, claiming, "you'll see new Apple intelligence features that elevate your experiences across iPhone, Apple Watch, Apple Vision Pro, and iPad."[88] After highlighting other new features ultimately panned as unremarkable after the event, Apple CEO Tim Cook reassured consumers in close that Apple is "[continuing] to advance each of our platforms with more ways to harness the power of Apple Intelligence."[89]

480.    Media outlets swiftly criticized Apple's failure to deliver meaningful update on Enhanced Siri. Several news outlets hosted interviews after the WWDC with Federighi and Apple's Senior Vice President of Worldwide Marketing Greg Joswiak ("Joz") In one, Federighi discussed Siri's "V1" architecture displayed at the WWDC in 2024. He claimed that, at the time, Apple was

---

[85] *Id.*
[86] *Id.* at 5:09.
[87] *Id.* at 5:14.
[88] *Id.* at 5:46.
[89] *Id.* at 1:28:37.

confident that Enhanced Siri could be delivered in December 2024, and at the latest, be available in the spring of 2025, but that the V1 architecture was ultimately discarded. According to Federighi, it would not perform as customers expected and was also not up to Apple's high standards.[90]

481.    Pressed on why Apple promoted these features before they were ready, Federighi stated that Apple "knew the world wanted a really complete picture of what Apple [is] thinking about the implications of Apple Intelligence and where it [is] going."[91] According to him, as soon as Apple realized Siri needed "V2" architecture to function properly, they let the world know.[92] But critically, this came long after the iPhone 16 launch, and long after Apple had actively promoted, demonstrated, and sold the feature during the crucial post-launch months when most consumers make their purchase decisions.

482.    As for the still-unreleased feature, Federighi confirmed Apple would no longer be able to commit to a release date for Enhanced Siri's new architecture and AI capabilities.[93] But he indicated that consumers could now expect the promised features **sometime in 2026**.[94] However, given internal commentary from Apple's senior executives like Robby Walker regarding, who cited competing corporate priorities and underperforming prototypes, there remains no guarantee the promised functionality will ever be delivered. [95] [96]

483.    Following WWDC 2025, Apple's stocks dropped 2.5%, shedding $75 billion in market capitalization.[97] Wall Street analysts including analysts from Wedbush, Barclays, Forrester

---

[90] TOM'S GUIDE, WWDC Interview: Craig & Joz on Why Siri's Not Ready, AI Vision and iPadOS Shocker! YOUTUBE (June 10, 2025), https://www.youtube.com/watch?v=Pt3qAWxIbrU.

[91] *Id.* at 3:20.

[92] *Id.* at 4:27.

[93] *Id.* at 4:42.

[94] *Id.* at 5:20.

[95] Chris Welch, *Leaked Apple meeting shows how dire the Siri situation really is,* THE VERGE (March 14, 2025), https://www.theverge.com/news/629940/apple-siri-robby-walker-delayed-ai-features.

[96] Chance Miller, *Bloomberg: Apple could have to scrap new Siri AI features and start over,* 9TO5MAC (Mar. 7, 2025), https://9to5mac.com/2025/03/07/apple-siri-ai-features-delayed-ios-19/.

[97] *Apple's WWDC 2025: Investor Expectations and Stock Price Impact,* 360 MARKET IQ (June 9, 2025), https://360miq.com/blog/apples-wwdc-2025-investor-expectations-and-stock-price-impact/.

and media outlets described Apple's keynote as underwhelming, and many expressed concerns that Apple risked falling further behind more aggressive AI competitors.[98]

484.    Wedbush Securities summed up the vibe of the WWDC 2025 succinctly: "Overall, WWDC laid out the vision for developers but was void of any major Apple Intelligence progress as Cupertino is playing it safe and close to the vest after the missteps last year." [99]

485.    Dipanjan Chatterjee, Forrester vice president and principal analyst, likewise commented that "the silence surrounding Siri was deafening." "Apple continues to tweak its Apple Intelligence features, **but no amount of text corrections or cute emojis can fill the yawning void of an intuitive, interactive AI experience** that we know Siri will be capable of when ready," Chatterjee said in an email. "We just don't know when that will happen."[100]

486.    Barclays expressed disappointment, albeit as they expected: "We were not expecting much from the annual WWDC keynote, but were still slightly disappointed at the content and features announced today. We view changes to all device Operating Systems and Apple Intelligence as incremental, and not enough to drive any upgrade cycles."[101]

487.    The *Wall Street Journal* also reported on Apple's WWDC 2025. Columnist Dana Gallagher wrote critically of the low expectations Apple faced coming into its development conference this year, opining that even with scathing criticism from last year's rollout, "[t]hat [Apple] still failed to meet [those low expectations] says a lot about where the company is with Artificial Intelligence."[102]

---

[98] Jordan Hart, *Apple tries to slap a "glass" Band-Aid on its real problem,* BUSINESS INSIDER, (June 10, 2025) https://www.businessinsider.com/apple-liquid-glass-iphone-upgrades-wall-street-analysts-2025-6?.

[99] *Wall Street analysts react to latest Apple WWDC announcements*, Investing.com (June 10, 2025), https://www.investing.com/news/stock-market-news/wall-street-analysts-react-to-latest-apple-wwdc-announcements-4088187.

[100] Clare Duffy, *The biggest updates Apple just announced for the iPhone, Apple Watch and other major products*, CNN (June 9, 2025), https://www.cnn.com/2025/06/09/tech/apple-wwdc-iphone-ai-what-to-expect.

[101] Rani Molla, *Analysts: "We were not expecting much… but were still slightly disappointed" by Apple,* SHERWOOD, (June 10, 2025) https://sherwood.news/tech/analysts-show-muted-reactions-to-apples-developer-conference-wwdc/.

[102] Dana Gallagher, *Apple Fails to Clear a Low Bar on AI,* WALL STREET JOURNAL (Jun. 10, 2025), https://www.wsj.com/tech/ai/apple-ai-strategy-wwdc-challenges-bdae4fb5?st=BS7qQ6&reflink=article_copyURL_share.

488.    Similarly, *Bloomberg's* Mark Gurman wrote that the "company's Siri team is aiming to bring the revamped voice assistant to market as part of an iOS 26.4 software update, according to people with knowledge of the matter."[103] He noted that if the announced timing sticks, "**Apple will have gone nearly two years between announcing the new Siri and delivering it to customers.**"[104]

489.    Gurman further reported that internally, "Apple's AI and marketing teams have pointed fingers at each other. The engineering side has blamed marketing for overhyping features, while marketing maintains it operated on timelines provided to them by the company's AI teams, according to people with knowledge of the matter," a clear divergence from the united front Federighi have portrayed to the public in recent interviews.[105]

490.    Apple's vague promise to deliver Enhanced Siri in 2026 does little to console customers who, in deciding to upgrade or purchase the Products, relied on Apple's representations that the feature would be available with the launch of iPhone 16.

**O.  Apple Engaged in Deceptive Conduct to Obtain an Unfair Competitive Advantage**

491.    Beyond exploiting unsuspecting consumers, Apple also gained an unfair advantage over competitors in the market who do not tout non-existent AI features, or who actually deliver them as promised.

492.    Due to the risks and proliferation of false AI-related advertising in the consumer market, the California Attorney General's office issued a dedicated Legal Advisory to warn companies specifically that California consumer protection laws "prohibit false advertising regarding the capabilities, availabilities, and utility of AI products[.]"[106]

493.    Apple, founded and based in California, is intimately familiar with these consumer protection laws and prohibitions on anti-competitive behavior. But in the race for AI market share, it violated them anyway, misleading consumers into believing the iPhone 16 possessed AI features,

---

[103] Mark Gurman, *Apple Targets Spring 2026 for Release of Delayed Siri AI Upgrade*, BLOOMBERG (June 12, 2025), https://www.bloomberg.com/news/articles/2025-06-12/apple-targets-spring-2026-for-release-of-delayed-siri-ai-upgrade?sref=4CbA7ZQa.
[104] *Id.*
[105] *Id.*
[106] *California Attorney General's Legal Advisory on the Application of Existing California Laws to Artificial Intelligence,* CALIFORNIA DEPARTMENT OF JUSTICE, https://oag.ca.gov/system/files/attachments/press-docs/Legal%20Advisory%20-%20Application%20of%20Existing%20CA%20Laws%20to%20Artificial%20Intelligence.pdf

functions, and benefits the iPhone 16 does not have and, according to company and industry insiders, may never have.

494.    As a result, millions of iPhone 16 purchasers paid an unlawful price premium for features they did not receive. Even if the promised features arrive years later, they may be available across competing technologies by then as well, further rendering Apple's early campaign of supposedly unique and innovative capabilities meaningless. Based on its historical production cadence, it is also likely that Apple will be marketing another new iPhone series this Fall, leaving consumers who bought into Apple's false promises for the 16 series stuck with outdated technology for which they also overpaid.

495.    This is exactly the kind of calculated deception and market impact that consumer protection laws nationwide were designed to prevent. The NAD's decision condemning Apple's iPhone 16 advertising said it well: "As [AI] tools are quickly being announced and released into the market, it is important to ensure that claims about the capabilities of the AI tools meet the same truth in advertising and consumer protection standards as all other product claims."[107]

## VI.   <u>CLASS ACTION ALLEGATIONS</u>

496.    Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this action individually and on behalf of the following class and subclass (the "Class"):

**<u>NATIONWIDE CLASS</u>:** All residents of the United States who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Class") from September 13, 2024 to March 7, 2025.
In the alternative:

**<u>ALABAMA SUBCLASS</u>:** All residents of Alabama who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Alabama Subclass") from September 13, 2024 to March 7, 2025.

**<u>ALASKA SUBCLASS</u>:** All residents of Alaska who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Alaska Subclass") from September 13, 2024 to March 7, 2025.

---

[107] *See fn.* 13, *supra*, NAD Decision, p. 3.

**ARIZONA SUBCLASS:** All residents of Arizona who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Arizona Subclass") from September 13, 2024 to March 7, 2025.

**CALIFORNIA SUBCLASS:** All residents of California who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "California Subclass") from September 13, 2024 to March 7, 2025.

**COLORADO SUBCLASS:** All residents of Colorado who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Colorado Subclass") from September 13, 2024 to March 7, 2025.

**CONNECTICUT SUBCLASS:** All residents of Connecticut who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Connecticut Subclass") from September 13, 2024 to March 7, 2025.

**FLORIDA SUBCLASS:** All residents of Florida who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Florida Subclass") from September 13, 2024 to March 7, 2025.

**GEORGIA SUBCLASS:** All residents of Georgia who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Georgia Subclass") from September 13, 2024 to March 7, 2025.

**ILLINOIS SUBCLASS:** All residents of Illinois who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Illinois Subclass") from September 13, 2024 to March 7, 2025.

**INDIANA SUBCLASS:** All residents of Indiana who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Indiana Subclass") from September 13, 2024 to March 7, 2025.

**IOWA SUBCLASS:** All residents of Iowa who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Iowa Subclass") from September 13, 2024 to March 7, 2025.

**KENTUCKY SUBCLASS:** All residents of Kentucky who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Kentucky Subclass") from September 13, 2024 to March 7, 2025.

**MARYLAND SUBCLASS:** All residents of Maryland who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Maryland Subclass") from September 13, 2024 to March 7, 2025.

**MASSACHUSETTS SUBCLASS:** All residents of Massachusetts who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Massachusetts Subclass") from September 13, 2024 to March 7, 2025.

**MICHIGAN SUBCLASS:** All residents of Michigan who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Michigan Subclass") from September 13, 2024 to March 7, 2025.

**MINNESOTA SUBCLASS:** All residents of Minnesota who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Minnesota Subclass") from September 13, 2024 to March 7, 2025.

**MISSISSIPPI SUBCLASS:** All residents of Mississippi who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Mississippi Subclass") from September 13, 2024 to March 7, 2025.

**MISSOURI SUBCLASS:** All residents of Missouri who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Missouri Subclass") from September 13, 2024 to March 7, 2025.

**MONTANA SUBCLASS:** All residents of Montana who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Montana Subclass") from September 13, 2024 to March 7, 2025.

**NEBRASKA SUBCLASS:** All residents of Nebraska who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Nebraska Subclass") from September 13, 2024 to March 7, 2025.

**NEVADA SUBCLASS:** All residents of Nevada who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Nevada Subclass") from September 13, 2024 to March 7, 2025.

**NEW HAMPSHIRE SUBCLASS:** All residents of New Hampshire who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "New Hampshire Subclass") from September 13, 2024 to March 7, 2025.

**NEW JERSEY SUBCLASS:** All residents of New Jersey who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "New Jersey Subclass") from September 13, 2024 to March 7, 2025.

**NEW MEXICO SUBCLASS:** All residents of New Mexico who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "New Mexico Subclass") from September 13, 2024 to March 7, 2025.

**NEW YORK SUBCLASS:** All residents of New York who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "New York Subclass") from September 13, 2024 to March 7, 2025.

**NORTH CAROLINA SUBCLASS:** All residents of North Carolina who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "North Carolina Subclass") from September 13, 2024 to March 7, 2025.

**OHIO SUBCLASS:** All residents of Ohio who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Ohio Subclass") from September 13, 2024 to March 7, 2025.

**OKLAHOMA SUBCLASS:** All residents of Oklahoma who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Oklahoma Subclass") from September 13, 2024 to March 7, 2025.

**OREGON SUBCLASS:** All residents of Oregon who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Oregon Subclass") from September 13, 2024 to March 7, 2025.

**PENNSYLVANIA SUBCLASS:** All residents of Pennsylvania who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Pennsylvania Subclass") from September 13, 2024 to March 7, 2025.

**RHODE ISLAND SUBCLASS:** All residents of Rhode Island who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Rhode Island Subclass") from September 13, 2024 to March 7, 2025.

**SOUTH CAROLINA SUBCLASS:** All residents of South Carolina who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "South Carolina Subclass") from September 13, 2024 to March 7, 2025.

**TEXAS SUBCLASS:** All residents of Texas who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Texas Subclass") from September 13, 2024 to March 7, 2025.

**UTAH SUBCLASS:** All residents of Utah who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Utah Subclass") from September 13, 2024 to March 7, 2025.

**VIRGINIA SUBCLASS:** All residents of Virginia who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Virginia Subclass") from September 13, 2024 to March 7, 2025.

**WASHINGTON SUBCLASS:** All residents of Washington who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Washington Subclass") from September 13, 2024 to March 7, 2025.

**WEST VIRGINIA SUBCLASS:** All residents of West Virginia who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "West Virginia Subclass") from September 13, 2024 to March 7, 2025

**WISCONSIN SUBCLASS:** All residents of Wisconsin who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, for purposes other than resale (the "Wisconsin Subclass") from September 13, 2024 to March 7, 2025.

497.    Excluded from the Class and Subclass are (i) Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the judge's immediate family.

498.    Members of the Class are so numerous that joinder is impracticable. Apple sold hundreds of thousands of Model 16, 16 Plus, 16 Pro, 16 Pro Max or 16e iPhones in the United States from September 13, 2024 to March 7, 2025, and Apple, and/or retailers, third-party vendors, or resellers, has records of these sales and the owners.

499.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class and Subclass Members include:

- Whether Apple's advertising and other public statements about the iPhone 16 and Enhanced Siri were false and misleading;

- Whether Apple misrepresented and/or failed to adequately disclose that Enhanced Siri features would not be available when promised on the iPhone 16;

- Whether the cost of the iPhone 16 was inflated by the promised Enhanced Siri functionality that either never materialized or was significantly delayed;

- Whether Apple's conduct was unfair, deceptive, and/or misleading under applicable law;

- Whether Apple has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for it to retain the benefits conferred upon Apple by Plaintiff and the Nationwide Members;

- Whether Apple breached its express and/or implied warranties to Plaintiff and the Class and Subclass;

- Whether Plaintiff and the Class and Subclass have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages;

- • Whether Apple made negligent representations with regards to the iPhone 16; and

- • Whether Apple has violated the state consumer protection laws alleged in this complaint.

- • Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased and used Defendant's iPhone 16 and Plaintiff sustained damages from Defendant's wrongful conduct.

500.    Plaintiff will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex consumer protection class actions. Plaintiff has no interests which conflict with those of the Class or the Subclass.

501.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

502.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

## VII.  CHOICE OF LAW

503.    Apple is headquartered at 1 Apple Park Way in Cupertino, California, making California the epicenter of this case. Indeed, it is in California where Apple's high-level employees and officers direct, control, and coordinate the corporation's activities, including its marketing, software development, and major policy, financial, and legal decisions.

504.    The wrongdoing at the heart of this lawsuit emanated from Apple's Cupertino, California headquarters, where Apple employees and executives make, *inter alia*, marketing and legal decisions.

505.    Apple elected to have California govern all claims and disputes arising out of its iPhone and iOS products that are the subject of this lawsuit.

506.    Specifically, Apple's Software License Agreement for iOS 18 and iOS 18.1, the software the iPhone 16 launched with, and the update released in October 2024, provides: "This License will be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law principles."

507. Defendant's Apple Media Services Terms and Conditions, which governs consumers' use of Apple services including the App Store, Apple News, Apple Podcasts, iTunes, and more, contains similar language.

508. An iPhone cannot operate without iOS software, and consumers cannot meaningfully use their iPhones without using Apple Media Services such as the App Store.

509. Thus, the relevant iOS Software Licensing Agreements and the Apple Media Services Terms and Conditions are effective at the point of sale—as soon as the customers turn on their iPhone—and are part of the benefit of the consumers' bargain.

510. By using their iPhones or doing basic tasks such as downloading applications, consumers are informed that they agree to be bound by the laws of the state of California.

511. And in any event, California has a significant interest in regulating the conduct of businesses operating within its borders—especially when that conduct includes one of California's largest homegrown corporations. California has a particular interest in protecting the rights of Californians and of residents and citizens across the nation from harmful and fraudulent conduct emanating from a company headquartered and doing business in California.

512. For all of these reasons, the application of California law to all of the Class Members' claims is fair and appropriate.

513. Under California's choice of law principles, which are applicable to this action, the common law of California applies to the common law claims of all class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's consumer protection laws may be applied to nonresident Class members.

## VIII.    CLAIMS FOR RELIEF

### COUNT ONE
**Violations Of The California Consumers Legal Remedies Act,**
**(Cal. Civ. Code §§ 1750, *Et Seq.*)**
**(On Behalf Of The Nationwide Class, Or, In The Alternative, The California Subclass)**

514. Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

515.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, the California Plaintiffs identified above bring this claim on behalf of the California Subclass.

516.     The California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, makes unlawful certain "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or service to any consumer." *Id*. § 1770(a)

517.     Plaintiffs and the Nationwide Class Members are "consumers" who purchased "goods" in the form of the iPhone 16 within the meaning of Cal. Civ. Code § 1761(a) & (d).

518.     Apple is a "person" within the meaning of Cal. Civ. Code § 1761(c).

519.     In selling or leasing the iPhone 16 to Plaintiff and Class Members, Defendant made an express or implied promise to provide future software development, and software updates for the iPhone 16, "built for Apple Intelligence" and advertised to include Enhanced Siri capabilities, and other work or labor that constitutes "services" under the CLRA. *Id.* § 1761(b).

520.     The CLRA is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property, or services to consumers primarily for personal, family, or household use.

521.     The application of the CLRA to the putative Nationwide Class in this action is appropriate because Defendant's wrongful conduct alleged herein, includes but is not limited to Defendant's deceptive marketing of the iPhone 16 in the state of California.

522.     The CLRA, Cal. Civ. Code §1770(a)(5), (7), & (9) provide, in part, as follows:

523.     The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful:

. . .

(5)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have . . .;

. . .

       (7)     Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

. . .

       (9)     Advertising goods or services with intent not to sell them as advertised.

524. Apple violated CLRA, sections 1770(a)(5) & (9), *inter alia*, by representing that the iPhone 16 has characteristics, uses or benefits, which it does not have, and/or Civil Code section 1770(a)(7) by representing that the iPhone 16 is of a particular standard, quality, or grade, even though it is of another. Such conduct includes, among other things:

       a.     Marketing the iPhone 16 as having abilities, features, or attributes, including but not limited to Enhanced Siri, that it does not have;

       b.     Marketing and selling the iPhone 16 when it was not merchantable for the purposes it was advertised for;

       c.     Marketing and selling the iPhone 16 while concealing material facts from Plaintiff and Class Members regarding the abilities, features, or attributes of the iPhone 16;

       d.     Concealing from Class Members that Defendant was in breach and intended to breach its contractual obligations as set forth in this complaint;

       e.     Concealing from Class Members that Defendant was in breach and intended to breach its warranty obligations as set forth in this complaint; and

       f.     Violating additional laws and regulations as set forth herein.

525. Defendant's wrongful acts, practices, and conduct alleged herein—including but not limited to their false, misleading, and deceptive marketing, representations, and omissions regarding the present and likely future abilities, limitations, flaws, and value of the promised Enhanced Siri features and related technology were a substantial factor in Plaintiffs' and Class Members' decisions to purchase or lease the iPhone 16, and their decisions to pay hundreds of dollars more for upgrades or new phones with the promised technology.

526. Apple's uniform and material representations regarding AI within iPhone 16 products were likely to deceive consumers, and Apple knew or should have known its representations were

false. Apple did not have a functional prototype capable of being integrated into millions phones to function in the way it was advertised. In fact, the advertised technology will not be available for years, if ever.

527.    Apple conducts its own market research and is aware of consumers' desire for For that reason, Apple made its "Apple Intelligence" and specifically, Enhanced Siri, the centerpiece of its marketing campaign.

528.    As reported by Morgan Stanley's November 2024 survey, Apple's artificial intelligence was the catalyst of consumers' purchasing decisions. As reported by Woodring, the Upgraded Siri Digital assistant was the Apple Intelligence feature prospective new model iPhone buyers globally were most interested in. That's why, when Apple began announcing delays in delivering the promised AI features, 50% of iPhone owners that did not upgrade to an iPhone 16 acknowledged that the delayed Apple Intelligence rollout had an impact on their decision not to upgrade.

529.    Plaintiffs Peter Landsheft and Tyshaun Butler, on behalf of themselves and other similarly-situated consumers, sent CLRA notices of violation and demand letters to Defendant Apple on or about March 19, 2025, April 9, 2025, and April 22, 2025.

530.    As a result of Defendant's CLRA violations and the harm caused thereby, Plaintiffs and Nationwide Class Members are entitled to and seek: (a) all monetary and non-monetary relief allowed by law, including damages and punitive damages; (c) an award of reasonable attorneys' fees under Cal. Civ. Code § 1780(e), Cal. Code Civ. Proc. § 1021.5, and any other applicable law; and (d) all other available relief prayed for below.

531.    Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for the products that they were not, in fact, receiving – and did not have the promised AI capabilities.

532.    Defendant willfully and knowingly disregarded Plaintiffs and Class Members' rights as it was aware of its fraudulent conduct and deliberately failed to avoid misleading consumers.

Specifically, as discussed above, Defendant did not have a functioning prototype of the advertised features – the AI-powered digital assistant Siri. Yet, it advertised its new iPhone 16s as having the capabilities that were merely a concept, and were not capable of being timely introduced to the market with the iPhone 16. Now, over a year after Defendant launched its advertising campaign around Enhanced Siri, Enhanced Siri is yet to be developed and is not anticipated to be developed until 2026, if ever. Thus, Defendant's misconduct is oppressive and subjected Plaintiffs and consumers to unjust hardship, and knowingly disregarded their rights.

533.    Defendant's misconduct is fraudulent because Defendant intentionally misrepresented and concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**COUNT TWO**
**Unlawful, Unfair, and Fraudulent Business Acts and Practices**
**(Cal. Bus. & Prof. Code §§ 17200, _et seq._)**
**(on behalf of the Nationwide Class, or, in the alternative, the California Subclass)**

534.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

535.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, the California Plaintiffs identified above bring this claim on behalf of the California Subclass.

536.    California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, _et seq._, "UCL") is designed to protect consumers from unlawful, unfair, or fraudulent business acts or practices, including the use of any deception, fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact.

537.    In accordance with the liberal application and construction of the UCL, application of the UCL to all Class Members is appropriate, given that Apple's conduct as described herein originated from California, the iPhone 16, Apple Intelligence, Enhanced Siri, and related iOS software were designed and originated in California, and Apple's uniform iOS Software License Agreement provides that California law shall apply.

538.    Apple's uniform iOS software License Agreement governs the reach of the Nationwide Class's claims because Apple's violations of the UCL, FAL, and CLRA were caused, in part, by the installation of certain operating software containing Apple Intelligence features, which were advertised to include Enhanced Siri.

539.    Apple is a "person" as defined by Cal. Bus & Prof. Code § 17201.

540.    Apple's acts and practices constitute unlawful, unfair, and fraudulent business practices in violation of California's UCL. The application of California's Unfair Competition Law to the putative Class in this action is appropriate because Apple's wrongful conduct alleged herein includes, but is not limited, to Apple's deceptive and fraudulent marketing of the iPhone 16 in the State of California.

541.    Defendant engaged in fraudulent and/or "unfair" business practices in violation of the UCL by, among other things:

  a.  Marketing the iPhone 16 as having abilities, features, or attributes, including Enhanced Siri, that it does not have;

  b.  Marketing and selling the iPhone 16 when it was not merchantable for the purposes it was advertised for;

  c.  Marketing and selling the iPhone 16 while concealing material facts from Plaintiff and Class Members regarding the abilities, features, or attributes of the iPhone 16;

  d.  Concealing from Class Members that Defendant was in breach and intended to breach its contractual obligations as set forth in this complaint;

  e.  Concealing from Class Members that Defendant was in breach and intended to breach its warranty obligations as set forth in this complaint; and

  f.  Violating additional laws and regulations as set forth herein.

542.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the true features (or lack thereof) included with its iPhone 16 and Apple Intelligence software suite, to avoid damage to its sales or reputation. It

withheld critical and material information from Plaintiffs and Class Members, competitors, and the marketplace—all to its unfair competitive advantage.

543. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

544. **No Utility.** Here, Defendant's conduct of advertising the iPhone 16 products as having Enhanced Siri, which simply does not exist, serves no legitimate purpose. This conduct provides zero benefit to consumers or society at large. It only serves to benefit Defendant and increase its profits. Meanwhile, consumers suffered and continue to suffer real financial harm, rendering any claimed utility vastly outweighed by the gravity of the harm inflicted.

545. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007). Defendant's deceptive practices directly undermine California's strong public policy against false advertising and consumer deception, striking at the very heart of consumer protection statutes.

546. **Unfair Conduct.** Defendant's advertising and marketing of the iPhone 16 products were deceptive, unreasonable, and entirely unjustifiable especially given that Apple did not have a functioning prototype ready to be implemented – and to provide consumers with the advertised Enhanced Siri.

547. Defendant also violated the Unfair Competition Law because the utility of its conduct as described in this Complaint is outweighed by the gravity of the consequences to Plaintiffs and Nationwide Class Members and because Defendant's conduct as described in this Complaint is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and Nationwide Class Members.

548. Defendant has also engaged in "unlawful" business practices by violating multiple laws, including the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et*

*seq.*,("FAL"), the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, and California and other state common law.

549.   Defendant has also engaged in fraudulent conduct because it made representations regarding availability of AI features that did not exist, were not available, and could not have been delivered to consumers. Given that Apple knew that AI features are the primary driver of the purchase decisions – and made these unavailable features the centerpiece of its marketing campaign – it knew that the misrepresentations were likely to mislead consumers into purchasing the products because they are material to the average, ordinary, and reasonable consumer.

550.   As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Nationwide Class Members were damaged and lost money or property, including from not receiving the benefit of their bargain in purchasing the iPhone 16.

551.   Defendant's conduct and the harm it caused was not reasonably avoidable by Plaintiff and the Nationwide Class Members. Defendant knew or had reason to know that Plaintiffs and the Nationwide Class Members could not have reasonably known or discovered the existence of Apple Intelligence and Enhanced Siri software development delays, or that the advertised Enhanced Siri features do not exist at all.

552.   Had Plaintiffs and the Nationwide Class Members known that the iPhone 16 did not include the promised Enhanced Siri features, they would not have purchased iPhone 16s promising that functionality, or would have paid less for them.

553.   Plaintiffs, on behalf of himself and Nationwide Class Members, have suffered injury in the form of lost money and property, including but not limited to a diminishment in the value of the iPhone 16, as a direct and proximate result of Defendant's fraudulent, unlawful, and unfair business practices.

554.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and Nationwide Class Members seek all monetary and non-monetary relief allowed by law. In addition Plaintiff and Nationwide Class Members seek an order: (a) requiring Apple to restore to Plaintiffs and the Class Members any money acquired by means of the deceptive and unfair business practices, including restitution of all profits stemming from Apple's unfair, unlawful, and fraudulent business practices;

1   and (b) awarding reasonable costs and attorneys' fees pursuant to Cal. Civ. Code § 1021.5; and

2   (d) any other appropriate equitable relief.

3      555.   Plaintiffs and the Class are entitled to equitable relief as no adequate remedy at law

4   exists.

5      556.   The scope of actionable misconduct under the unfair prong of the UCL is broader

6   than the other causes of action. It includes, for example, Apple's overall unfair marketing scheme to

7   promote and brand the Products within the challenged representations, across a multitude of media

8   platforms. This could present a straightforward claim, which could be easier to prove, as opposed to

9   claims for damages. The UCL also creates a cause of action for violations of law (such as statutory

10  or regulatory requirements and court orders related to similar representations made on the type of

11  products at issue). Thus, Class may be entitled to restitution under the UCL, while not entitled to

12  damages under other causes of actions that may require additional elements. For example, FAL

13  requires actual or constructive knowledge of the falsity.

14     557.   No class has been certified yet. No expert discovery has commenced. The completion

15  of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are

16  necessary to finalize and determine the adequacy and availability of all remedies, including legal

17  and equitable, for Plaintiffs' individual claims and any certified class or subclass.

18  **COUNT THREE**
19  **Violation of California False Advertising Law,**
    **Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
20  **(on behalf of the Nationwide Class, or, in the alternative, the California Subclass)**

21     558.   Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint

22  as though fully set forth herein.

23     559.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in

24  the alternative, the California Plaintiffs identified above bring this claim on behalf of the California

    Subclass.
25
26     560.   Defendant's conduct alleged herein violates California's False Advertising Law

27  ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., which makes it unlawful for a business to make,

28  disseminate, or cause to be made or disseminated to the public "any statement, concerning . . .

1  personal property . . . which is untrue or misleading, and which is known, or which by the exercise

2  of reasonable care should be known, to be untrue or misleading." *Id*. § 17500.

3       561.    Each of the above deceptive and misleading advertising practices of Defendant set

4  forth above constitutes untrue or misleading advertising under the California FAL.

5       562.    The iPhone 16 and the Enhanced Siri software functionality are "personal property"

6  as governed by Cal. Bus. & Prof. Code § 17500.

7       563.    At all material times, Defendant's statements, marketing and advertising materials

8  misrepresented or omitted material facts regarding the abilities, features, or attributes of the

9  iPhone 16 as set forth in this Complaint. Defendant disseminated statements, marketing, and

10  advertising concerning the features and useability of its iPhone 16 that are unfair, untrue, deceptive,

11  or misleading within the meaning of the California FAL.

12       564.    Defendant made, disseminated, or caused to be made or disseminated such public

13  statements in numerous forums, including but not limited to Apple's website and product pages,

14  keynote presentations, calls and other public statements to investors, developers, conferences and

15  other public events, television, radio, podcasts, and other publicly available media (whether print,

16  video, audio, or other format) that republished such representations and omissions.

17       565.    Defendant's acts and practices have deceived and/or are likely to continue to deceive

18  Plaintiffs, members of the Nationwide Class, and the public. As set forth above, Defendant's Apple

19  Enhanced Siri claims are deceptive and misleading to reasonable consumers because the advertised

20  features simply do not exist. Defendant did not disclose any of this information to consumers.

21       566.    In making and disseminating the statements alleged herein, Defendant knew or

22  should have known its advertisements were deceptive and misleading. As discussed above,

23  Defendant advertised the iPhone 16 as having AI capabilities, including Enhanced Siri, that had not

24  yet been built or developed, and it had no reason to believe that Enhanced Siri would be developed

25  by the launch date of the iPhone 16, or at any point thereafter. Defendant presented its concept of

26  what it hopes that Siri will be one day as the actual capabilities that were available on all iPhone 16

27  models. Defendant knew its representations were false and misleading and yet, despite lacking a

28  functional prototype of Enhanced Siri, it turned Enhanced Siri into the centerpiece of its prominent

marketing campaign to trigger consumers' excitement and purchases of the new iPhone. Plaintiffs and members of the Nationwide Class based their decisions to purchase and use Defendant's iPhone 16 on Defendant's misrepresentations and omissions of material facts.

567.    Apple made hundreds of millions of dollars based upon iPhone 16 models whose sales were attributable to false and misleading advertisements. Plaintiffs and Class Members were injured in fact and lost money and property as a result.

568.    As a result of Defendant's FAL violations and the harm caused thereby, Plaintiffs and Nationwide Class Members lost money and are entitled to and seek (a) restitution of the full value of all monies and other consideration that Plaintiffs and Class Members paid Defendant for the purchase or lease of Apple Intelligence software or the iPhone 16, which Defendant continues to wrongfully retain, including any diminished value of Plaintiffs' and Class Members' iPhone 16 and disgorgement of the profits Defendant derived from their wrongful conduct; (b) an award of reasonable attorneys' fees under Cal. Code Civ. Proc. § 1021.5 and any other applicable law; and (c) all other available relief prayed for below.

### COUNT FOUR
#### Violation of The Song-Beverly Consumer Warranty Act,
#### Cal. Civ. Code §§ 1790, *et seq.*
#### (on behalf of the Nationwide Class, or, in the alternative, the California Subclass)

569.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

570.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, the California Plaintiffs identified above bring this claim on behalf of the California Subclass.

571.    Defendant violated the Song-Beverly Consumer Warranty Act by, among other things, violating the implied warranties of merchantability by knowingly selling the iPhone 16, which is unsuitable for its expected and advertised use in violation of sections 1791.1 and 1791.2, and was therefore not fit for the ordinary purpose for which the goods were intended to be sold.

572.     Plaintiffs and Nationwide Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

573.     Plaintiffs seek restitution and damages as a result of Defendant's unlawful conduct, as well as attorneys' fees and costs of suit.

## COUNT FIVE
### Fraud
(on behalf of Plaintiffs and the Nationwide Class, or, in the alternative, the Subclasses)

574.     The Plaintiffs identified above incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

575.     Plaintiffs bring this claim on behalf of the Nationwide Class under California law, or, in the alternative, on behalf of the respective state Plaintiffs under their respective state law.

576.     At the time Plaintiffs and Nationwide Class Members decided to purchase an iPhone 16, the Defendant misrepresented the real capabilities of the iPhone 16 and Apple Intelligence, failed to disclose that they will not be available for years to come, and concealed material information regarding the AI features – including the fact that Enhanced Siri was merely a concept, as opposed to a real feature that was available on the iPhone 16 series.

577.     As detailed above, the Defendant represented to Plaintiffs and the Class that the iPhone 16 would equipped with, or be promptly upgraded to include, Apple Intelligence software capable of powerfully upgrading Apple's software-based virtual assistant, Siri, into Enhanced Siri— a personal assistant capable of quickly and accurately analyzing data across a variety of applications, and applying that data to solve everyday problems.

578.     Apple's representations were false – the advertised Enhanced Siri was not ready, as Apple knew, including because the AI features were not working properly in their personal testing

579.     Apple knew, or should have known, that the representations were false when they made them. When Apple began its pervasive marketing campaign starting from the summer of 2024 at the WWDC 2024, then releasing the Ramsey Ad and other advertisements touting the nonexistent Enhanced Siri features, in September 2024, Apple knew that the iPhone 16, released that same month, would not be equipped with the advertised features. Apple further knew that the features

would not be included in the iOS 18.1 software launched in October 2024, or in any then-currently-planned iOS launch. Apple nonetheless made false and misleading representations, at minimum, recklessly and without regard for the truth of what was being represented.

580.    Defendant also knew that the omissions and misrepresentations regarding features, abilities, and capabilities of the iPhone 16 were material, and that a reasonable consumer would rely upon Defendant's representations (and corresponding omissions) in making the decision to falsely and misleadingly advertise the iPhone 16.

581.    Defendant in fact intended to deceive Plaintiffs and Nationwide Class Members.

582.    Plaintiffs and Nationwide Class Members did not know, nor could they have known through reasonable diligence, that Defendant's representations were false and misleading.

583.    Plaintiffs and Nationwide Class Members were reasonable in relying on the Defendant's misrepresentations (and corresponding omissions) in advertising the iPhone 16 and Enhanced Siri.

584.    Plaintiffs and Nationwide Class Members had a right to rely on Defendant's misrepresentations (and corresponding omissions) in making their decision to purchase an iPhone 16, and in fact relied on Defendant's misrepresentations (and corresponding omissions), to their detriment.

585.    Plaintiffs and Nationwide Class Members sustained damages as a result of their reliance on the Defendant's omissions and misrepresentations, thus causing Plaintiffs and Nationwide Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT SIX
### Negligent Misrepresentation
**(on behalf of Plaintiffs and the Nationwide Class, or, in the alternative, the Subclasses)**

586.    The Plaintiffs identified above incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

587.    Plaintiffs bring this claim on behalf of the Nationwide Class under California law, or, in the alternative, on behalf of the respective state Plaintiffs under their respective state law.

1     588.    Under consumer protection statutes (such as FAL, UCL, CLRA) and general tort

2 principles to avoid product mislabeling, Defendant had a duty to Plaintiffs and the Nationwide Class

3 to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing,

4 detailing, distribution, and sale of the iPhone 16.

5     589.    Defendant's duty to refrain from making false and misleading representations arises

6 independently of the parties' contractual obligations.

7     590.    Prior to Plaintiffs' purchase of the iPhone 16, Apple repeatedly represented in its

8 marketing materials, online, TV, social media advertisements, keynote presentations, retail, and

9 other advertisements that its new Enhanced Siri would be integrated into the iPhone 16. At the time

10 of the launch of its marketing campaign, Apple did not have a functioning prototype of Enhanced

11 Siri or any other reason to believe it could deliver Enhanced Siri as advertised.

12     591.    Defendant breached this duty by representing that the iPhone 16 and Apple

13 Intelligence had features, attributes, and capabilities that they do not have, namely, Enhanced Siri.

14     592.    Defendant made this misrepresentation in the course of advertising of the iPhone 16,

15 and to induce consumers to purchase the iPhone 16, thereby increasing its profits.

16     593.    At the time Defendant made these representations, Defendant knew or should have

17 known that these representations were false or made them without knowledge of their truth

18 or veracity.

19     594.    At an absolute minimum, Defendant negligently misrepresented material facts about

20 the safety of the features, attributes, and capabilities of the iPhone 16 as related to Enhanced Siri.

21     595.    The negligent misrepresentations made by Defendant, upon which Plaintiff and the

22 Nationwide Class reasonably and justifiably relied, were intended to induce and actually induced

23 Plaintiff and the Nationwide Class to purchase the iPhone 16.

24     596.    At the time of purchase of the Products, Plaintiffs and the Nationwide Class did not

25 contemplate that the premium-priced iPhones would not have features that Apple heavily advertised

26 and marketed.

27

28

597.    The negligent actions of Defendant caused damage to Plaintiff and the Nationwide Class, who are entitled to damages and other legal and equitable relief as a result, including payment of a price premium for the Products. Plaintiffs also seek punitive damages.

## COUNT SEVEN
### Breach of Contract
**(on behalf of Plaintiffs and the Nationwide Class, or in the alternative, the Subclasses)**

598.    The Plaintiffs identified above incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

599.    Plaintiffs bring this claim on behalf of the Nationwide Class under California law, or, in the alternative, on behalf of the respective state Plaintiffs under their respective state law.

600.    Defendant expressly warranted that the iPhone 16 had features, attributes, and capabilities that it does not have. Defendant's claims regarding the iPhone 16 constituted an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiffs and Nationwide Class Members placed importance on Defendant's claims.

601.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Nationwide Class Members.

602.    Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Nationwide Class Members, by not providing an iPhone 16 that conforms to the advertising and marketing claims.

603.    As a result of Defendant's breach of contract, Plaintiffs and Nationwide Class Members have been damaged in an amount to be determined at trial.

## COUNT EIGHT
### Breach of the Implied Warranty of Merchantability
**(on behalf of Plaintiffs and the Nationwide Class, or in the alternative, the Subclasses)**

604.    The Plaintiffs identified above incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

605.    Plaintiffs bring this claim on behalf of the Nationwide Class under California law, or, in the alternative, on behalf of the respective state Plaintiffs under their respective state law.

606.    Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

607.    Defendant is a merchant with respect to products such as the iPhone 16s at issue.

608.    In order to be merchantable, goods must conform to the promises or affirmations of fact made in the advertising of the product.

609.    Defendant breached the implied warranty of merchantability to Plaintiffs and Class Members in its representations that the iPhone 16s contained the Enhanced Siri capabilities advertised, when those representations were actually false.

610.    As a result of Defendant's misleading conduct, Plaintiffs and Class Members did not receive merchantable goods as impliedly warranted by Defendant.

611.    Defendant did not exclude or modify the Product's implied warranty of merchantability.

612.    As a proximate result of Defendant's breach of its implied warranty, Plaintiffs and Class Members incurred damages.

613.    Plaintiffs and Class Members were damaged as a result of Defendant's failure to comply with its obligations under the implied warranty, since Plaintiffs and the Class paid for the product, the iPhone 16s, that did not have the promised quality and nature, paid a premium for the iPhone 16s, when they could have instead purchased other less expensive smartphones or other products, and Plaintiffs and Class Members lost the opportunity to purchase similar products that provided the capabilities advertised.

614.    As a result of Defendant's breach of contract, Plaintiffs and the Class Members have been damaged in an amount to be determined at trial.

## COUNT NINE
### Breach of the Express Warranty of Merchantability
### (on behalf of Plaintiffs and the Nationwide Class, or in the alternative, the Subclasses)

615.    The Plaintiffs identified above incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

616.    Plaintiffs bring this claim on behalf of the Nationwide Class under California law, or, in the alternative, on behalf of the respective state Plaintiffs under their respective state law.

617.    Defendant was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the iPhone 16.

618.    Plaintiffs and the Nationwide Class formed contracts with Defendant at the time they purchased their iPhone 16s. The terms of that contract include that the iPhone 16 would be free from "defects in materials and workmanship"[108] and moreover include Defendant's claims that the iPhone 16s were "built for Apple Intelligence," rather than "coded" for Apple Intelligence, and had the Enhanced Siri features, as described above. This product advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class, on the one hand, and Defendant, on the other.

619.    Defendant breached the terms of these contracts, including the express warranties, by failing to provide iPhone 16s that provided the benefits advertised by Defendant—namely, iPhone 16s were "built for Apple Intelligence" and had the advertised Enhanced Siri capabilities.

620.    Any attempt by Defendant to disclaim or limit its express warranties is unconscionable and unenforceable under the circumstances here. Defendant knew or should have known that the iPhone 16s did not and would not have the represented capabilities; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the iPhone 16s; and any limited remedies unreasonably favor Defendant and fail Plaintiffs' reasonable expectations concerning product performance.

621.    Any purported warranty limitations excluding or limiting (a) labor and costs of labor and (b) incidental and consequential damages, are also procedurally and substantively unconscionable and thus fail under UCC § 2-302 and relevant state law.

622.    Plaintiffs and the Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Apple's conduct described herein. Plaintiffs and the Class members were not required to notify Apple of the breach because it would have been futile.

---

[108] *Apple One (1) Year Limited Warranty*, APPLE (Mar. 1, 2023) https://www.apple.com/legal/warranty/products/warranty-emea-english.html, *last accessed* July 16, 2025.

623.    As a direct and proximate cause of Apple's breach, Plaintiffs and Class members bought iPhone 16s they otherwise would not have, overpaid for the iPhone 16s, did not receive the benefit of their bargain, and their iPhone 16s' suffered a diminution in value and Apple has not offered an adequate remedy.

### COUNT TEN
### Unjust Enrichment
### (on behalf of Plaintiffs and the Nationwide Class, or, in the alternative, the Subclasses)

624.    The Plaintiffs identified above incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

625.    Plaintiffs bring this claim on behalf of the Nationwide Class under California law, or, in the alternative, on behalf of the respective state Plaintiffs under their respective state law.

626.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

627.    Plaintiffs and Class Members paid Defendant for, as advertised by Defendant, iPhone 16s fully functional with Enhanced Siri at the time of purchase or lease, or within a reasonably short period thereafter.

628.    In exchange, Defendant provided Plaintiffs and Class Members with iPhone 16s without promised Enhanced Siri features that could not meet Plaintiffs' and National Class Members' reasonable expectations created by Defendant's marketing, labelling, and other representations.

629.    Defendant knew or should have known that the iPhone 16s, lacking Enhanced Siri, could not meet Plaintiffs' and Nationwide Class Members' reasonable expectations created by Defendant's marketing, labelling, and/or other representations.

630.    Plaintiffs and Class members conferred monetary benefits on Defendant by purchasing the Products. Defendant's profits are funded entirely from their generated revenues – payments made by or on behalf of Plaintiffs and Class Members. As such, a portion of these payments was attributable to Defendant's misrepresentations regarding Enhanced Siri.

631.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and National Class Members have suffered and continue to suffer economic and other harms.

632.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Nationwide Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Nationwide Class Members for its unjust enrichment, as ordered by the Court.

**COUNT ELEVEN**
**Alabama Deceptive Trade Practices Act**
**Ala. Code §§ 8-19-1, *et seq.***
**(on behalf of the Alabama Subclass)**

633.    The Alabama Plaintiff, Shaun Carroll, identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Alabama Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

634.    Plaintiff brings this claim on behalf of himself and the Alabama Subclass.

635.    Apple is a "person" as defined by Ala. Code § 8-19-3(10).

636.    Plaintiff and Alabama Subclass members are "consumers" as defined by Ala. Code § 8-19-3(4).

637.    Apple received notice pursuant to Ala. Code § 8-19-10(e) concerning its wrongful conduct as alleged herein by Plaintiff and Alabama Subclass members.  However, sending pre-suit notice pursuant to Ala. Code § 8-19-10(e) would have been an exercise in futility for Plaintiff, as Apple has already been informed of the allegedly unfair and unlawful conduct as described herein as of the date of the first-filed lawsuit on March 19, 2025, and has yet to offer class members remedy in accordance with similar consumer protection statutes.

638.    Apple advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

639.    Apple engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, including:

a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

b.    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

c.    Engaging in any other unconscionable, false, misleading, or deceptive act or

1    practice in the conduct of trade or commerce.

2    640.    Apple's representations and omissions were material because they were likely to

3    deceive reasonable consumers.

4    641.    Apple intended to mislead Plaintiff and Alabama Subclass members and induce them

5    to rely on its misrepresentations and omissions.

6    642.    Apple misrepresented to Plaintiff and Alabama Subclass members the capabilities of

7    the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Alabama Subclass members acted

8    reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could

9    not have discovered.

10    643.    Apple acted intentionally, knowingly, and maliciously to violate the Alabama

11    Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Alabama Subclass members'

12    rights.  Apple's knowledge that the Apple Intelligence and Enhanced Siri features did not exist and

13    put it on notice that the iPhone 16 was not as advertised.

14    644.    As a direct and proximate result of Apple's deceptive acts and practices, Plaintiff and

15    Alabama Subclass members have suffered and will continue to suffer injury, ascertainable losses of

16    money or property, and monetary and non-monetary damages, including from not receiving the

17    benefit of their bargain in purchasing their iPhone 16(s).

18    645.    Apple's deceptive acts and practices caused substantial injury to Plaintiff and

19    Alabama Subclass members, which they could not reasonably avoid, and which outweighed any

20    benefits to consumers or to competition.

21    646.    Plaintiff and the Alabama Subclass seek all monetary and non-monetary relief

22    allowed by law, including the greater of (a) actual damages or (b) statutory damages of $100; treble

23    damages; attorneys' fees, costs, and any other relief that is just and proper.

24

25

26

27

28

## COUNT TWELVE
### Alaska Consumer Protection Act
### Alaska Stat. §§ 45.50.471, *et seq.*
### (on behalf of the Alaska Subclass)

647.    The Alaska Plaintiff, Gary Rasmussen, identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Alaska Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

648.    Plaintiff brings this claim on behalf of himself and the Alaska Subclass.

649.    Apple advertised, offered, or sold goods or services in Alaska and engaged in trade or commerce directly or indirectly affecting the people of Alaska.

650.    Alaska Subclass members are "consumers" as defined by Alaska Stat. § 45.50.561(4).

651.    Apple received notice pursuant to Alaska Stat. § 45.50.535 concerning its wrongful conduct as alleged herein by Plaintiff and Alaska Subclass members.  However, sending pre-suit notice pursuant to Alaska Stat. § 45.50.535 is an exercise in futility for Plaintiff, as Apple has already been informed of the allegedly unfair and unlawful conduct as described herein as of the date of the first-filed lawsuit on March 19, 2025, and has yet to offer class members remedy in accordance with similar consumer protection statutes.

652.    Apple engaged in unfair or deceptive acts and practices in the conduct of trade or commerce, in violation Alaska Stat. § 45.50.471, including:

    a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

    b.    Representing that goods or services are of a particular standard, quality, or grade, when they are of another;

    c.    Advertising goods or services with intent not to sell them as advertised;

    d.    Engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives, or damages a buyer in connection with the sale or advertisements of its goods or services; and

    e.    Using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material

fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of its goods or services whether or not a person was in fact misled, deceived, or damaged.

653.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

654.    Apple intended to mislead Plaintiff and Alaska Subclass members and induce them to rely on its misrepresentations and omissions.

655.    Apple acted intentionally, knowingly, and maliciously to violate Alaska's Consumer Protection Act, and recklessly disregarded Plaintiff and Alaska Subclass members' rights. Apple's knowledge of that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as advertised.

656.    As a direct and proximate result of Apple's unfair and deceptive acts and practices, Plaintiff and Alaska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

657.    Plaintiff and the Alaska Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (a) three times their actual damages or (b) statutory damages in the amount of $500; punitive damages; reasonable attorneys' fees and costs; and any other relief that is necessary and proper.

**COUNT THIRTEEN**
**Arizona Consumer Fraud Act**
**A.R.S. §§ 44-1521, *et seq.***
**(on behalf of The Arizona Subclass)**

658.    The Arizona Plaintiff, Kiana Schlessner, identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Arizona Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

659.    Plaintiff brings this claim on behalf of herself and the Arizona Subclass.

660.    Apple is a "person" as defined by A.R.S. § 44-1521(6).

661.    Apple advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

662.    Apple engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A)

663.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

664.    Apple intended to mislead Plaintiff and Arizona Subclass members and induce them to rely on its misrepresentations and omissions.

665.    Apple misrepresented to Plaintiff and Arizona Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Arizona Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

666.    Apple acted intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiff and Arizona Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

667.    As a direct and proximate result of Apple's unfair and deceptive acts and practices, Plaintiff and Arizona Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

668.    Plaintiff and Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; and reasonable attorneys' fees and costs.

**COUNT FOURTEEN**
**Colorado Consumer Protection Act**
**Colo. Rev. Stat. §§ 6-1-101, *et seq.***
**(on behalf of the Colorado Subclass)**

669.    The Colorado Plaintiff, Jacob Anderson, ("Plaintiff," for purposes of this Count), individually and on behalf of the Colorado Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

670.    Plaintiff brings this claim on behalf of himself and the Colorado Subclass.

671.    Apple is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

672.    Apple engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

673.    Plaintiff and Colorado Subclass members, as well as the general public, are actual or potential consumers of the products and services offered by Apple or successors in interest to actual consumers.

674.    Apple engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1), including:

        a.    Knowingly making a false representation as to the characteristics of products and services;

        b.    Representing that services are of a particular standard, quality, or grade, though Apple knew or should have known that there were or another;

        c.    Advertising services with intent not to sell them as advertised; and

        d.    Failing to disclose material information concerning its services which was known at the time of an advertisement or sale when the failure to disclose the information was intended to induce the consumer to enter into the transaction.

675.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

676.    Apple intended to mislead Plaintiff and Colorado Subclass members and induce them to rely on its misrepresentations and omissions.

677.    Apple misrepresented to Plaintiff and Colorado Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Colorado Subclass members acted

1    reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could

2    not have discovered.

3        678.    Apple acted intentionally, knowingly, and maliciously to violate Colorado's

4    Consumer Protection Act, and recklessly disregarded Plaintiff and Subclass members' rights.

5    Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the

6    iPhone 16 was not as it advertised.

7        679.    As a direct and proximate result of Apple's deceptive trade practices, Colorado

8    Subclass members suffered injuries to their legally protected interests.

9        680.    Apple's deceptive trade practices significantly impact the public, because Apple is

10    one of the largest cell phone manufacturers in the world, with hundreds of thousands of sales of the

11    iPhone 16 to Colorado consumers.

12        681.    Plaintiff and Colorado Subclass members seek all monetary and non-monetary relief

13    allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual

14    damages (for Apple's bad faith conduct); and reasonable attorneys' fees and costs.

15    **COUNT FIFTEEN**

16    **Connecticut Unfair Trade Practices Act**
**C.G.S.A. §§ 42-110a, Et Seq.**

17    **(on behalf of the Connecticut Subclass)**

18        682.    The Connecticut Plaintiff, Russell Crafts, ("Plaintiff," for purposes of this Count),

19    individually and on behalf of the Connecticut Subclass, repeats and alleges all Paragraphs above, as

20    if fully alleged herein.

21        683.    Plaintiff brings this claim on behalf of himself and the Connecticut Subclass.

22        684.    Apple is a "person" as defined by C.G.S.A. § 42-110a(3).

23        685.    Apple is engaged in "trade" or "commerce" as those terms are defined by C.G.S.A.

24    § 42-110a(4).

25        686.    Plaintiff will send notice to the Attorney General and Commissioner of Consumer

26    Protection pursuant to C.G.S.A. § 42-110g(c). Plaintiff will provide a file-stamped copy of the

27    Complaint to the Attorney General and Commissioner of Consumer Protection.

28

687.    Apple advertised, offered, or sold goods or services in Connecticut, and engaged in trade or commerce directly or indirectly affecting the people of Connecticut.

688.    Apple engaged in deceptive acts and practices and unfair acts and practices in the conduct of trade or commerce, in violation of the C.G.S.A. § 42-110b by, *inter alia*, misrepresenting to Plaintiff and Connecticut Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Connecticut Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

689.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

690.    Apple intended to mislead Plaintiff and Connecticut Subclass members and induce them to rely on its misrepresentations and omissions.

691.    Apple acted intentionally, knowingly, and maliciously to violate the Connecticut Unfair Trade Practices Act, and recklessly disregarded Plaintiff and Connecticut Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

692.    As a direct and proximate result of Apple's deceptive acts and practices, Plaintiff and Connecticut Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

693.    Apple's deceptive acts and practices caused substantial, ascertainable injury to Plaintiff and Connecticut Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

694.    Apple's violations of Connecticut law were done with reckless indifference to the Plaintiff and the Connecticut Subclass or was with an intentional or wanton violation of those rights.

695.    Plaintiff requests damages in the amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

**COUNT SIXTEEN**
**Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201, *et seq.***
**(on behalf of the Florida Subclass)**

696.    The Florida Plaintiffs, David Ramirez, and Michael Murphy, ("Plaintiffs," for purposes of this Count), individually and on behalf of the Florida Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

697.    Plaintiffs bring this claim on behalf of themselves and the Florida Subclass.

698.    Plaintiffs and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203(7).

699.    Apple advertised, offered, or sold goods or services in Florida and engaged in "trade or commerce," as defined by Fla. Stat. § 501.203(8), directly or indirectly affecting the people of Florida.

700.    Apple engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

701.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

702.    Apple misrepresented to Plaintiffs and Florida Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Florida Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

703.    As a direct and proximate result of Apple's unconscionable, unfair, and deceptive acts and practices, Plaintiffs and Florida Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

704.    Plaintiffs and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; and reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

**COUNT SEVENTEEN**
**Georgia Uniform Deceptive Trade Practices Act**
**Ga. Code §§ 10-1-370, *et seq.***
**(on behalf of the Georgia Subclass)**

705.    The Georgia Plaintiffs, Kristopher Huggins, and Steven Geisel, ("Plaintiffs," for purposes of this Count), individually and on behalf of the Georgia Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

706.    Plaintiffs bring this claim on behalf of themselves and the Georgia Subclass.

707.    Plaintiffs and Defendant are both is a "persons" as defined by Ga. Code § 10-1-371(5).

708.    Apple engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code § 10-1-372, including:

    a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

    b.    Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

    c.    Advertising goods or services with intent not to sell them as advertised; and

    d.    Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

709.    Apple's deceptive trade practices include:

    a.    Knowingly designing, developing, manufacturing, advertising, and selling the iPhone 16 despite the iPhone 16 not having the Enhanced Siri capabilities as intended, represented, or advertised;

    b.    Concealing material information from consumers regarding its iPhone 16 and Enhanced Siri so that consumers were unable to make informed choices when purchasing an iPhone 16;

    c.    Using uniform, deceptive business practices such as misleading advertisements, enticing consumers to spend additional money on a new iPhone 16 that did not include all functions and capabilities advertised.

710.    Apple misrepresented to Plaintiffs and Georgia Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Georgia Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

711.    Apple intended to mislead Plaintiffs and Georgia Subclass members and induce them to rely on its misrepresentations and omissions.

712.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

713.    Apple acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Georgia Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

714.    As a direct and proximate result of Apple's deceptive trade practices, Plaintiffs and Georgia Subclass members have suffered ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

715.    Plaintiffs and Georgia Subclass members seek all relief allowed by law, including reasonable attorneys' fees and costs, under Ga. Code § 10-1-373.

### COUNT EIGHTEEN
**Georgia Fair Business Practices Act**
**Ga. Code §§ 10-1-390, *et seq.***
**(on behalf of the Georgia Subclass)**

716.    The Georgia Plaintiffs, Kristopher Huggins, and Steven Geisel, ("Plaintiffs" for purposes of this Count), individually and on behalf of the Georgia Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

717.    Plaintiffs bring this claim on behalf of themselves and the Georgia Subclass.

718.    Each Plaintiff is a "consumer" who engaged in a "consumer transaction" in the form of the purchase of an iPhone 16 from Defendant, who is a "person" as defined by Ga. Code § 10-1-392(6), (10) & (24).

719.    Apple received notice pursuant to Ga. Code § 10-1-399 concerning its wrongful conduct as alleged herein by Plaintiffs and Georgia Subclass members.  However, sending pre-suit notice pursuant to Ga. Code § 10-1-399 is an exercise in futility for Plaintiffs, as Apple has already been informed of the allegedly unfair and unlawful conduct as described herein as of the date of the first-filed lawsuit on March 19, 2025, and has yet to offer class members remedy in accordance with similar consumer protection statutes. Moreover, the Georgia state legislature has passed amendments repealing Ga. Code § 10-1-399 in its entirety effective July 1, 2025.

720.    Apple engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code § 10-1-393, including:

    a.  Engaging in unfair or deceptive acts or practices in the conduct of consumer transactions;

    b.  Representing that goods or services are of a particular standard, quality, or grade if they are of another; and

    c.  Advertising goods or services with intent not to sell them as advertised.

721.    Apple's deceptive trade practices include:

    a.  Knowingly designing, developing, manufacturing, advertising, and selling the iPhone 16 despite the iPhone 16 not having the Enhanced Siri capabilities as intended, represented, or advertised;

    b.  Concealing material information from consumers regarding its iPhone 16 and Enhanced Siri so that consumers were unable to make informed choices when purchasing an iPhone 16;

    c.  Using uniform, deceptive business practices such as misleading advertisements, enticing consumers to spend additional money on a new iPhone 16 that did not include all functions and capabilities advertised.

722.    In the course of its business, Apple acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Georgia Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

723.     Apple intended to mislead Plaintiffs and Georgia Subclass members and induce them to rely on its misrepresentations and omissions.

724.     Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

725.     Apple misrepresented to Plaintiffs and Georgia Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Georgia Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

726.     As a direct and proximate result of Apple's deceptive trade practices, Plaintiffs and Georgia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

727.     Plaintiffs and Georgia Subclass members seek all relief allowed by law, including reasonable attorneys' fees and costs.

### COUNT NINETEEN
**Illinois Consumer Fraud And Deceptive Business Practices Act**
**815 ILCS §§ 505, *et seq.***
**(on behalf of the Illinois Subclass)**

728.     The Illinois Plaintiffs, Michael Hopkins, David Campos, and Scott Domek, ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

729.     Plaintiffs bring this claim on behalf of themselves and the Illinois Subclass.

730.     Apple is a "person" as defined by 815 ILCS § 505/1(c).

731.     Plaintiffs and Illinois Subclass members are "consumers" as defined by 815 ILCS § 505/1(e).

732.     Apple's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f).  Apple's conduct is described in full detail above.

733.     Apple's engaged in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense,

false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in violation of 815 ILCS § 505/2.

734.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

735.    Apple intended to mislead Plaintiffs and Illinois Subclass members and induce them to rely on its misrepresentations and omissions.

736.    The above unfair and deceptive practices and acts by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

737.    Apple acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiffs and Illinois Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

738.    As a direct and proximate result of Apple's unfair, unlawful, and deceptive acts and practices, Plaintiffs and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

739.    Plaintiffs and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, and reasonable attorneys' fees and costs.

### COUNT TWENTY
**Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS §§ 510/1, *et seq.***
**(on behalf of the Illinois Subclass)**

740.    The Illinois Plaintiffs, Michael Hopkins, David Campos, and Scott Domek, ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

741.    Plaintiffs bring this claim on behalf of themselves and the Illinois Subclass.

742.    Apple is a "person" as defined by 815 ILCS § 510/1(5).

743. Apple engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS § 510/2(a), including:

      a. Representing that goods or services have characteristics that they do not have;

      b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

      c. Advertising goods or services with intent not to sell them as advertised; and

      d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

744. Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

745. The above unfair and deceptive practices and acts by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

746. As a direct and proximate result of Apple's unfair, unlawful, and deceptive trade practices, Plaintiffs and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

747. Plaintiffs and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including reasonable attorney's fees.

### COUNT TWENTY-ONE
**Indiana Deceptive Consumer Sales Act**
**Ind. Code §§ 24-5-0.5-1, *et seq.***
**(on behalf of the Indiana Subclass)**

748. The Indiana Plaintiff Krystal Rodriguez and Colby J. Stafford identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Indiana Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

749. Plaintiffs bring this claim on behalf of themselves and the Indiana Subclass.

750. Apple is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

751.    Apple is a "supplier" as defined by § 24-5-0.5-2(a)(3)(A), because it regularly engages in or solicits "consumer transactions" within the meaning of § 24-5-0.5-2(a)(1).

752.    Apple engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

753.    Apple's representations and omissions include both implicit and explicit representations and were carried out as a scheme or artifice to defraud.

754.    Apple's acts and practices were "unfair" because they were likely to and did mislead consumers.

755.    The injury to consumers from Apple's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury.  Plaintiffs and the Indiana Subclass would not have bought the iPhone 16, or would have paid less for it, had they known it did not include the advertised Enhanced Siri.

756.    Consumers could not have reasonably avoided injury because Apple's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making.  By withholding important information from consumers about the existence (or non-existence) of advertised Apple Intelligence features including Enhanced Siri, Apple created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

757.    Apple's business practices, in concealing material information or misrepresenting the qualities, characteristics, and performance of the iPhone 16, had no countervailing benefit to consumers or to competition.

758.    Apple's acts and practices were "abusive" for numerous reasons, including:

    a.  Because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making.

    b.  Because they took unreasonable advantage of consumers' lack of understanding or insight into the existence (or non-existence) of advertised Apple Intelligence features including Enhanced Siri.

c.  Because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Apple concerning the iPhone 16, Apple Intelligence, and Enhanced Siri.

d.  Because Apple took unreasonable advantage of consumers' reasonable reliance that it was providing truthful and accurate information about the iPhone 16, Apple Intelligence, and Enhanced Siri.

759.  Apple also engaged in "deceptive" acts and practices in violation of Indiana Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including:

e.  Misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and

f.  Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not; and

760.  Apple intended to mislead Plaintiffs and Indiana Subclass members and induce them to rely on its misrepresentations and omissions.

761.  Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

762.  Apple misrepresented to Plaintiffs and Indiana Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Indiana Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

763.  Apple had a duty to disclose the above-described facts due to the circumstances of this case, as well as its:

a.  Possession of exclusive knowledge regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri;

b.  Active concealment of the true features of the iPhone 16 and Apple Intelligence,

which did not include the advertised Enhanced Siri;

    c.   Incomplete representations about the true features of the iPhone 16 and Apple Intelligence, while purposefully withholding material facts from Plaintiff and the Indiana Subclass that contradicted these representations.

764.    Apple acted intentionally, knowingly, and maliciously to violate Indiana's Deceptive Consumer Sales Act, and recklessly disregarded Plaintiffs and Indiana Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

765.    Apple received notice pursuant to Ind. Code § 24-5-0.5-5 concerning its wrongful conduct as alleged herein by Plaintiffs and Indiana Subclass members. Apple has had constructive notice of Plaintiff's demand for relief for the Indiana Subclass pursuant to Ind. Code § 24-5-0.5-5 since the filing of the first case, which contained substantially similar allegations. Accordingly, sending pre-suit notice pursuant to Ind. Code § 24-5-0.5-5 is an exercise in futility for Plaintiffs, as Apple has not cured its unfair, abusive, and deceptive acts and practices, or its violations of Indiana Deceptive Consumer Sales Act were incurable.

766.    Apple's conduct includes incurable deceptive acts that Apple engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

767.    As a direct and proximate result of Apple's uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiffs and Indiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

768.    Plaintiffs and Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; and punitive damages.

### COUNT TWENTY-TWO
**Iowa Private Right of Action for Consumer Frauds Act**
**Iowa Code § 714H.1, *et seq.***
**(on behalf of the Iowa Subclass)**

---

769.    The Iowa Plaintiffs Susan Rizzo and Matthew Karadshesh identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the Iowa Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

770.    Plaintiffs bring this claim on behalf of themselves and the Iowa Subclass.

771.    Apple, Plaintiffs, and the Iowa Subclass are "persons" as defined by Iowa Code § 714H.2(7).

772.    Plaintiffs and Iowa Subclass members are "consumers" as defined by Iowa Code § 714H.2(3).

773.    Apple's conduct described herein related to the "sale" or "advertisement" of "merchandise" as defined by Iowa Code §§ 714H.2(2), (6), & (8).

774.    Apple engaged in unfair, deceptive, and unconscionable trade practices, in violation of the Iowa Private Right of Action for Consumer Frauds Act, as described throughout and herein.

775.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

776.    Apple intended to mislead Plaintiffs and Iowa Subclass members and induce them to rely on its misrepresentations and omissions.

777.    Apple acted intentionally, knowingly, and maliciously to violate Iowa's Private Right of Action for Consumer Frauds Act, and recklessly disregarded Plaintiffs and Iowa Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

778.    As a direct and proximate result of Apple's unfair, deceptive, and unconscionable conduct, Plaintiffs and Iowa Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

779.    Plaintiffs and Iowa Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT TWENTY-THREE**
**Kentucky Consumer Protection Act**
**Ky. Rev. Stat. §§ 367.110, *et seq.***
**(on behalf of the Kentucky Subclass)**

780.    The Kentucky Plaintiff Brooklyn Swanson identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Kentucky Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

781.    Plaintiff brings this claim on behalf of herself and the Kentucky Subclass.

782.    Apple is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

783.    Apple advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. § 367.110(2).

784.    Apple engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170, as described herein.

785.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

786.    Apple intended to mislead Plaintiff and Kentucky Subclass members and induce them to rely on its misrepresentations and omissions.

787.    Plaintiff and Kentucky Subclass members' purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property as a result of Apple's unlawful acts and practices.

788.    The above unlawful acts and practices by Apple were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

789.    Apple acted intentionally, knowingly, and maliciously to violate Kentucky's Consumer Protection Act, and recklessly disregarded Plaintiff and Kentucky Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

790.    As a direct and proximate result of Apple's unlawful acts and practices, Plaintiff and Kentucky Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

791.    Plaintiff and Kentucky Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, and reasonable attorneys' fees and costs.

## COUNT TWENTY-FOUR
### Maryland Consumer Protection Act
### Md. Comm. Code §§ 13-301, *et seq.*
### (on behalf of the Maryland Subclass)

792.    The Maryland Plaintiffs Henrietta Owusu and Kaitlyn DiFerdinando identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Maryland Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

793.    Plaintiffs bring this claim on behalf of themselves and the Maryland Subclass.

794.    Apple is a person as defined by Md. Comm. Code § 13-101(h).

795.    Apple's conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined by Md. Comm. Code § 13-101(i) and § 13-303.

796.    Maryland Subclass members are "consumers" as defined by Md. Comm. Code § 13-101(c).

797.    Apple advertises, offers, or sell "consumer goods" or "consumer services" as defined by Md. Comm. Code § 13-101(d).

798.    Apple advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

799.    Apple engaged in unfair and deceptive trade practices, in violation of Md. Comm. Code § 13-301, including:

    a.    False or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers;

    b.    Representing that consumer goods or services have a characteristic that they do

not have;

c.   Representing that consumer goods or services are of a particular standard, quality, or grade that they are not;

d.   Failing to state a material fact where the failure deceives or tends to deceive;

e.   Advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered;

f.   Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

800.   Apple engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services or with respect to the extension of consumer credit, in violation of Md. Comm. Code § 13-303.

801.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

802.   Apple intended to mislead Plaintiffs and Maryland Subclass members and induce them to rely on its misrepresentations and omissions.

803.   Apple misrepresented to Plaintiffs and Maryland Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Maryland Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

804.   Apple acted intentionally, knowingly, and maliciously to violate Maryland's Consumer Protection Act, and recklessly disregarded Plaintiffs and Maryland Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

805.   As a direct and proximate result of Apple's unfair and deceptive acts and practices, Plaintiffs and Maryland Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

806. Plaintiffs and Maryland Subclass members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, and attorneys' fees and costs.

**COUNT TWENTY-FIVE**
**Massachusetts Regulation of Business and Consumer Protection Act**
**Mass. Gen. Laws Ch. 93A, §§ 1, *et seq.***
**(on behalf of the Massachusetts Subclass)**

807. The Massachusetts Plaintiff Lily Biagini identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Massachusetts Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

808. Plaintiff brings this claim on behalf of herself and the Massachusetts Subclass.

809. Apple and Massachusetts Subclass members are "persons" as meant by Mass. Gen. Laws Ch. 93A, § 1(a).

810. Apple operates in "trade or commerce" as meant by Mass. Gen. Laws Ch. 93A, § 1(b).

811. Apple advertised, offered, or sold goods or services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ch. 93A, § 1(b).

812. Demand for relief in a form substantially similar to that required by Mass. Gen. Laws Ch. 93A § 9(3) was sent to Apple upon the commencement of the original lawsuit in this matter; however, Apple did not remedy its unfair and deceptive acts and practices, nor did it offer relief to the class members by way of settlement or judgment. Apple received supplemental notice pursuant to Mass. Gen. Laws Ch. 93A § 9(3) concerning its wrongful conduct as alleged herein by Plaintiff and Massachusetts Subclass members, but this and any additional demand are and would be futile.

813. Apple engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Mass. Gen. Laws Ch. 93A, § 2(a).

814. Apple's acts and practices were "unfair" because they were likely to and indeed did mislead consumers.

815.    Consumers could not have reasonably avoided injury because Apple's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By disseminating false, and withholding accurate, information about the capabilities of the iPhone 16 and Apple Intelligence, Apple created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

816.    Apple's practices, omissions, and misrepresentations had no countervailing benefit to consumers or to competition.

817.    Apple intended to mislead Plaintiff and Massachusetts Subclass members and induce them to rely on its misrepresentations and omissions. Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

818.    Apple acted intentionally, knowingly, and maliciously to violate Massachusetts's Consumer Protection Act, and recklessly disregarded Plaintiff and Massachusetts Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

819.    As a direct and proximate result of Apple's unfair and deceptive practices, Plaintiff and Massachusetts Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

820.    Plaintiff and Massachusetts Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, double or treble damages, and attorneys' fees and costs.

**COUNT TWENTY-SIX**
**Michigan Consumer Protection Act**
**Mich. Comp. Laws §§ 445.901, *et seq.***
**(on behalf of the Michigan Subclass)**

821.    The Michigan Plaintiff, Hunter Morgan identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Michigan Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

822.    Plaintiff brings this claim on behalf of himself and the Michigan Subclass.

---

823.    Plaintiff, Apple, and Michigan Subclass members are "persons" as defined by Mich. Comp. Laws § 445.902(d).

824.    Apple advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws § 445.902(g).

825.    Apple engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws § 445.903(1), including:

      a.  Representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws § 445.903(1)(c);

      b.  Representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws § 445.903(1)(e);

      c.  Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws § 445.903(1)(bb); and

      d.  Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws § 445.903(1)(cc).

826.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

827.    Apple intended to mislead Plaintiff and Michigan Subclass members and induce them to rely on its misrepresentations and omissions.

828.    Apple acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiff and Michigan Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

829.    As a direct and proximate result of Apple's unfair, unconscionable, and deceptive practices, Plaintiff and Michigan Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

830.    Plaintiff and Michigan Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, and any other relief that is just and proper.

## COUNT TWENTY-SEVEN
### Minnesota False Statement in Advertisement Act
### Minn. Stat. § 325F.67 and Minn. Stat. § 8.31
### (on behalf of the Minnesota Subclass)

831.    The Minnesota Plaintiffs Lloyd Hagemo, Jared Bukovich, and Michael Abata identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

832.    Plaintiffs bring this claim on behalf of themselves and the Minnesota Subclass.

833.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

834.    Apple intended to mislead Plaintiffs and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

835.    Apple's fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased an iPhone 16.

836.    As a direct and proximate result of Apple's fraudulent, misleading, and deceptive practices, Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the iPhone 16.

837.    Apple made and published, and/or caused to be made and published, advertisements in the State of Minnesota containing material assertions, representations, or statements of fact which are untrue, deceptive, or misleading with intent to sell merchandise in violation of Minn. Stat. § 325F.67, as described herein.

838. Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including damages, or other equitable relief, and attorneys' fees, disbursements, and costs.

### COUNT TWENTY-EIGHT
**Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. §§ 325F.68, *et seq*., and Minn. Stat. § 8.31**
**(on behalf of the Minnesota Subclass)**

839. The Minnesota Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

840. Plaintiffs bring this claim on behalf of themselves and the Minnesota Subclass.

841. Apple, Plaintiffs, and members of the Minnesota Subclass are each a "person" as defined by Minn. Stat. § 325F.68(3).

842. Apple goods, services, commodities, and intangibles are "merchandise" as defined by Minn. Stat. § 325F.68(2).

843. Apple engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

844. Apple engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69, subd. 1, as described herein.

845. Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

846. Apple intended to mislead Plaintiffs and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

847. Apple's fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased and/or used Apple's iPhone 16.

848. As a direct and proximate result of Apple's fraudulent, misleading, and deceptive practices, Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

849.    Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including damages, and attorneys' fees, disbursements, and costs.

**COUNT TWENTY-NINE**
**Minnesota Unlawful Trade Practices Act**
**Minn. Stat. §§ 325D.09, *Et Seq.*, And Minn. Stat. § 8.31**
**(on behalf of the Minnesota Subclass)**

850.    The Minnesota Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

851.    Plaintiffs bring this claim on behalf of themselves and the Minnesota Subclass.

852.    Apple, Plaintiffs, and members of the Minnesota Subclass are each a "person" as defined by Minn. Stat. § 325D.10(a).

853.    Apple engaged in "sales" as defined by Minn. Stat. § 325D.10(c).

854.    Apple engaged in the "sale of merchandise at retail" as defined by Minn. Stat. § 325D.10(d).

855.    Apple knowingly misrepresented, directly or indirectly, the true quality of merchandise in violation of Minn. Stat. § 325D.13, as described herein.

856.    As a direct and proximate result of Apple's fraudulent, misleading, and deceptive practices, Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the iPhone 16.

857.    Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including damages or other equitable relief.

## COUNT THIRTY

**Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. §§ 325D.43,** *et seq.***, and Minn. Stat. § 8.31**
**(on behalf of the Minnesota Subclass)**

858.    The Minnesota Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

859.    Plaintiffs bring this claim on behalf of themselves and the Minnesota Subclass.

860.    By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Apple violated Minn. Stat. § 325D.44, including the following provisions: representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5); representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7); advertising goods and services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); engaging in unfair or unconscionable acts or practices, in violation of Minn. Stat. § 325D.44(1)(13); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(14).

861.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

862.    Apple intended to mislead Plaintiffs and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

863.    Apple misrepresented to Plaintiffs and Minnesota Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Minnesota Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

864.    Apple acted intentionally, knowingly, and maliciously to violate Minnesota's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Minnesota

Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

865.    As a direct and proximate result of Apple's deceptive trade practices, Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

866.    Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including attorneys' fees and costs.

## COUNT THIRTY-ONE
### Mississippi Consumer Protection Act
### Miss. Code §§ 75-24-1, *et seq.*
### (on behalf of the Mississippi Subclass)

867.    The Mississippi Plaintiff Olivia Joy Mitton identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Mississippi Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

868.    Plaintiff brings this claim on behalf of herself and the Mississippi Subclass.

869.    Apple is a "person," as defined by Miss. Code § 75-24-3(a).

870.    Apple advertised, offered, or sold goods or services in Mississippi and engaged in trade or commerce directly or indirectly affecting the people of Mississippi, as defined by Miss. Code § 75-24-3(b).

871.    Prior to filing suit, Plaintiff made reasonable attempts to resolve Plaintiff's claims via informal dispute resolution processes; however, such processes were unsuccessful.

872.    The above-described conduct violated Miss. Code § 75-24-5(2), including: representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising goods or services with intent not to sell them as advertised.

873.    Apple intended to mislead Plaintiff and Mississippi Subclass members and induce them to rely on its misrepresentations and omissions.

874.     Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

875.     Apple misrepresented to Plaintiff and Mississippi Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Mississippi Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

876.     Apple had a duty to disclose the above-described facts due to the circumstances of this case.  Apple's duty to disclose arose from its: possession of exclusive knowledge regarding the existence (or non-existence) of Apple Intelligence features including Enhanced Siri on the iPhone 16;  active concealment of the non-existence of Enhanced Siri; and incomplete representations about the iPhone 16, Apple Intelligence, and Enhanced Siri.

877.     Apple acted intentionally, knowingly, and maliciously to violate Mississippi's Consumer Protection Act, and recklessly disregarded Plaintiff and Mississippi Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

878.     As a direct and proximate result of Apple's unfair and deceptive acts or practices and Plaintiff and Mississippi Subclass members' purchase of goods or services primarily for personal, family, or household purposes, Plaintiff and Mississippi Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

879.     Plaintiff and Mississippi Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution and other relief under Miss. Code § 75-24-11, punitive damages, and reasonable attorneys' fees and costs.

**COUNT THIRTY-TWO**
**Missouri Merchandising Practices Act**
**Mo. Rev. Stat. §§ 407.05, *et seq.***
**(on behalf of the Missouri Subclass)**

880.    The Missouri Plaintiffs, David Freeman, Ronald Zemke, Michael Wood, and Mark Adams, identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Missouri Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

881.    Plaintiffs bring this claim on behalf of themselves and the Missouri Subclass.

882.    Apple is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

883.    Apple advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

884.    Plaintiffs and Missouri Subclass members purchased or leased goods or services primarily for personal, family, or household purposes.

885.    Apple engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020[1], as described herein.

886.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

887.    Apple intended to mislead Plaintiffs and Missouri Subclass members and induce them to rely on its misrepresentations and omissions.

888.    Apple acted intentionally, knowingly, and maliciously to violate Missouri's Merchandise Practices Act, and recklessly disregarded Plaintiffs and Missouri Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

889.    As a direct and proximate result of Apple's unlawful, unfair, and deceptive acts and practices, Plaintiffs and Missouri Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

890.     Plaintiffs and Missouri Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, and any other appropriate relief.

### COUNT THIRTY-THREE
**Montana Unfair Trade Practices And Consumer Protection Act**
**Mont. Code §§ 30-14-101, *et seq.***
**(on behalf of the Montana Subclass)**

891.     The Montana Plaintiff, Jennifer Conway identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Montana Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

892.     Plaintiff brings this claim on behalf of herself and the Montana Subclass.

893.     Apple is a "person" as defined by Mont. Code § 30-14-102(6).

894.     Plaintiff and Montana Subclass members are "consumers" as defined by Mont. Code § 30-14-102(1).

895.     Apple advertised, offered, or sold goods or services in Montana and engaged in trade or commerce directly or indirectly affecting the people of Montana, as defined by Mont. Code § 30-14-102(8).

896.     Apple engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation Mont. Code § 30-14-103, as described herein.

897.     Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

898.     Apple misrepresented to Plaintiff and Montana Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Montana Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

899.     Apple's acts described above are unfair and offend public policy; they are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

900.     Apple acted intentionally, knowingly, and maliciously to violate Montana's Unfair Trade Practices and Consumer Protection Act, and recklessly disregarded Plaintiff and Montana

Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

901.    As a direct and proximate result of Apple's unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, Plaintiff and Montana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

902.    Plaintiff and Montana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $500, treble damages, restitution, attorneys' fees and costs, and other relief that the Court deems appropriate.

### COUNT THIRTY-FOUR
**Nebraska Consumer Protection Act**
**Neb. Rev. Stat. §§ 59-1601, *et seq*.**
**(on behalf of the Nebraska Subclass)**

903.    The Nebraska Plaintiff, Mary L. Ryan identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Nebraska Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

904.    Plaintiff brings this claim on behalf of herself and the Nebraska Subclass.

905.    Apple and Nebraska Subclass members are each a "person" as defined by Neb. Rev. Stat. § 59-1601(1).

906.    Apple advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska, as defined by Neb. Rev. Stat. § 59-1601(2).

907.    Apple engaged in unfair and deceptive acts and practices in conducting trade and commerce, in violation of Neb. Rev. Stat. § 59-1602, as described herein.

908.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

909.    As a direct and proximate result of Apple's unfair and deceptive acts and practices, Plaintiff and Nebraska Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

910.    Apple's unfair and deceptive acts and practices complained of herein affected the public interest, including the large percentage of Nebraskans who have purchased Apple iPhone 16(s).

911.    Plaintiff and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of either (1) actual damages or (2) $1,000, civil penalties, and reasonable attorneys' fees and costs.

### COUNT THIRTY-FIVE
**Nebraska Uniform Deceptive Trade Practices Act**
**Neb. Rev. Stat. §§ 87-301, *et seq.***
**(on behalf of the Nebraska Subclass)**

912.    The Nebraska Plaintiff, Mary L. Ryan, identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Nebraska Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

913.    Plaintiff brings this claim on behalf of herself and the Nebraska Subclass.

914.    Apple and Nebraska Subclass members are "persons" as defined by Neb. Rev. Stat. § 87-301(19).

915.    Apple advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska.

916.    Apple engaged in deceptive trade practices in the course of its business, in violation of Neb. Rev. Stat. §§ 87-302(a)(5), (8), and (10), including: represented that goods and services have characteristics, uses, benefits, or qualities that they do not have; represented that goods and services are of a particular standard, quality, or grade if they are of another; and advertised its goods and services with intent not to sell them as advertised and in a manner calculated or tending to mislead or deceive.

917.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

918.    Apple intended to mislead Plaintiff and Nebraska Subclass members and induce them to rely on its misrepresentations and omissions.

919.    Apple misrepresented to Plaintiff and Nebraska Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Nebraska Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

920.    Apple acted intentionally, knowingly, and maliciously to violate Nebraska's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Nebraska Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

921.    As a direct and proximate result of Apple's deceptive trade practices, Plaintiff and Nebraska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

922.    Apple's deceptive trade practices complained of herein affected consumers at large, including the large percentage of Nebraskans who purchased iPhone 16(s).

923.    Plaintiff and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including any equitable relief, civil penalties, and attorneys' fees and costs.

## COUNT THIRTY-SIX
### Nevada Deceptive Trade Practices Act
### Nev. Rev. Stat. §§ 598.0903, *et seq.*
### (on behalf of the Nevada Subclass)

924.    The Nevada Plaintiffs, Michael Accardi and John Wells, identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Nevada Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

925.    Plaintiffs bring this claim on behalf of themselves and the Nevada Subclass.

926.    Apple advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

927. Apple engaged in deceptive trade practices in the course of its business or occupation, in violation of Nev. Rev. Stat. §§ 598.0915 and 598.0923, including:

    a. Knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale in violation of Nev. Rev. Stat. § 598.0915(5);

    b. Representing that goods or services for sale are of a particular standard, quality, or grade when Apple knew or should have known that they are of another standard, quality, or grade in violation of Nev. Rev. Stat. § 598.0915(7);

    c. Advertising goods or services with intent not to sell them as advertised in violation of Nev. Rev. Stat § 598.0915(9);

    d. Failing to disclose a material fact in connection with the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(1)(b); and

    e. Violating state and federal statutes or regulations relating to the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(1)(c).

928. Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

929. Apple misrepresented to Plaintiffs and Nevada Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Nevada Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

930. Apple acted intentionally, knowingly, and maliciously to violate Nevada's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Nevada Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

931. As a direct and proximate result of Apple's deceptive trade practices, Plaintiffs and Nevada Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

932.    Plaintiffs and Nevada Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, and attorneys' fees and costs.

**COUNT THIRTY-SEVEN**
**New Hampshire Regulation of Business Practices for Consumer Protection Act**
**N.H. Rev. Stat. §§ 358-A, Et Seq.**
**(on behalf of the New Hampshire Subclass)**

933.    The New Hampshire Plaintiff, William Passmore, identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New Hampshire Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

934.    Plaintiff brings this claim on behalf of himself and the New Hampshire Subclass.

935.    Apple is a "person" as defined by N.H. Rev. Stat. § 358-A:1(I).

936.    Apple advertised, offered, or sold goods or services in New Hampshire and engaged in trade or commerce directly or indirectly affecting the people of New Hampshire, as defined by N.H. Rev. Stat. § 358-A:1(I).

937.    Apple engaged in unfair and deceptive acts or practices in the ordinary conduct of its trade or business, in violation of N.H. Rev. Stat. § 358-A § 358-A:2(II), including:

    a.    Representing that its goods or services have characteristics, uses, or benefits that they do not have in violation of N.H. Rev. Stat. § 358-A:2(V);

    b.    Representing that its goods or services are of a particular standard or quality if they are of another in violation of N.H. Rev. Stat. § 358-A:2(VII); and

    c.    Advertising its goods or services with intent not to sell them as advertised in violation of N.H. Rev. Stat. § 358-A:2(IX).

938.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

939.    Apple acted intentionally, knowingly, and maliciously to violate New Hampshire's Consumer Protection Act, and recklessly disregarded Plaintiff and New Hampshire Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.  Apple's acts and practices went beyond the realm of strictly private transactions.

940.    As a direct and proximate result of Apple's unfair and deceptive acts and practices, Plaintiff and New Hampshire Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

941.    Plaintiff and New Hampshire Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, equitable relief, restitution, civil penalties, and attorneys' fees and costs.

## COUNT THIRTY-EIGHT
### New Jersey Consumer Fraud Act
### N.J. Stat. §§ 56:8-1, *et seq.*
### (on behalf of the New Jersey Subclass)

942.    The New Jersey Plaintiffs, Esther Woory Choi, Drew Franklin, Marc Case, Grace Kim, Amanda Marrocco, and Sam Leone, identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the New Jersey Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

943.    Plaintiffs bring this claim on behalf of themselves and the New Jersey Subclass.

944.    Apple is a "person," as defined by N.J. Stat. § 56:8-1(d).

945.    Apple sells "merchandise," as defined by N.J. Stat. § 56:8-1(c) & (e).

946.    The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

947.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

948.    Apple intended to mislead Plaintiffs and New Jersey Subclass members and induce them to rely on its misrepresentations and omissions.

949.    Apple acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded Plaintiffs and New Jersey Subclass members'

rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

950.    As a direct and proximate result of Apple's unconscionable and deceptive practices, Plaintiffs and New Jersey Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

951.    Plaintiffs and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including any equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

### COUNT THIRTY-NINE
**New Mexico Unfair Practices Act**
**N.M. Stat. §§ 57-12-1, *et seq.***
**(on behalf of the New Mexico Subclass)**

952.    The New Mexico Plaintiff, Derrick Wallace, identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New Mexico Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

953.    Plaintiff brings this claim on behalf of himself and the New Mexico Subclass.

954.    Apple is a "person" as meant by N.M. Stat. § 57-12-2(A).

955.    Apple was engaged in "trade" and "commerce" as meant by N.M. Stat. § 57-12-2(C) when engaging in the conduct alleged.

956.    The New Mexico Unfair Practices Act, N.M. Stat. §§ 57-12-2, *et seq.*, prohibits both unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce.

957.    Apple engaged in unconscionable, unfair, and deceptive acts and practices in connection with the sale of goods or services in the regular course of its trade or commerce, including the following:

    a.    Knowingly representing that its goods and services have characteristics, benefits, or qualities that they do not have, in violation of N.M. Stat. § 57-12-2(D)(5);

    b.    Knowingly representing that its goods and services are of a particular standard or

quality when they are of another in violation of N.M. Stat. § 57-12-2(D)(7);

c.   Knowingly using exaggeration, innuendo, or ambiguity as to a material fact or failing to state a material fact where doing so deceives or tends to deceive in violation of N.M. Stat. § 57-12-2(D)(14);

d.   Taking advantage of the lack of knowledge, experience, or capacity of its consumers to a grossly unfair degree to Plaintiff's and the New Mexico Subclass' detriment in violation of N.M. Stat. § 57-2-12(E)(1); and

e.   Performing these acts and practices in a way that results in a gross disparity between the value received by Plaintiff and the New Mexico Subclass and the price paid, to their detriment, in violation of N.M. Stat. § 57-2-12(E)(2).

958.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

959.    Apple intended to mislead Plaintiff and New Mexico Subclass members and induce them to rely on its misrepresentations and omissions.

960.    Apple acted intentionally, knowingly, and maliciously to violate New Mexico's Unfair Practices Act, and recklessly disregarded Plaintiff and New Mexico Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

961.    As a direct and proximate result of Apple's unfair, deceptive, and unconscionable trade practices, Plaintiff and New Mexico Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

962.    Plaintiff and New Mexico Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages or statutory damages of $300 (whichever is greater), and reasonable attorneys' fees and costs.

**COUNT FORTY**
**New York General Business Law**
**N.Y. Gen. Bus. Law §§ 349 and 350**
**(on behalf of the New York Subclass)**

963.    The New York Plaintiffs, Christian Varbanovski, Brian Beach, Mario Silva, and Margot Robinson, identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the New York Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

964.    Plaintiffs bring this claim on behalf of themselves and the New York Subclass.

965.    Apple engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

966.    Apple engaged in false advertising in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 350, as described herein.

967.    By the acts and conduct alleged herein, Defendant has committed unfair or deceptive acts and practices by making false representations and omissions regarding the iPhone.

968.    The foregoing deceptive acts and practices were directed at consumers.

969.    The foregoing deceptive acts and practices are misleading in a material way because the iPhone 16 did not in fact include the abilities, features and attributes that Defendant advertised.

970.    Plaintiffs and members of the New York Subclass were injured as a result because (a) they would not have purchased and used the iPhone 16 had they known the truth; (b) they overpaid for the iPhone 16 on account of Defendant's misrepresentations and omissions; and (c) their iPhone 16s have experienced a significant loss in use and value because of Defendant's misrepresentations and omissions.

971.    On behalf of himself and other members of the New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover his actual damages and/or three times actual damages, and reasonable attorneys' fees and costs of suit.

972.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

973.    Apple acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiffs and New York Subclass members' rights.

Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

974.    As a direct and proximate result of Apple's deceptive and unlawful acts and practices, Plaintiffs and New York Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

975.    Apple's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the millions of New Yorkers who purchased Apple iPhone 16(s).

976.    The above deceptive and unlawful practices and acts by Apple caused substantial injury to Plaintiffs and New York Subclass members that they could not reasonably avoid.

977.    Plaintiffs and New York Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, and attorney's fees and costs.

**COUNT FORTY-ONE**
**North Carolina Unfair And Deceptive Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1, *et seq.***
**(on behalf of the North Carolina Subclass)**

978.    The North Carolina Plaintiffs, Mariah L. Nelson, and Frank Gray Stevenson, Jr. identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the North Carolina Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

979.    Plaintiffs bring this claim on behalf of themselves and the North Carolina Subclass.

980.    Apple advertised, offered, or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. § 75-1.1(b).

981.    Apple engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. § 75-1.1, as described herein.

982.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

983.    Apple intended to mislead Plaintiffs and North Carolina Subclass members and induce them to rely on its misrepresentations and omissions.

984.    Apple misrepresented to Plaintiffs and North Carolina Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the North Carolina Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

985.    Apple acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiffs and North Carolina Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

986.    As a direct and proximate result of Apple's unfair and deceptive acts and practices, Plaintiffs and North Carolina Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

987.    Apple's conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. Gen. Stat. § 75-8.

988.    Plaintiffs and North Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

### COUNT FORTY-TWO
**Ohio Consumer Sales Practices Act**
**Ohio Rev. Code §§ 1345.01, *et seq.***
**(on behalf of the Ohio Subclass)**

989.    The Ohio Plaintiffs, Daniel Ruiz, and Ryan Bulcher identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

990.    Plaintiffs bring this claim on behalf of themselves and the Ohio Subclass.

991.    Plaintiffs and Ohio Subclass members are "persons," as defined by Ohio Rev. Code § 1345.01(B).

992.    Apple was a "supplier" engaged in "consumer transactions," as defined by Ohio Rev. Code §§ 1345.01(A) & (C).

993.    Apple advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

994.    Apple engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code §§ 1345.02, including:

    a.  Apple represented that its goods, services, and intangibles had performance characteristics, uses, and benefits that it did not have, in violation of Ohio Rev. Code § 1345.02(B)(1); and

    b.  Apple represented that its goods, services, and intangibles were of a particular standard or quality when they were not, in violation of Ohio Rev. Code § 1345(B)(2).

995.    Apple engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code Ann. § 1345.03, including:

    a.  Knowingly taking advantage of the inability of Plaintiffs and the Ohio Subclass to reasonably protect their interest because of their ignorance of the issues discussed herein (Ohio Rev. Code Ann. § 1345.03(B)(1)); and

    b.  Requiring Plaintiff and the Ohio Subclass to enter into a consumer transaction on terms that Apple knew were substantially one-sided in favor of Apple (Ohio Rev. Code Ann. § 1345.03(B)(5)).

996.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

997.    Apple intended to mislead Plaintiffs and Ohio Subclass members and induce them to rely on its misrepresentations and omissions.

998.    Apple acted intentionally, knowingly, and maliciously to violate Ohio's Consumer Sales Practices Act, and recklessly disregarded Plaintiffs and Ohio Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

999.    Apple's unfair, deceptive, and unconscionable acts and practices complained of herein affected the public interest, including the millions of Ohioans who purchased iPhone 16(s).

1000.    As a direct and proximate result of Apple's unfair, deceptive, and unconscionable acts and practices, Plaintiffs and Ohio Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1001.    Plaintiffs and the Ohio Subclass members seek all monetary and non-monetary relief allowed by law, including any declaratory, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

**COUNT FORTY-THREE**
**Ohio Deceptive Trade Practices Act**
**Ohio Rev. Code §§ 4165.01, *et seq.***
**(on behalf of the Ohio Subclass)**

1002.    The Ohio Plaintiffs, Daniel Ruiz, and Ryan Bulcher identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

1003.    Plaintiffs bring this claim on behalf of themselves and the Ohio Subclass.

1004.    Apple, Plaintiffs, and Ohio Subclass members are "person[s]," as defined by Ohio Rev. Code § 4165.01(D).

1005.    Apple advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

1006.    Apple engaged in deceptive trade practices in the course of its business and vocation, in violation of Ohio Rev. Code § 4165.02, including:

   a.    Representing that its goods and services have characteristics, uses, benefits, or qualities that they do not have, in violation of Ohio Rev. Code § 4165.02(A)(7);

   b.    Representing that its goods and services are of a particular standard or quality when they are of another, in violation of Ohio Rev. Code § 4165.02(A)(9); and

   c.    Advertising its goods and services with intent not to sell them as advertise, in violation of Ohio Rev. Code § 4165.02(A)(11).

1007.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1008.   Apple intended to mislead Plaintiffs and Ohio Subclass members and induce them to rely on its misrepresentations and omissions.

1009.   Apple acted intentionally, knowingly, and maliciously to violate Ohio's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Ohio Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

1010.   As a direct and proximate result of Apple's deceptive trade practices, Plaintiffs and Ohio Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1011.   Plaintiffs and Ohio Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, attorneys' fees, and any other relief that is just and proper.

### COUNT FORTY-FOUR
**Oklahoma Consumer Protection Act**
**Okla. Stat. Tit. 15, §§ 751, *et seq.***
**(on behalf of the Oklahoma Subclass)**

1012.   The Oklahoma Plaintiffs, Lindsey K. Williams and Christian Hackelman identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Oklahoma Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

1013.   Plaintiffs bring this claim on behalf of themselves and the Oklahoma Subclass.

1014.   Apple is a "person," as meant by Okla. Stat. tit. 15, § 752(1).

1015.   Apple's advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

1016.   Apple, in the course of its business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following:

> a.   Making false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions, in

violation of Okla. Stat. tit. 15, § 753(5);

b. Representing, knowingly or with reason to know, that the subjects of its consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit 15, § 753(8);

c. Advertising, knowingly or with reason to know, the subjects of its consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit 15, § 753(9);

d. Committing unfair trade practices that offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(21); and

e. Committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(21).

1017.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1018.   Apple intended to mislead Plaintiffs and Oklahoma Subclass members and induce them to rely on its misrepresentations and omissions.

1019.   Apple misrepresented to Plaintiffs and Oklahoma Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Oklahoma Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

1020.   The above unlawful practices and acts by Apple were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to Plaintiff and Oklahoma Subclass members.

1021.   Apple acted intentionally, knowingly, and maliciously to violate Oklahoma's Consumer Protection Act, and recklessly disregarded Plaintiffs and Oklahoma Subclass members'

rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

1022.  As a direct and proximate result of Apple's unlawful practices, Plaintiffs and Oklahoma Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1023.  Plaintiffs and Oklahoma Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs.

**COUNT FORTY-FIVE**
**Oregon Unlawful Trade Practices Act**
**Or. Rev. Stat. §§ 646.605, *et seq*.**
**(on behalf of the Oregon Subclass)**

1024.  The Oregon Plaintiffs, Kaitlin Goodman, and Taylor E. Oldfield-Zepeda identified above, ("Plaintiffs," for purposes of this Count), individually and on behalf of the Oregon Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

1025.  Plaintiffs bring this claim on behalf of themselves and the Oregon Subclass.

1026.  Apple is a "person," as defined by Or. Rev. Stat. § 646.605(4).

1027.  Apple engaged in the sale of "goods and services," as defined by Or. Rev. Stat. § 646.605(6)(a).

1028.  Apple sold "goods or services," as defined by Or. Rev. Stat. § 646.605(6)(a).

1029.  Apple advertised, offered, or sold goods or services in Oregon and engaged in trade or commerce directly or indirectly affecting the people of Oregon.

1030.  Apple engaged in unlawful practices in the course of its business and occupation, in violation of Or. Rev. Stat. § 646.608, included the following:

      a.  Representing that its goods and services have approval, characteristics, uses, benefits, and qualities that they do not have, in violation of Or. Rev. Stat. § 646.608(1)(e);

      b.  Representing that its goods and services are of a particular standard or quality if they are of another, in violation of Or. Rev. Stat. § 646.608(1)(g);

      c.  Advertising its goods or services with intent not to provide them as advertised, in violation of Or. Rev. Stat. § 646.608(1)(i); and

      d.  Concurrent with tender or delivery of its goods and services, failing to disclose any known material defect, in violation of Or. Rev. Stat. § 646.608(1)(t).

1031.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1032.   Apple intended to mislead Plaintiffs and Oregon Subclass members and induce them to rely on its misrepresentations and omissions.

1033.   Apple misrepresented to Plaintiffs and Oregon Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Oregon Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

1034.   Apple acted intentionally, knowingly, and maliciously to violate Oregon's Unlawful Trade Practices Act, and recklessly disregarded Plaintiffs and Oregon Subclass members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

1035.   As a direct and proximate result of Apple's unlawful practices, Plaintiffs and Oregon Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1036.   Plaintiffs and Oregon Subclass members seek all monetary and non-monetary relief allowed by law, including equitable relief, actual damages or statutory damages of $200 per violation (whichever is greater), punitive damages, and reasonable attorneys' fees and costs.

**COUNT FORTY-SIX**
**Pennsylvania Unfair Trade Practices And Consumer Protection Law**
**73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq.***
**(on behalf of the Pennsylvania Subclass)**

1037.   The Pennsylvania Plaintiffs, Colton Lipchak and Connor McKee identified above, ("Plaintiffs," for purposes of this Count), individually and on behalf of the Pennsylvania Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

1038.   Plaintiffs bring this claim on behalf of themselves and the Pennsylvania Subclass.

1039.   Apple is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

1040.   Plaintiffs and Pennsylvania Subclass members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

1041.   Apple engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. § 201-3, including the following:

  a.  Representing that its goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. § 201-2(4)(v));

  b.  Representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Stat. § 201-2(4)(vii)); and

  c.  Advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. § 201-2(4)(ix)).

1042.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1043.   Apple intended to mislead Plaintiffs and Pennsylvania Subclass members and induce them to rely on its misrepresentations and omissions.

1044.   Apple misrepresented to Plaintiffs and Pennsylvania Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Pennsylvania Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

1045.   Apple acted intentionally, knowingly, and maliciously to violate Pennsylvania Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiffs and Pennsylvania Subclass members' rights.   Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

1046.   As a direct and proximate result of Apple's unfair methods of competition and unfair or deceptive acts or practices and Plaintiffs' and the Pennsylvania Subclass' reliance on them, Plaintiffs and Pennsylvania Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1047.   Plaintiffs and Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

### COUNT FORTY-SEVEN
### Rhode Island Deceptive Trade Practices Act
### R.I. Gen. Laws §§ 6-13.1, *et seq.*
### (on behalf of the Rhode Island Subclass)

1048.   The Rhode Island Plaintiff, Luke Grave, identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Rhode Island Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

1049.   Plaintiff brings this claim on behalf of him and the Rhode Island Subclass.

1050.   Plaintiff and Rhode Island Subclass members are each a "person," as defined by R.I. Gen. Laws § 6-13.1-1(3).

1051.   Plaintiff and Rhode Island Subclass members purchased goods and services for personal, family, or household purposes.

1052.   Apple advertised, offered, or sold goods or services in Rhode Island and engaged in trade or commerce directly or indirectly affecting the people of Rhode Island, as defined by R.I. Gen. Laws § 6-13.1-1(5).

1053.   Apple engaged in unfair and deceptive acts and practices, in violation of R.I. Gen. Laws § 6-13.1-2, including:

    a.   Representing that its goods and services have characteristics, uses, and benefits that they do not have (R.I. Gen. Laws § 6-13.1-52(6)(v));

    b.   Representing that its goods and services are of a particular standard or quality when they are of another (R.I. Gen. Laws § 6-13.1-52(6)(vii));

    c.   Advertising goods or services with intent not to sell them as advertised (R.I. Gen. Laws § 6-13.1-52(6)(ix));

    d.   Engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding (R.I. Gen. Laws § 6-13.1-52(6)(xii));

    e.   Engaging in any act or practice that is unfair or deceptive to the consumer (R.I. Gen. Laws § 6-13.1-52(6)(xiii)); and

    f.   Using other methods, acts, and practices that mislead or deceive members of the public in a material respect (R.I. Gen. Laws § 6-13.1-52(6)(xiv)).

1054.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1055.   Apple intended to mislead Plaintiff and Rhode Island Subclass members and induce them to rely on its misrepresentations and omissions.

1056.   Apple acted intentionally, knowingly, and maliciously to violate Rhode Island's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Rhode Island Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

1057.   As a direct and proximate result of Apple's unfair and deceptive acts, Plaintiff and Rhode Island Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1058.   Plaintiff and Rhode Island Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $500 per Subclass Member (whichever is greater), punitive damages, any equitable relief, and attorneys' fees and costs.

## COUNT FORTY-EIGHT
### South Carolina Unfair Trade Practices Act
### S.C. Code Ann. §§ 39-5-10, *et seq.*
### (on behalf of the South Carolina Subclass)

1059.   The South Carolina Plaintiffs, Adam Ragsdale, Orlando Roddy identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the South Carolina Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

1060.   Plaintiffs bring this claim on behalf of themselves and the South Carolina Subclass.

1061.   Apple is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

1062.   South Carolina's Unfair Trade Practices Act (SC UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

1063.   Apple advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

1064.   Apple's acts and practices had, and continue to have, the tendency or capacity to deceive.

1065.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1066.   Apple intended to mislead Plaintiffs and South Carolina Subclass members and induce them to rely on its misrepresentations and omissions.

1067.   Apple misrepresented to Plaintiffs and South Carolina Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the South Carolina Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

1068.   Apple had a duty to disclose the above-described facts due to the circumstances of this case.  Apple's duty to disclose also arose from its:

    a.  Possession of exclusive knowledge regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri;

    b.  Active concealment or misrepresentations regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri; and

    c.  Incomplete representations about the iPhone 16 and Enhanced Siri, while purposefully withholding material facts from Plaintiff and the South Carolina Subclass that contradicted these representations.

1069.  Apple's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

1070.  Apple's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition; Apple engages in such acts or practices as a general rule; and such acts or practices impact the public at large, including millions of South Carolina Subclass members that purchased iPhone 16(s).

1071.  Apple unfair and deceptive acts or practices have the potential for repetition because the same kinds of actions occurred in the past, as described herein, thus making it likely that these acts or practices will continue to occur if left undeterred. Additionally, Apple's policies and procedures create the potential for recurrence of the complained-of business acts and practices.

1072.  Apple intended to mislead Plaintiffs and South Carolina Subclass members and induce them to rely on its misrepresentations and omissions.

1073.  Apple acted intentionally, knowingly, and maliciously to violate South Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiffs and South Carolina Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.  In light of this conduct, punitive damages would serve the interest of society in punishing and warning others not to engage in such conduct and would deter Apple and others from committing similar conduct in the future.

1074.  As a direct and proximate result of Apple's unfair and deceptive acts or practices, Plaintiffs and South Carolina Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1075.   Plaintiffs and South Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including damages for their economic losses, treble damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT FORTY-NINE**
**Texas Deceptive Trade Practices—Consumer Protection Act**
**Texas Bus. & Com. Code §§ 17.41, *et seq.***
**(on behalf of the Texas Subclass)**

1076.   The Texas Plaintiffs, Matthew Floyd and Michael Dallas Gotschall identified above, ("Plaintiffs" for the purposes of this count) individually and on behalf of the Texas Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

1077.   Plaintiffs bring this claim on behalf of themselves and the Texas Subclass.

1078.   Apple is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

1079.   Plaintiffs and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

1080.   Apple advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

1081.   Apple engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

    a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

    b.   Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

    c.   Advertising goods or services with intent not to sell them as advertised.

1082.   Apple intended to mislead Plaintiffs and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

1083.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1084.   Apple misrepresented to Plaintiffs and Texas Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Texas Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

1085.   Apple had a duty to disclose the above facts due to the circumstances of this case. Apple's duty to disclose arose from its:

    a.   Possession of exclusive knowledge regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri;

    b.   Active concealment or misrepresentations regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri; and

    c.   Incomplete representations about the iPhone 16 and Enhanced Siri, while purposefully withholding material facts from Plaintiff and the Texas Subclass that contradicted these representations.

1086.   Apple engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3).   Apple engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

1087.   Consumers, including Plaintiffs and Texas Subclass members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Apple.

1088.   Apple intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result.   The unfairness resulting from Apple's conduct is glaringly noticeable, flagrant, complete, and unmitigated.

1089.   Apple acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff and Texas Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

1090.   As a direct and proximate result of Apple's unconscionable and deceptive acts or practices, Plaintiffs and Texas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).  Apple's unconscionable and deceptive acts or practices were a producing cause of Plaintiffs' and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages.

1091.   Plaintiffs and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonable and necessary attorneys' fees, and any other relief which the court deems proper.

**COUNT FIFTY**
**Utah Consumer Sales Practices Act**
**Utah Code §§ 13-11-1, *et seq*.**
**(on behalf of the Utah Subclass)**

1092.   The Utah Plaintiffs Skyler Vincent Mamone Feldt and Mukesh Jethwani identified above ("Plaintiffs" for the purposes of this count) identified above, individually and on behalf of the Utah Subclass, repeat and allege all Paragraphs above, as if fully alleged herein.

1093.   Plaintiffs bring this claim on behalf of themselves and the Utah Subclass.

1094.   Apple is a "person," as defined by Utah Code § 13-11-3(5).

1095.   Apple is a "supplier," as defined by Utah Code § 13-11-3(6), because it regularly solicits, engages in, or enforces "consumer transactions," as defined by Utah Code § 13-11-3(2).

1096.   Apple engaged in deceptive and unconscionable acts and practices in connection with consumer transactions, in violation of Utah Code § 13-11-4 and Utah Code § 13-11-5, as described herein.

1097. Apple intended to mislead Plaintiffs and Utah Subclass members and induce them to rely on its misrepresentations and omissions.

1098. Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1099. Apple misrepresented to Plaintiffs and Utah Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiffs and the Utah Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

1100. Apple had a duty to disclose the above facts due to the circumstances of this case. Apple's duty to disclose arose from its:

    a. Possession of exclusive knowledge regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri;

    b. Active concealment or misrepresentations regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri; and

    c. Incomplete representations about the iPhone 16 and Enhanced Siri, while purposefully withholding material facts from Plaintiff and the Utah Subclass that contradicted these representations.

1101. Apple intentionally or knowingly engaged in deceptive acts or practices, violating Utah Code § 13-11-4(2) by:

    a. Indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;

    b. Indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

    c. Indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not;

    d. Indicating that the subject of a consumer transaction will be supplied in greater quantity (*e.g.*, more data security) than the supplier intends.

1102.   Apple engaged in unconscionable acts and practices that were oppressive and led to unfair surprise, as shown in the setting, purpose, and effect of those acts and practices.

1103.   In addition, there was an overall imbalance in the obligations and rights imposed by the consumer transactions in question, based on the mores and industry standards of the time and place where they occurred.  There is a substantial imbalance between the obligations and rights of consumers, such as Plaintiffs and the Utah Subclass, who purchased the iPhone 16(s) based upon the publicly-available information in the marketplace, and Apple, which had exclusive knowledge as to the true features, capabilities, and software included on those iPhone 16(s).

1104.   Apple's acts and practices were also procedurally unconscionable because consumers, including Plaintiffs and the Utah Subclass, had no practicable option but to purchase iPhone 16s based upon publicly-available information, despite Apple's omissions and misrepresentations.  Apple exploited this imbalance in power, and the asymmetry of information, to profit by selling the iPhone 16s based on false promises of Enhanced Siri features.

1105.   As a direct and proximate result of Apple's unconscionable and deceptive acts or practices, Plaintiffs and Utah Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1106.   Plaintiffs and Utah Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, statutory damages of $2,000 per violation, amounts necessary to avoid unjust enrichment, under Utah Code §§ 13-11-19, *et seq.*, and reasonable attorneys' fees and costs.

### COUNT FIFTY-ONE
**Virginia Consumer Protection Act**
**Va. Code Ann. §§ 59.1-196, *et seq.***
**(on behalf of the Virginia Subclass)**

1107.   The Virginia Plaintiff, Nyrek Mason, identified above ("Plaintiff" for the purposes of this count) identified above, individually and on behalf of the Virginia Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

1108.   Plaintiff brings this claim on behalf of himself and the Virginia Subclass.

1109.   The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

1110.   Apple is a "person" as defined by Va. Code Ann. § 59.1-198.

1111.   Apple is a "supplier," as defined by Va. Code Ann. § 59.1-198.

1112.   Apple engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198.  Apple advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

1113.   Apple engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

1114.   Apple intended to mislead Plaintiff and Virginia Subclass members and induce them to rely on its misrepresentations and omissions.

1115.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1116.   Apple misrepresented to Plaintiff and Virginia Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the Virginia Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

1117.   Apple had a duty to disclose these facts due to the circumstances of this case.  Apple's duty to disclose also arose from its:

    a.   Possession of exclusive knowledge regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri;

    b.   Active concealment or misrepresentations regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri; and

    c.   Incomplete representations about the iPhone 16 and Enhanced Siri, while

purposefully withholding material facts from Plaintiff and the Virginia Subclass that contradicted these representations.

1118.  The above-described deceptive acts and practices also violated the following provisions of VA Code § 59.1-200(A):

    a.  Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

    b.  Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and

    c.  Advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

1119.  Apple acted intentionally, knowingly, and maliciously to violate Virginia's Consumer Protection Act, and recklessly disregarded Plaintiff and Virginia Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.  An award of punitive damages would serve to punish Apple for its wrongdoing and warn or deter others from engaging in similar conduct.

1120.  As a direct and proximate result of Apple's deceptive acts or practices, Plaintiffs and Virginia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1121.  Plaintiff and Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, punitive damages, and attorneys' fees and costs.

## COUNT FIFTY-TWO
### Washington Consumer Protection Act
### Wash. Rev. Code Ann. §§ 19.86.010, *et seq*.
### (on behalf of the Washington Subclass)

1122.   The Washington Plaintiff, Jacob Kicha identified above, ("Plaintiff" for the purposes of this count) identified above, individually and on behalf of the Washington Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

1123.   Plaintiff brings this claim on behalf of himself and the Washington Subclass.

1124.   Apple is a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

1125.   Apple advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010(2).

1126.   Apple engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, as described herein.

1127.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1128.   Apple acted intentionally, knowingly, and maliciously to violate Washington's Consumer Protection Act, and recklessly disregarded Plaintiff and Washington Subclass members' rights.  Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

1129.   Apple's conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, and/or injured persons and had and has the capacity to injure persons. Further, its conduct affected the public interest, including the at least hundreds of thousands of Washingtonians affected by Apple's deceptive business practices.

1130.   As a direct and proximate result of Apple's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and Washington Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1131.   Plaintiff and Washington Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, civil penalties, and attorneys' fees and costs.

**COUNT FIFTY-THREE**
**West Virginia Consumer Credit And Protection Act**
**W. Va. Code §§ 46A-6-101, *et seq.***
**(on behalf of the West Virginia Subclass)**

1132.   The West Virginia Plaintiff, Kyra Burke identified above ("Plaintiff" for the purposes of this count) identified above, individually and on behalf of the West Virginia Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein

1133.   Plaintiff brings this claim on behalf of herself and the West Virginia Subclass.

1134.   Plaintiff and West Virginia Subclass members are "consumers," as defined by W. Va. Code § 46A-6-102(2).

1135.   Apple engaged in "consumer transactions," as defined by W. Va. Code § 46A-6-102(2).

1136.   Apple advertised, offered, or sold goods or services in West Virginia and engaged in trade or commerce directly or indirectly affecting the people of West Virginia, as defined by W. Va. Code § 46A-6-102(6).

1137.   Apple received notice pursuant to W. Va. Code § 46A-5-108(a) concerning its wrongful conduct as alleged herein by Plaintiff and West Virginia Subclass members.  However, sending pre-suit notice pursuant to W. Va. Code § 46A-5-108(a) is an exercise in futility for Plaintiff, because, despite being on knowledge of the deceptive acts and practices complained of herein in this lawsuit as of the date of the first-filed lawsuit on March 19, 2025, Apple has not cured its unfair and deceptive acts and practices.

1138.   Apple engaged in unfair and deceptive business acts and practices in the conduct of trade or commerce, in violation of W. Va. Code § 46A-6-104, as described herein.

1139.   Apple's unfair and deceptive acts and practices also violated W. Va. Code § 46A-6-102(7), including:

    a.   Representing that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits or quantities that they do not have;

b. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another;

c. Advertising goods or services with intent not to sell them as advertised;

d. Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

e. Using deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; and

f. Advertising, displaying, publishing, distributing, or causing to be advertised, displayed, published, or distributed in any manner, statements and representations with regard to the sale of goods, which are false, misleading or deceptive or which omit to state material information which is necessary to make the statements therein not false, misleading or deceptive.

1140.  Apple's unfair and deceptive acts and practices were unreasonable when weighed against the need to develop or preserve business, and were injurious to the public interest, under W. Va. Code § 46A-6-101.

1141.  Apple's acts and practices were additionally "unfair" under W. Va. Code § 46A-6-104 because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

1142.  The injury to consumers from Apple's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury.  The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

1143.   Consumers could not have reasonably avoided injury because Apple's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making.   By withholding important information from consumers, Apple created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

1144.   Apple's business practices had no countervailing benefit to consumers or to competition.

1145.   Apple's acts and practices were additionally "deceptive" under W. Va. Code § 46A-6-104 because Apple made representations or omissions of material facts that misled or were likely to mislead reasonable consumers, including Plaintiff and West Virginia Subclass members.

1146.   Apple intended to mislead Plaintiff and West Virginia Subclass members and induce them to rely on its misrepresentations and omissions.

1147.   Apple representations and omissions were material because they were likely to deceive reasonable consumers.

1148.   Apple misrepresented to Plaintiff and West Virginia Subclass members the capabilities of the iPhone 16 with regard to Enhanced Siri. Plaintiff and the West Virginia Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

1149.   Apple had a duty to disclose the above-described facts due to the circumstances of this case.  Apple's duty to disclose arose from its:

    a.  Possession of exclusive knowledge regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri;

    b.  Active concealment or misrepresentations regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri; and

    c.  Incomplete representations about the iPhone 16 and Enhanced Siri, while purposefully withholding material facts from Plaintiff and the Virginia Subclass that contradicted these representations.

1150.  Apple's omissions were legally presumed to be equivalent to active misrepresentations because Apple intentionally prevented Plaintiff and West Virginia Subclass members from discovering the truth regarding the non-existence of Enhanced Siri.

1151.  Apple acted intentionally, knowingly, and maliciously to violate West Virginia's Consumer Credit and Protection Act, and recklessly disregarded Plaintiff and West Virginia Subclass members' rights.  Apple's unfair and deceptive acts and practices were likely to cause serious harm, and Apple knew that its deceptive acts would cause harm based upon its business practices and exclusive knowledge of the omissions and misrepresentations herein.

1152.  As a direct and proximate result of Apple's unfair and deceptive acts or practices and Plaintiff and West Virginia Subclass members' purchase of goods or services, Plaintiff and West Virginia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1153.  Plaintiff and West Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $200 per violation under W. Va. Code § 46A-6-106(a), restitution, any equitable relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT FIFTY-FOUR
### Wisconsin Deceptive Trade Practices Act
### Wis. Stat. §§ 100.18, *et seq.*
### (on behalf of the Wisconsin Subclass)

1154.  The Wisconsin Plaintiff, Clint Gammons identified above, ("Plaintiff" for this count), individually and on behalf of the Wisconsin Subclass, repeats and alleges all Paragraphs above, as if fully alleged herein.

1155.  Plaintiff brings this claim on behalf of him and the Wisconsin Subclass.

1156.  Apple is a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

1157.  Plaintiff and Wisconsin Subclass members are members of "the public," as defined by Wis. Stat. § 100.18(1).

1158.   With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Apple to members of the public for sale, use, or distribution, Apple made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

1159.   Apple also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

1160.   Apple intended to mislead Plaintiff and Wisconsin Subclass members and induce them to rely on its misrepresentations and omissions.

1161.   Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

1162.   Apple had a duty to disclose the above-described facts due to the circumstances of this case.  Apple's duty to disclose arose from its:

a.   Possession of exclusive knowledge regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri;

b.   Active concealment or misrepresentations regarding the true features of the iPhone 16 and Apple Intelligence, which did not include the advertised Enhanced Siri; and

c.   Incomplete representations about the iPhone 16 and Enhanced Siri, while purposefully withholding material facts from Plaintiff and the Virginia Subclass that contradicted these representations.

1163.   Apple's failure to disclose the above-described facts is the same as actively representing that those facts do not exist.

1164.   Apple acted intentionally, knowingly, and maliciously to violate the Wisconsin Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Wisconsin Subclass

members' rights. Apple's knowledge that the advertised Enhanced Siri features did not exist put it on notice that the iPhone 16 was not as it advertised.

1165.   As a direct and proximate result of Apple's deceptive acts or practices, Plaintiff and Wisconsin Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their iPhone 16(s).

1166.   Apple had an ongoing duty to all Apple customers to refrain from deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

1167.   Plaintiff and Wisconsin Subclass members seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat. § 100.18(11)(b)(2), and punitive damages.

## IX.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Class as follows:

A.      For an order certifying the Nationwide Class and the afore-mentioned Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class, and Plaintiffs' attorneys as Class Counsel;

B.      For an order declaring that Apple's conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiffs, the Nationwide Class and the Subclasses on all counts asserted herein;

D.      For actual, compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For an order awarding Plaintiffs, the Nationwide Class and the Subclasses their reasonable attorneys' fees and expense and costs of suit.

# X.   JURY TRIAL DEMAND

1168.   Plaintiffs demand a trial by jury on all issues so triable.


**CLARKSON LAW FIRM, P.C.**

Dated: July 21, 2025

By:   /s/   *Ryan J. Clarkson*
_____
RYAN J. CLARKSON
SHIREEN M. CLARKSON
YANA HART
BRYAN P. THOMPSON


**KAPLAN FOX & KILSHEIMER LLP**

Dated: July 21, 2025

By:   /s/   *Laurence D. King*
_____
LAURENCE D. KING
FREDERIC S. FOX
MATTHEW B. GEORGE
BLAIR E. REED
CLARISSA R. OLIVARES


**COTCHETT, PITRE & McCARTHY, LLP**

Dated: July 21, 2025

By:   /s/   *Brian Danitz*
_____
BRIAN DANITZ
JOSEPH W. COTCHETT
KARIN B. SWOPE
PIERCE H. STANLEY
CAROLINE A. YUEN

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*