RYAN J. CLARKSON (SBN 257074)
rclarkson@clarksonlawfirm.com
YANA HART (SBN 306499)
yhart@clarksonlawfirm.com
BRYAN P. THOMPSON (SBN 354683)
bthompson@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

LAURENCE D. KING (SBN 206423)
lking@kaplanfox.com
MATTHEW B. GEORGE (SBN 239322)
mgeorge@kaplanfox.com
BLAIR E. REED (SBN 316791)
breed@kaplanfox.com
CLARISSA OLIVARES (SBN 343455)
colivares@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Tel: (415) 772-4700
Fax: (415) 772-4707

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
BRIAN DANITZ (SBN 247403)
bdanitz@cpmlegal.com
KARIN B. SWOPE (*Pro Hac Vice*)
kswope@cpmlegal.com
ELLE D. LEWIS (SBN 238329)
elewis@cpmlegal.com
CAROLINE A. YUEN (SBN 354388)
cyuen@cpmlegal.com
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Tel: (650) 697-6000
Fax: (650) 697-0677

*Interim Co-Lead Counsel [Additional Counsel Listed Below]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER LANDSHEFT, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:25-cv-02668-NW<br><br>**Consolidated Class Action**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  June 17, 2026<br>Time:  9:00 a.m.<br>Judge: Hon. Noël Wise<br>Crtm:  3 – 5th Floor |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2026 at 9:00 a.m., in Courtroom 3 on the 5th Floor of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Noël Wise, presiding, Named Plaintiffs[1] will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (i) preliminarily approving the proposed Settlement establishing a $250,000,000.00 non-reversionary Qualified Settlement Fund; (ii) certifying a class for settlement purposes ("Settlement Class"); (iii) approving the form and manner of notice to the Settlement Class; (iv) approving the selection of the Settlement Administrator; (v) appointing Clarkson Law Firm, P.C., Kaplan Fox & Kilsheimer LLP, and Cotchett, Pitre & McCarthy as Class Counsel, and their clients as Class Representatives; and (vi) scheduling a Final Approval Hearing before the Court.

The proposed Settlement is within the range of what is fair, reasonable, and adequate such that notice of its terms may be disseminated to Settlement Class Members and a Final Approval Hearing to finally approve the proposed Settlement scheduled.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Joint Declaration of Ryan J. Clarkson, Brian Danitz, and Laurence D. King in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Settlement ("Joint Declaration"), and the exhibits attached thereto, the Settlement Agreement dated May 5, 2026 ("Settlement"), and the exhibits attached thereto, the Declarations of Jonathan D. Carameros, Bryan Heller, Colin Weir, Steven Gaskin, and the exhibits thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement is within the range of fairness, reasonableness, and adequacy as to warrant: (i) preliminarily approving the proposed Settlement establishing a $250 million cash, non-reversionary Qualified Settlement Fund; (ii) certifying a class for settlement purposes

---

[1] Unless otherwise noted, all capitalized words are defined in the Settlement Agreement, attached as Exhibit 1 to the Joint Declaration.

("Settlement Class"); (iii) approving the form and manner of notice to the Settlement Class; (iv) approving the selection of the Settlement Administrator; (v) appointing Ryan Clarkson of Clarkson Law Firm, P.C., Brian Danitz of Cotchett, Pitre & McCarthy, LLP, and Laurence King of Kaplan Fox & Kilsheimer LLP as Class Counsel, and their clients as Class Representatives; and (vi) scheduling a Final Approval Hearing for the Settlement as well as consideration of Named Plaintiffs' forthcoming motions for Attorneys' Fees, Service Awards, and reimbursement of litigation expenses.

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......................................2

      A.    Factual Background ...............................................................................................2

      B.    Procedural History ...............................................................................................3

III.  THE BENEFITS AND KEY TERMS OF THE PROPOSED SETTLEMENT...........................7

      A.    Class Definition ...................................................................................................7

      B.    Monetary Relief for Class Members.....................................................................8

      C.    Released Claims....................................................................................................8

      D.    Remaining Settlement Fund Allocation................................................................9

      E.    Settlement Administration ....................................................................................9

      F.    The Settlement's Notice Plan..............................................................................10

IV.   ARGUMENT....................................................................................................................11

      A.    Conditional Class Certification of the Settlement Class is Warranted ..............11

            1.    Named Plaintiffs Satisfy Rule 23(a) .......................................................11

            2.    Plaintiffs Satisfy Rule 23(b) Standards...................................................12

      B.    The Court Should Appoint Interim Co-Lead Counsel as Class Counsel...........14

      C.    The Court Should Appoint Named Plaintiffs as Class Representatives ............14

      D.    The Settlement is Fair, Reasonable, and Adequate............................................14

            1.    The Proposed Settlement is the Product of an Arms-Length, Non-Collusive, Negotiated Resolution....................................................................................15

                  a.    The Proposed Settlement is Supported by Experienced Counsel ..............16

                  b.    The Stage of the Proceedings and the Discovery Completed....................17

            2.    The Settlement Guidelines are satisfied...................................................18

V.    CONCLUSION.................................................................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,

    No. 3:16-CV-05486, 2018 WL 8949777, (N.D. Cal. Oct. 5, 2018) ...................................................... 13

*Amchem Prods., Inc. v. Windsor*,

    521 U.S. 591 (1997).......................................................................................................................... 13

*Briseno v. Henderson*,

    998 F.3d 1014 (9th Cir. 2021) ........................................................................................................ 15

*Comcast Corporation v. Behrend,*

    569 U.S. 27 (2013)............................................................................................................................ 19

*Dennis v. Kellogg Co.*,

    697 F.3d 858 (9th Cir. 2012) ......................................................................................................... 14

*Ebarle v. Lifelock, Inc.*,

    No. 15-CV-00258-HSG, 2016 WL 234364, (N.D. Cal. Jan. 20, 2016)................................................. 12

*Ellis v. Naval Air Rework Facility,*

    87 F.R.D. 15 (N.D. Cal. 1980)......................................................................................................... 16

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ........................................................................................................ 13

*Hanon v. Dataproducts Corp.*,

    976 F.2d 497 (9th Cir. 1992) .......................................................................................................... 12

*Harris v. Vector Mktg. Corp.*,

    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................................................................. 16

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) .......................................................................................................... 15

*In re Hyundai & Kia Fuel Econ. Litig.*,

    926 F.3d 539 (9th Cir. 2019) ................................................................................................... 13, 14

*In re Lenovo Adware Litig.*,

No. 15-MD-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ........................................... 15

*In re MacBook Keyboard Litig.*,

No. 5:18-CV-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023)........................................... 24

*In re Mego Fin. Corp. Sec. Litig.*,

213 F.3d 454 (9th Cir. 2000) ........................................................................................................ 12, 18

*In re MGM Mirage Sec. Litig.*,

708 F. App'x 894 (9th Cir. 2017) ....................................................................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,

779 F.3d 934 (9th Cir. 2015) .............................................................................................................. 14

*In re VNGR Beverage, LLC Litig.*,

No. 24-CV-03229-HSG, 2025 WL 1489714 (N.D. Cal. May 23, 2025)............................................. 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,

No. 2672 CRB (JSC), 2016 WL 6248426, (N.D. Cal. Oct. 25, 2016)................................................. 17

*Jabbari v. Farmer*,

965 F.3d 1001 (9th Cir. 2020) ............................................................................................................ 13

*Kang v. Fyson,*

No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) ................................................................ 16

*Kang v. Wells Fargo Bank, N.A.,*

No. 17-CV-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ............................................... 16

*Lytle v. Nutramax Laby's, Inc.*,

114 F.4th 1011 (9th Cir. 2024), cert. denied, 145 S. Ct. 1308 (2025)................................................ 19

*Meek v. SkyWest, Inc.*,

562 F. Supp. 3d 488 (N.D. Cal. 2021) ................................................................................................ 13

*Nguyen v. Nissan N. Am.*, Inc.,

932 F.3d 811 (9th Cir. 2019) .............................................................................................................. 19

*Noll v. eBay, Inc.*,

309 F.R.D. 593 (N.D. Cal. 2015)........................................................................................................ 12

*Noohi v. Johnson & Johnson Consumer Inc.*,

  146 F.4th 854 (9th Cir. 2025) ................................................................................................ 19

*Phillips Co. v. Shutts*,

  472 U.S. 797 (1985) .............................................................................................................. 13

*Roes, 1-2 v. SFBSC Mgmt., LLC*,

  944 F.3d 1035 (9th Cir. 2019) .............................................................................................. 15

*Russell v. Kohl's Dept. Stores, Inc.*,

  No. ED CV 15-1143 RGK, 2016 WL 6694958 (C.D. Cal. Apr. 11, 2016) .......................... 23

*Taylor v. Google, LLC*,

  No. 20-CV-07956-VKD, 2026 WL 628161 (N.D. Cal. Mar. 5, 2026) ................................. 17

*Tyson Foods, Inc. v. Bouaphakeo*,

  577 U.S. 442 (2016) .............................................................................................................. 13

*Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*,

  173 F.3d 713 (9th Cir. 1999) ................................................................................................ 21

*Waller v. Hewlett-Packard Co.*,

  295 F.R.D. 472 (S.D. Cal. 2013) .......................................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,

  564 U.S. 338 (2011) ......................................................................................................... 11, 12

*Wang v. Chinese Daily News, Inc.*,

  737 F.3d 538 (9th Cir. 2013) ................................................................................................ 11

*Williamson v. McAfee, Inc.*,

  No. 5:14-cv-00158-EJD, 2016 WL 4524307  (N.D. Cal. Aug. 30, 2016) ............................ 23

**Statutes**

28 U.S.C. § 1715 ......................................................................................................................... 24

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ................................................................................. 19

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ................................................................................. 19

Cal. Civ. Code §§ 1780, *et seq.* ................................................................................................. 19

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................... 4

Fed. R. Civ. P. 23 ........................................................................................................... 2, 11

Fed. R. Civ. P. 23(a) ........................................................................................................ 11

Fed. R. Civ. P. 23(a)(1) .................................................................................................... 11

Fed. R. Civ. P. 23(a)(2) .................................................................................................... 12

Fed. R. Civ. P. 23(a)(3) .................................................................................................... 12

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 11, 12

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 14

Fed. R. Civ. P. 9(b) ............................................................................................................ 4

Fed. R.Civ. P. 23(b) ......................................................................................................... 11

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.     INTRODUCTION

Plaintiffs seek preliminary approval of a Two-Hundred and Fifty Million dollar ($250,000,000.00) non-reversionary cash settlement on behalf of Settlement Class Members who purchased all models of iPhone 16 and certain models of iPhone 15 ("Eligible Devices")[2] between June 10, 2024 to March 29, 2025. If approved, the Settlement will provide meaningful, timely relief to millions of consumers nationwide.

The lawsuit alleged that Defendant Apple Inc. ("Defendant" or "Apple") violated consumer protection laws when it advertised its new generation of iPhones as a breakthrough in artificial intelligence ("AI"), including significant enhancements to Siri, iPhone's digital assistant ("Enhanced Siri"). Apple introduced Enhanced Siri features as part of "Apple Intelligence," a suite of AI-powered features for certain iPhone, iPad, and Mac products. Plaintiffs alleged that Apple showcased a fully operable Enhanced Siri features in its marketing campaign even though the feature did not yet exist. According to the complaint, Apple allegedly saturated the market with deceptive ads, inducing consumers to purchase iPhones based on the promise of certain Enhanced Siri features. It further alleged that public reaction was swift and intense when consumers learned that the Enhanced Siri features would be released later than initially anticipated.

Because the case had not yet reached class certification, it required an unusually intensive and front-loaded effort to achieve the result obtained. Plaintiffs retained leading experts in false advertising damages, consumer perception, and survey methodology. They designed and executed robust consumer surveys and developed detailed expert analysis quantifying the amount consumers allegedly overpaid due to the challenged representations. Plaintiffs also reviewed tens of thousands of pages of technical materials, marketing files, and internal communications concerning the development and timing of Enhanced Siri features.

---

[2] Unless otherwise noted, all capitalized words are as defined in the Settlement Agreement, attached as Exhibit 1 to the Joint Declaration of the Interim Co-Lead Counsel. "Eligible Devices" include the iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 15 Pro, and iPhone 15 Pro Max. The number of Eligible Devices is approximately 37 million.

The Parties engaged in three full-day mediation sessions before Hon. Layn R. Phillips (Ret.), a mediator renowned for resolving the nation's largest and most complex legal disputes. During these sessions, the Parties presented evidence, expert analysis, and legal argument in a manner akin to judicial hearings. After reaching an agreement in principle at the second session, Plaintiffs conducted months of extensive confirmatory discovery, involving additional document productions and securing sworn testimony about underlying facts from Apple personnel, to ensure the Settlement was in the best interests of the Settlement Class.

The result is exceptional. The $250 million non-reversionary common fund will provide Settlement Class Members who timely submit valid Claim Forms with a presumptive Per-Device Payment of $25 for each Eligible Device, which may decrease or increase up to $95 per device depending on claim volume and other factors. Both on a global and per capita basis, the Settlement represents an excellent recovery relative to the damages sought as informed by expert analyses of the price premium attributable to Apple's alleged marketing of Enhanced Siri features. The Settlement also reflects that Apple anticipates delivering additional Siri Apple Intelligence features in future software updates at no additional cost.

The Settlement delivers relief far sooner than continued litigation would allow. There would also be risks at each successive phase of litigation due to the novelty of AI-related claims, unsettled legal questions surrounding how reliance and damages should be evaluated for AI-integrated products marketed through a multiplicity of non-traditional channels, and the rapidly evolving technological landscape, including the timing of the features' ultimate deployment. The Settlement eliminates these risks and ensures that consumers receive meaningful compensation now.

As further explained below, preliminary approval is warranted because the settlement satisfies all Northern District of California's Guidelines for Preliminary Approval of Class Action Settlements (the "Settlement Guidelines" or "Guidance"), is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23, and is in the best interests of the Class.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

This case arises from Apple's advertising campaign involving "Apple Intelligence" on the Eligible Devices. The following allegations are taken from Plaintiffs' Consolidated Class Action Complaint

("CCAC"), ECF No. 39. As alleged, Apple launched its campaign in summer 2024. *Id.* ¶ 4. Plaintiffs allege that Apple prominently showcased Enhanced Siri features in keynote presentations, press releases, commercials, and viral videos, including one released shortly before launch featuring acclaimed actor Bella Ramsey interacting with the Enhanced Siri features. *Id.* ¶ 7-9, 19-20. This message was repeated across numerous media channels. *Id.* ¶ 8, 20. Enhanced Siri features, however, were not available on the Eligible Devices at the time of sale. ¶ 11. Plaintiffs claim that Apple nonetheless saturated the market with these ads. *Id.* ¶ 17. Each Plaintiff alleges exposure to Apple's pervasive campaign and that they would not have purchased the Eligible Devices or would have paid significantly less, had they known Enhanced Siri features were not available. *Id.* ¶ 13. They also claim that numerous purchasers, like Plaintiffs, expressed outrage after discovering that the Enhanced Siri features would be released later than initially anticipated. *Id.* at ¶ 28. Plaintiffs allege that this is consistent with Morgan Stanley's survey data showing "Upgraded Siri digital assistant" was the Apple Intelligence feature that prospective new model iPhone buyers were most interested in. *Id.* ¶ 13, 27. Apple's advertising also drew the attention of the Better Business Bureau's National Advertising Division, which found that: Apple's claim that Apple Intelligence is "available now" conveyed that the updated Siri was available at launch, when it was not. ¶ 25. In March 2025, Apple informed consumers that Enhanced Siri features would not be delivered until a future date.

**B.      Procedural History**

On March 19, 2025, Plaintiff Landsheft, represented by Clarkson Law Firm, P.C. ("Clarkson") filed the first putative class action in this matter, which was assigned to this Court. Jt. Decl., ⁋ 11. Seven related actions were then filed in, removed to, or transferred to this District, including those filed by Plaintiffs represented by Cotchett, Pitre & McCarthy, LLP ("CPM") and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"). *Id.* Plaintiffs' Counsel coordinated early and agreed that this case would require substantial resources to litigate on multiple fronts and organized accordingly. *Id.* ⁋ 11. The Court approved the proposed leadership structure on May 22, 2025, appointing Clarkson, CPM, and Kaplan Fox as Interim Co-Lead Counsel. ECF No. 28; Jt. Decl., ⁋ 12.[3]

Interim Co-Lead Counsel prepared a Consolidated Class Action Complaint ("CCAC"). ECF No.

---

[3] "Jt. Decl." refers to the Joint Declaration of Interim Co-Lead Counsel. "Ex." refers to exhibits thereto.

39. That effort required significant additional factual and legal investigation, together with the vetting of hundreds of potential class representatives to secure broad state-by-state representation. Joint Decl ¶ 13. The CCAC, filed on July 21, 2025, spanned more than 200 pages, contained over 1,100 paragraphs of allegations based on independent investigation, named 69 Plaintiffs as putative class representatives, and asserted 54 causes of action asserted under nearly every states' consumer protection statutes. *Id.*

On September 25, 2025, Apple moved to dismiss the CCAC. *Id.* ¶ 14; ECF No. 47. Apple advanced numerous defenses, including Rule 12 and Rule 9(b) challenges premised on alleged failures to plead reliance on marketing claims about Enhanced Siri features. *Id.* Apple also argued that its marketing was not misleading because near-two dozen Apple Intelligence features had already been delivered and because Apple said from the outset that these features would be delivered over time and continue to evolve. *Id.* Apple further previewed arguments it would raise at class certification, summary judgment, and trial, including whether a nationwide class could be certified based on application of the California choice of law provisions in Apple's iOS Software License Agreement and Media Services Terms and Conditions, which Apple contends do not apply to Plaintiffs' claims. *Id.* Plaintiffs filed a robust Opposition to Apple's Motion to Dismiss on November 6, 2025, and Apple's Reply brief was filed on December 3, 2025. ECF No. 64.

While preparing the CCAC, Plaintiffs actively negotiated with Apple initial case management, scheduling, and discovery protocols, while also interviewing and working with multidisciplinary experts. Jt. Decl., ¶ 15. The Parties held a Rule 26 conference on July 29, 2025. *Id.* Plaintiffs issued an initial set of 68 document requests on October 1, 2025. *Id.* Plaintiffs also prepared written discovery materials, including a protocol for the production of electronically-stored information ("ESI") and a protective order governing the confidential treatment of documents, and participated in substantial discussions with Apple concerning these issues. *Id.* Plaintiffs also conducted a competitive bidding process and retained an ESI vendor to support document review, forensic imaging, and related discovery efforts. *Id.* ¶ 16. Apple objected to many of Plaintiffs' discovery requests as, among other items, overbroad, unduly burdensome, and irrelevant to Plaintiffs' claims, requiring extensive meet and confer efforts. *Id.*

Apple produced its first set of documents on December 3, 2025, and began rolling productions thereafter. *Id.* ¶ 17. Plaintiffs drafted a document review and coding protocol manual and promptly

assigned review to a dedicated team of attorneys. *Id.* Apple continued rolling productions of documents both during the course of litigation and settlement negotiations as confirmatory discovery. *Id.* Plaintiffs also served two sets of Interrogatories to which Apple provided detailed and substantive verified responses regarding the development and timing of Enhanced Siri features and other core facts. *Id.* Where details remained unclear, Apple provided follow-up clarification and detail through meet and confers. Plaintiffs also conducted an interview with a designated Apple employee to ensure all remaining questions were answered. *Id.*

Plaintiffs' independent factual investigation continued as well, including the engagement of an investigative firm to assist in identifying potential whistleblowers and develop evidence regarding the roles, responsibilities, and involvement of relevant Apple personnel. *Id.* ¶ 18. Plaintiffs' Counsel separately gathered and catalogued all public statements, filings, social media posts, and reporting concerning Apple Intelligence and Enhanced Siri features. *Id.* Throughout the litigation, Plaintiffs monitored all developments concerning Apple's rollout of Apple Intelligence and Enhanced Siri features, including software updates, departures of Apple personnel, and potential third-party development partnerships with Apple. *Id.*

Plaintiffs conferred with multiple experts across all key dimensions of the case. *Id.* ¶ 19. With respect to damages, Plaintiffs retained an accomplished survey expert, Steve Gaskin, and an economist, Colin Weir, who have been admitted as testifying experts in numerous large scale class actions involving consumer deception. *Id.* ¶ 43. Their work in this case and their findings are set forth in more detail in their accompanying Declarations. *See Id.*, ¶ 43 and Exhibits 4 and 5.

While briefing Apple's Motion to Dismiss and engaging in discovery, the Parties agreed to retain the Hon. Layn R. Phillips (Ret.) of Phillips ADR, a nationally recognized mediator for the largest and most complex legal disputes across the country. *Id.* ¶ 20. The Parties attended an initial all-day mediation session with Judge Phillips on October 24, 2025. *Id.* In advance of that mediation, the Parties exchanged detailed mediation briefs and rebuttal reports. *Id.* Apple also produced documents and information to enable the Parties to engage in a productive mediation. *Id.* Plaintiffs worked with their experts to conduct consumer surveys and related analyses to assess the range of potential damages. *Id.* At the mediation, the Parties presented oral arguments highlighting core evidence on both sides, and Judge Phillips was assisted

by Caroline Cheng, a former General Counsel for PricewaterhouseCoopers LLC and Principal Deputy White House Counsel for President Barack Obama, and Clay Cogman, who has assisted with over 500 mediations, including the recent $1.5 billion class action settlement involving Anthropic that recently received preliminary approval from the Hon. William Alsup (Ret.). *Id.* The participation of these two experienced mediators, in addition to Judge Phillips, demonstrates the importance and complexity of this case as each devoted significant time working with the Parties throughout the months' long mediation process. *Id.* While the matter did not settle during the first full day of mediation, the Parties agreed to a second day of mediation on December 8, 2025. *Id.*

In the interim, the Parties continued litigating, including completing the briefing on Apple's Motion to Dismiss, and continuing to meet and confer regarding the ESI Protocol, the Stipulated Protective Order and Apple's productions of documents and information. *Id.* ¶ 21.

With the resulting fact record significantly enhanced, the Parties submitted supplemental mediation briefs and other materials in advance of the December 8 mediation. *Id.* ¶ 22. At the end of the second full day of mediation, the Parties were closer to a resolution on some key issues; but still deadlocked on others. The case ultimately reached a settlement in principle late in the day. *Id.* During the following nine days, the Parties continued to negotiate and finalize the term sheet, including a provision for confirmatory discovery to ensure the Settlement was in the best interests of the Settlement Class.

At all times, the settlement discussions were conducted at arms' length and were informed by comprehensive fact and expert discovery, and applicable law. *Id.* ¶ 23. On December 18, 2025, the Parties notified the Court that they had reached an agreement in principle to resolve this matter on a nationwide class basis and requested a continuance of applicable hearings and deadlines. ECF No. 65 ("Joint Notice"). The Court granted the Parties' request, directing them to file a joint report updating the Court on the status of the settlement or to file a motion for preliminary approval by March 18, 2026. Jt. Decl. ¶ 23.

Over the next three months, Plaintiffs engaged in substantial confirmatory discovery as well as a thorough competitive bidding process with potential Settlement Administrators, while continuing to meet and confer with Apple regarding final settlement terms. *Id.* ¶ 24. On March 13, 2026, the Parties filed a joint stipulation to extend time to file joint status report or motion for preliminary approval requesting an additional 5 weeks to finalize the Settlement Agreement, as the Parties were unable to resolve all disputes

regarding the Settlement despite good faith efforts. *Id.* On March 23, 2026, the Parties returned to Judge Phillips for a third full-day in-person mediation session to resolve the outstanding disputes, which included additional written submissions and oral argument, after which Class Counsel interviewed an employee from Apple. *Id.* ¶ 25 Additional legal briefing was presented to Judge Phillips the week of April 6. *Id.* On April 16, 2026, the Parties filed a second stipulation to extend time to file motion for preliminary approval and jointly requested an additional two weeks to finalize the Settlement Agreement and exhibits for signature and to gather signatures, ultimately leading to the finalized Settlement Agreement now before the Court.

## III.    THE BENEFITS AND KEY TERMS OF THE PROPOSED SETTLEMENT

The Settlement, totaling $250 million, satisfies and exceeds the standards for preliminary approval under Ninth Circuit law and the Northern District Settlement Guidelines.[4] After investigation, Plaintiffs and Class Counsel concluded that the Settlement is fair, reasonable, and in the best interests of the Settlement Class. The Parties reached agreement after weighing the certain and substantial benefits that Settlement Class Members will receive from resolution against the substantial risks, costs, and delay inherent in continued litigation. Jt. Decl., ¶ 41. Consistent with the Settlement Guidelines, Class Counsel conducted a thorough analysis of potential recoveries with the leading subject matter experts, to assess the adequacy of the Settlement, an analysis grounded in real world data, applicable law, and the facts alleged. Jt. Decl., ¶ 43; Ex. 4 (Gaskin Decl.) ¶¶ 8-11; Ex. 5 (Weir Decl.) ¶¶ 4-10. Accordingly, and as set forth below, the Court should grant preliminary approval and approve the issuance of notice to the Settlement Class.

### A.    Class Definition

Consistent with the operative complaint, the Settlement resolves claims between Apple and the proposed Settlement Class, which includes purchasers of the Eligible Devices (iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 15 Pro, or iPhone 15 Pro Max) who reside in the United States and purchased an Eligible Device in the United States for purposes other than resale, during the Class Period. Jt. Decl., Ex. 1, Settlement § I (31). The Settlement Class excludes Apple; any

---

[4]    https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements (last visited Feb. 12, 2026).

entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns. Also excluded from the Settlement Class are all judicial officers assigned to this case as well as their staff and immediate family members. *Id.*, § I(31).

### B.    Monetary Relief for Class Members

Apple agreed to pay a Total Settlement Amount of Two-Hundred and Fifty Million dollars ($250,000,000.00). Jt. Decl., Ex. 1, Settlement § I(34). This amount will be paid into a non-reversionary Qualified Settlement Fund that will be used to pay Notice costs and costs of administering the Settlement, to pay any approved Attorneys' Fees and Expenses to Class Counsel and any Service Awards to the Class Representatives, and to distribute the Net Settlement Amount to Settlement Class Members. *Id.*, §§ I(34), III(B)(3).

The Settlement Agreement provides that Claimants are entitled to "a presumptive payment from the Net Settlement Amount of $25 per Eligible Device[,]" with a per-device cap of $95. Jt. Decl., Ex. 1, Settlement § III(B)(4)(b). The Net Settlement Amount shall be allocated to Claimants who submit valid Claim Forms during the Claim Period establishing that they purchased an Eligible Device in the United States during the Class Period of June 10, 2024 to March 29, 2025, and that at the time of purchase, they expected to receive a Siri Apple Intelligence feature and did not receive it. *Id.*, §III(B)(5). These amounts are subject to a pro rata upward or downward adjustment based on the amount of funds available for distribution to Settlement Class Members submitting Valid Claims. *Id.*, §III(B)(4). In no event will any portion of the Total Settlement Amount revert to Apple. *Id.*

### C.    Released Claims

Plaintiffs and Settlement Class Members release and discharge Apple from all claims, liabilities, costs, and damages, arising before the settlement's effective date that relate "to the same facts underlying the claims asserted in the Lawsuit regarding the Eligible Devices, or could have been asserted in the operative Second Consolidated Amended Class Action Complaint." *Id.*, § III(H)(1). Plaintiffs and Settlement Class Members' Released Matters do not include claims brought in the unrelated cases of: (i) *City of Coral Springs Police Officers Pension Plan v. Apple Inc. et al*, Case No. 5:25-cv-06252-NW (N.D. Cal.) (securities class action arising out of Enhanced Siri feature delays), and (ii) *In re Apple Inc. AI*

*Derivative Litigation*, Case No. 5:25-cv-05364-NW (N.D. Cal.) (shareholders derivative action arising out of Enhanced Siri feature delays). *Id.*, Ex. 1, Settlement § III(H)(1).

### D.    Remaining Settlement Fund Allocation

**Administrative and Notice Costs.** All costs of notice and administration of the Settlement will be paid from the Total Settlement Amount. Jt. Decl., Ex. 1, Settlement § III(F)(1). Verita anticipates administration costs to be approximately $5,444,056.00. Ex. 2 (Carameros Decl.) ¶ 41.

**Service Awards.** Plaintiffs will seek Service Awards for their work on behalf of the Settlement Class. Plaintiffs intend to request up to $2,000 per Plaintiff in this case, which amounts to $130,000 for all Service Awards. Jt. Decl., ¶ 51. Each Plaintiff has devotedly performed their duties in this case, including retaining counsel, providing documents and information to counsel for investigatory and discovery purposes, timely responding to inquiries from counsel, and being prepared to sit for a deposition when asked. *Id.* Per Settlement Guidelines, Plaintiffs will submit further evidence supporting proposed Service Awards at the final approval stage.

**Attorneys' Fees and Costs.** Per the Settlement Agreement, Plaintiffs will request payment of their out-of-pocket expenses which Class Counsel estimates is not more than $600,000.00, plus Attorneys' Fees from the Qualified Settlement Fund to be approved by the Court in an amount not to exceed 28% of the Qualified Settlement Fund or $70,000,000. Jt. Decl., Ex. 1, Settlement § III(G). Pursuant to section N of the Court's Standing Order for All Civil Cases, Class Counsel intend to request that the Court hold back ten percent (10%) of any fee award until after the post-distribution accounting has been filed with the Court. Jt. Decl. ¶ 52.

**Cy Pres Award.** Under the Settlement, the Parties will endeavor to distribute all of the funds in the Qualified Settlement Fund to Settlement Class Members who submit valid Claim Forms. Jt. Decl., Ex. 1, Settlement § III(B)(4)(b). If distribution of any remaining amount to the Settlement Class Members is not practical, then the remaining funds will be delivered to a cy pres recipient to be agreed upon by the Parties and approved by the Court.

### E.    Settlement Administration

Class Counsel received and reviewed three bids from potential settlement administrators as part of a detailed RFP process and compared them based on the provided price quotes, estimated claims, previous

experience with those administrators, data security practices, fraud detection programs, technological capabilities, and notice plans. Jt. Decl., ₱ 48. After numerous follow up calls with each potential administrator and refinement of their bids, the Parties selected Verita Global, LLC ("Verita") to serve as the Settlement Administrator. *Id.* Verita is a top-performing administrator that can handle massive and complex volumes of data, notice to tens of millions of class members, a frictionless claims process, prompt handling of influxes of class member inquiries, and timely and accurate payment of class member proceeds. Ex. 2 (Carameros Decl.) ₱₱ 2-3. To facilitate the identification and/or verification of additional contact information of Settlement Class Members, to optimize direct notice efforts, and to eliminate fraudulent claims the Parties also agreed that Verita would retain Covalynt to assist it. Jt. Decl., ₱ 50; Ex. 3 (Heller Decl.) ₱ 10. Covalynt will work with the Settlement Administrator to both identify fraudulent and ineligible claims and to drive a higher claims rate by updating and enriching stale or incomplete data to provide effective notice to Settlement Class Members. *Id.* ₱ 50.

### F.    The Settlement's Notice Plan

The Notice Plan is robust and will provide direct notice to nearly all of the Settlement Class. Ex. 2 (Carameros Decl.) ₱ 25. In addition to direct notice, the Settlement provides for both traditional publication notice and an Online Media Campaign that is designed to reach all Settlement Class Members and to drive a higher claims rate. *Id.* ₱ 34.

Under the Notice Plan, within five business days of the entry of the Preliminary Approval Order, Apple will provide by secure means to the Settlement Administrator (but not to Class Counsel) the Class list, with their available and most current contact information, and any other necessary information. *Id.*, ₱ 23. After verifying Settlement Class Member contact information, Verita will e-mail the Email Notice, which will be followed by two or more reminder emails, as reasonably necessary to maximize deliverability and receipt. *Id.* ₱ 25. Verita will implement commercially reasonable bounce management procedures including re-sending Email Notice to a corrected or newly identified email address, where available. *Id.* ₱ 29. For members of the Settlement Class for whom Apple and/or Verita have postal addresses but not an email address, the Settlement Administrator will mail a Postcard Notice to each such member of the Settlement Class. *Id.* ₱ 30.

Verita will also conduct an Online Media Campaign through online advertisements, including appropriate advertising channels such as paid online ads via Google, Meta or other ad platforms, as well as social media channels such as Facebook. *Id*, ⁋ 34. The ads that are part of the Online Media Campaign will provide a link to the Settlement Website and information about who is eligible to file a Claim. *Id.*, Jt. Decl., Ex. 1, Settlement §§ III(F)(5)(c), III(F)(7); Ex. 2 (Carameros Decl.) ⁋ 34. Additionally, Verita will implement a publication notice campaign designed to supplement direct Notice. *Id.* ⁋ 35.

The Long-Form Class Notice, Email Notice, and Postcard Notice will inform Settlement Class Members of the fact of the Settlement and that Settlement information is available on the Settlement Website. Ex. 2 (Carameros Decl.) ⁋ 36; *see also* Settlement, Ex. D (Long Form Notice), Ex. F (Email Notice) and Ex. E (Postcard Notice). The Settlement Website will include all necessary information to learn about the settlement, file a claim, obtain information on how to object or request exclusion, and much more information, including in at least English and Spanish, including a toll-free number to obtain additional information. *Id.* ⁋⁋ 36- 37.

## IV.    ARGUMENT

### A.    Conditional Class Certification of the Settlement Class is Warranted

Class certification under Rule 23 is a two-step process. First, the plaintiff must demonstrate that numerosity, commonality, typicality, and adequacy are met. Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). A plaintiff must then establish that one of the bases for certification in Rule 23(b) is met. Here, Plaintiffs must demonstrate that "questions of law or fact common to Class Members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For purposes of the Settlement, Apple is stipulating to class certification.

#### 1.    Named Plaintiffs Satisfy Rule 23(a)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There can be no doubt that numerosity is satisfied here as there are approximately 36 million Settlement Class Members. Ex. 2 (Carameros Decl.) ⁋ 17.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Even a single common question is satisfactory. *Wal-Mart*, 564 U.S. at 359. Here, the proposed Settlement Class satisfies the commonality requirement because, at a minimum, it is a common issue whether Apple's advertising of the Enhanced Siri features was false and misleading.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). Here, Named Plaintiffs are typical of the Settlement Class they seek to represent. Like other Settlement Class Members, Named Plaintiffs purchased Eligible Devices expecting to receive a Siri Apple Intelligence feature and did not receive it. Typicality is therefore satisfied.

Finally, under Rule 23(a)(4), Named Plaintiffs must adequately represent the class and have no conflicts of interest with other Settlement Class Members. *See Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 234364, at *4 (N.D. Cal. Jan. 20, 2016) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Here, neither Named Plaintiffs, nor Class Counsel, have conflicts of interest with other Settlement Class Members. Class Counsel also have substantial experience prosecuting class actions. *See* Jt. Decl., ¶ 11 Class Counsel were previously appointed Interim Co-Lead Class Counsel after submitting their resumes and credentials, including extensive experience in complex class actions, to the Court. Named Plaintiffs and Class Counsel have prosecuted this Action vigorously, and successfully, on behalf of the Class.

## 2.    Plaintiffs Satisfy Rule 23(b) Standards

Plaintiffs seek conditional certification under Rule 23(b)(3), which provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. *Noll v. eBay, Inc.*, 309 F.R.D. 593, 604 (N.D. Cal. 2015).

First, common liability questions predominate over individual damages questions. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). "Rule 23(b)(3) permits certification when one or more of the central issues in the action are common to the class and can be said to predominate []." *Meek v. SkyWest, Inc.*, 562 F. Supp. 3d 488, 495 (N.D. Cal. 2021) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)) (internal quotations omitted).

Whether Apple's advertising of the Enhanced Siri features was misleading, material, and violated consumer-protection laws, whether that was material to Settlement Class Members' decisions to purchase the Eligible Devices, and whether Settlement Class Members suffered damages, present common questions capable of class wide resolution. *See, e.g., Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 5, 2018). "Predominance is 'readily met' in cases alleging consumer fraud, and the present case is no exception." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019) ("*Hyundai*") (internal citation omitted).

In deciding whether to certify a settlement-only class, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Id.* (quoting *Amchem*, 521 U.S. at 620). This likewise applies to the choice of law analysis as "it generally is not legal error to forego a choice-of-law analysis in a settlement-class predominance inquiry." *Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020).

Finally, a class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims against Apple, because individual actions would be impracticable given the small individual recoveries, technical issues, and litigation costs. *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Because Named Plaintiffs satisfy the Rule 23 requirements, the Court should grant conditional certification of the Settlement Class.

**B.      The Court Should Appoint Interim Co-Lead Counsel as Class Counsel**

The Court previously appointed Ryan Clarkson of Clarkson, Brian Danitz of Cotchett, Pitre & McCarthy, and Laurence King of Kaplan Fox as Interim Co-Lead Class Counsel under Rule 23(g) after considering their extensive collective resources and experience in prosecuting consumer fraud class actions detailed in their joint declaration and firm resumes. ECF No. 28; ECF No. 27. Those considerations apply with equal force here and warrant final appointment, particularly given counsel's successful advancement of this case to a favorable settlement.

**C.      The Court Should Appoint Named Plaintiffs as Class Representatives**

The Court should appoint the Named Plaintiffs as Settlement Class Representatives because they have no conflicts with the class and are represented by qualified counsel who will vigorously prosecute the class's interests. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

**D.      The Settlement is Fair, Reasonable, and Adequate**

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). The Court may approve settlements shown to be fair, reasonable, and adequate. Fed. R. Civ. Proc. 23(e)(2). To assess the fairness of a class settlement, courts consider factors including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944. Each of these factors are addressed below with the Northern District's Settlement Guidelines.[5]

When the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement

---

[5] There is no government participant in this Settlement at this stage and the reaction of the Settlement Class Members will be reviewed at Final Approval Hearing once notice has issued.

agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

The Ninth Circuit has identified three indicia of possible collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). None of these or any other indicia of possible collusion are present here.

"Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *In re VNGR Beverage, LLC Litig.*, No. 24-CV-03229-HSG, 2025 WL 1489714, at *5 (N.D. Cal. May 23, 2025) (citing *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted)). As explained below, all of the relevant factors weigh in favor of preliminary approval here.

### 1.    The Proposed Settlement is the Product of an Arms-Length, Non-Collusive, Negotiated Resolution

None of the signs of collusion identified by the Ninth Circuit are present. *See In re Bluetooth*, 654 F.3d at 947. Counsel is not seeking a disproportionate distribution of the Settlement (seeking no more than 28%); there is no "clear sailing provision" and no reversion of any Settlement Funds. Such indicia of non-collusive negotiations (and terms) further establishes, under heightened scrutiny, that the Settlement is fair. Moreover, the Settlement was reached after multiple mediations with retired U.S. District Judge Layn R. Phillips and after arms-length negotiations over the course of months. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (affirming settlement, noting: "In addition, the parties reached a settlement after extensive negotiations before a nationally recognized mediator, retired U.S. District Judge Layn R. Phillips."); *see also Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D.

Cal. Apr. 29, 2011) (collecting cases).

### a.    The Proposed Settlement is Supported by Experienced Counsel

Class Counsel have decades of collective experience litigating and settling complex class actions, both in this district and in state and federal courts throughout the county, something that courts recognize is "entitled to considerable weight." *Kang v. Wells Fargo Bank, N.A.,* No. 17-CV-06220-BLF, 2021 WL 5826230 at *7 (N.D. Cal. Dec. 8, 2021), *aff'd sub nom. Kang v. Fyson,* No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) (quoting *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980)).

Here, Class Counsel determined that the settlement is reasonable, fair, adequate, and in the best interests of the class, given the risks to success on liability and to the amount of any potential recovery. In addition to all of the typical challenges a complex class action case brings, this case involves the development, implementation, and marketing of groundbreaking AI technology associated with one of the world's most recognizable products, the iPhone. Jt. Decl., ¶ 33. Apple, represented by able counsel at Covington and Burling LLP, mounted a vigorous defense in all aspects of the case and would continue to do so through class certification, summary judgment, trial and appeals. *Id.* ¶ 33. While Plaintiffs believe their claims are strong, there were significant factual and legal issues that were not typical and that presented real risks to Plaintiffs' successful litigation of this case through trial. *Id.* ¶ 34. *First*, Class Counsel are not aware of any prior cases involving a high-profile marketing campaign involving alleged false advertising about AI technology for as ubiquitous a product as the iPhone that was advertised on such a multiplicity of non-traditional channels that has laid a blueprint for litigation. This differentiates this case from typical consumer actions predicated on misrepresentations in traditional ads or on labels. *Id.* ¶ 35. *Second*, the case involved cutting edge AI technology being developed in a rapidly developing landscape where tectonic shifts in the marketplace could occur at any time that may readily impact consumer awareness, expectations, and experiences in ways that could have unexpected consequences more than other false advertising or even technology cases Class Counsel has prosecuted. *Id.* ¶ 36. *Third*, Apple maintained that its ads were not misleading because it disclosed from the outset the Apple Intelligence features would be delivered over time and continue to evolve. *Id.* ¶ 37. *Fourth*, Apple maintained that it successfully delivered more than 20 Apple Intelligence features, raising questions regarding the materiality of the alleged statements concerning Enhanced Siri features. *Id.* ¶ 38. *Fifth*,

Apple maintained that consumers purchase new iPhones for any number of reasons that have nothing to do with Enhanced Siri features. And *sixth*, this case raises a number of legal issues of first impression that are inherently risky, such as whether consumers could demonstrate reliance on representations about AI-integrated products software and whether Plaintiffs could isolate the damages associated with such representations. *Id.* ¶¶ 39-40. There are few trial court opinions and virtually no appellate court opinions involving AI products and services compared with more traditional false advertising claims. *Id.* ¶ 40. Guided by substantial investigation, discovery and expert analysis, Class Counsel considered all of these issues and risks in weighing whether and how to fairly settle this case. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel, this factor weighs in favor of preliminary approval. *See Taylor v. Google, LLC*, No. 20-CV-07956-VKD, 2026 WL 628161, at *13 (N.D. Cal. Mar. 5, 2026) ("The Court gives considerable weight to plaintiffs' counsel's opinions regarding the settlement, in view of their experience and familiarity with the litigation.").

### b.    The Stage of the Proceedings and the Discovery Completed

Courts also look for indications that the parties carefully investigated the claims before reaching a resolution, including propounding and reviewing discovery. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement.").

Here, Class Counsel engaged in extensive investigation, research, and analysis of the Settlement Class's claims and possessed sufficient information to assess the strengths and weaknesses of the claims and defenses asserted by the Parties. Jt. Decl. ¶¶ 13, 19. Plaintiffs' investigation and discovery prior to finalizing the Settlement included: (1) conducting an extensive and ongoing factual investigation and related legal research to prepare the operative complaints, including, but not limited to, the nature, extent, scope and reach of Apple's marketing campaign for Enhanced Siri features, the pervasive nature of the marketing campaign which, to a significant degree, took place on social media platforms; (2) consumers' reactions to Apple's marketing campaign; comparing Apple's AI business strategies to AI products and services offered by competitors; researching sales and pricing information for iPhones and competitors' products; issuing document requests and interrogatories; engaging in extensive negotiations over

discovery; (3) analyzing Apple's production of 14,471 documents comprising 38,315 pages of documents and other files including videos, spreadsheets totaling almost 100 GB of data; investigating dozens of potential witnesses, including relevant Apple personnel to identify potential document custodians and deponents who had involvement with AI development and marketing at Apple; (4) issuing and analyzing the substantive responses to two sets of interrogatories; (5) working with experienced subject matter experts who performed a survey and provided expert analyses based on real world data to determine the viability and the value of Plaintiffs' claims; and (6) conducting an interview of an Apple employee during confirmatory discovery to clarify several remaining issues. Jt. Decl., ¶¶ 13, 19.

Finally, the Parties also exchanged substantial data and other information regarding their respective claims and defenses during the mediation sessions overseen by Judge Phillips and the two additional mediators. Jt. Decl., ¶¶ 20-25. In sum, Class Counsel obtained sufficient information regarding the facts, claims and defenses in this case "to make an informed decision about the Settlement[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("The district court noted that Class Counsel conducted significant investigation, discovery and research, and presented the court with documentation supporting those services. The district court further noted that Class Counsel had worked with damages and accounting experts throughout the litigation."). Considering this, Class Counsel have more than sufficient bases to make informed decisions about the relative merits of the case and the fairness of the Settlement.

### 2.    The Settlement Guidelines are satisfied.

**Guidance 1: The Proposed Settlement Class and Claims Released**. The Settlement Class definition is the same in the SCAC and is expanded from that in the CCAC in only two minor ways: 1) it adds purchasers of iPhone 15 Pro and iPhone 15 Pro Max as these devices were also marketed as having Enhanced Siri features and 2) the class period now commences on June 10, 2024 (instead of September 13, 2024). The expanded Settlement Class and Class Period were modified early in the settlement process, and the facts and circumstances warranting the slightly expanded class definition were well-vetted during settlement negotiations. Jt. Decl., ¶ 32. The SCAC also has added one plaintiff who purchased the iPhone 15 Pro Max. *Id.* The difference in class definition yielded additional value to the Settlement Class and is therefore warranted.

The release in the Settlement is set forth *supra*, § III(H). *See also* Jt. Decl., Ex. 1., Settlement. There are no new additionally pleaded claims in the SCAC that were not pleaded in the prior complaint and therefore there are no additional claims being released. Jt. Decl., ⁋ 32. The Release matches the consumer protection claims that Plaintiffs brought in their operative complaint and is narrowly tailored to only those claims concerning Enhanced Siri features. *Id.*

**Guidance 3: Class Recovery Under the Settlement**. The non-reversionary Total Settlement Amount of $250,000,000 is substantial by any measure, and certainly falls within a range of possible approval. Plaintiffs' case primarily asserts claims under state consumer protection laws such as California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"), California's Consumer Legal Remedies Act, Civ. Code §§ 1780, *et seq*. ("CLRA"), and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL"). Jt. Decl., ⁋ 42. The primary theory of recovery in a false advertising case asserting these claims is known as the "price premium theory" that has been widely accepted in cases involving consumer goods at the trial and appellate court levels. *Id.* Price premium is a relevant measure of class damages, and sufficient under *Comcast Corporation v. Behrend,* 569 U.S. 27 (2013), which, In *Comcast*, the Supreme Court established that Plaintiffs must show that damages can be measured on a class-wide basis that are relevant to the claimed legal theory. *Id.* at 34-35. Following *Comcast*, the Ninth Circuit has held that "plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Lytle v. Nutramax Laby's, Inc*., 114 F.4th 1011, 1027 (9th Cir. 2024), cert. denied, 145 S. Ct. 1308 (2025).

Plaintiffs' theory of harm is that Apple misled Class Members into paying a price premium for their iPhones. CCAC at ¶¶ 9, 13-14, 33. "Under that theory of harm, the amount of overpayment attributable to the challenged term – the "price premium" – is the standard measure of damages under the proposed settlement. *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 866 (9th Cir. 2025); *Nguyen v. Nissan N. Am.*, *Inc.,* 932 F.3d 811 (9th Cir. 2019) (collecting cases).

Here, Plaintiffs sought to determine the value consumers placed on Apple's representations about Enhanced Siri features in connection with the sales of iPhones and engaged experienced experts who have overcome *Daubert* challenges numerous times, to perform a survey and an economic analysis of the facts

presented here. Their work is detailed in the accompanying Declarations of Colin Weir and Steven Gaskin. Jt. Decl., Exs. 4 and 5. Jt. Decl., ¶ 43.

As detailed in his Declaration, Jt. Decl., Ex. 4 (Gaskin Decl.), Mr. Gaskin ran a consumer survey and applied a choice-based conjoint analysis that was designed to estimate the market price premium, if any, for the Eligible Devices with the Enhanced Siri Statements compared with the same Eligible Devices without the Enhanced Siri Statements. Based on the survey and analysis, Mr. Gaskin concluded that the price premium due to a change from an iPhone that "Includes Basic Siri" to an iPhone that "Includes an AI Enhanced Siri" is 5.5% of the overall cost of the device. *Id.*

As detailed in his Declaration, *Id.*, Ex. 5 (Weir Decl.), Mr. Weir applied Mr. Gaskin's conclusions to sales data for the Eligible Devices to determine the quantum of class-wide damages in this case. Mr. Weir concluded that in the event Plaintiffs ultimately prevailed at trial, the maximum damages attributable to the price premium applied to all of the Eligible Devices sold during the relevant period, estimated to be 37,078,131, would be $2,264,064,781. Ex. 5 (Weir Decl.) ¶¶ 67-68.

In sum, Plaintiffs' experts' analysis revealed that consumers would have placed a 5.5% price premium on the Eligible Devices due to the challenged representations. Ex. 4 (Gaskin Decl.) ¶ 56. Based on pricing sales and pricing data produced by Apple, which indicate an average sales price of approximately $1,110 across approximately 37 million Eligible Devices, this represents a total damages scenario of approximately $2,264,064,781 across the class, or a $61.06 per device at the average price of the Eligible Devices. Ex. 5 (Weir Decl.) ¶¶ 67-68.

Apple has stressed that it anticipates delivering additional Siri Apple Intelligence features in future software updates at no additional cost. This raised the prospect that any premium for delayed features might be smaller than the 5.5% for non-delivered features reflected in Plaintiffs' expert model. Apple further maintained that damages would be eliminated entirely once the features were delivered. Under that view, continued litigation risked a zero-recovery outcome, even if Plaintiffs could prove liability. *See e.g. Waller v. Hewlett-Packard Co.* 295 F.R.D. 472, 487–88 (S.D. Cal. 2013) (denying class certification holding that "[w]ith the [software update] . . . [plaintiffs] now have just what they paid for").

Thus, Plaintiffs faced substantial risk that continued litigation could result in no recovery, limited recovery, or even if successful, years of delay due to uncertainty at class certification, dispositive motions,

trial, and appeal. *See Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*, 173 F.3d 713, 721 (9th Cir. 1999). In contrast, the Settlement provides the Settlement Class Members with the substantial benefit of a guaranteed cash recovery in the near term.

**Guidance 1: Other Cases Affected by the Settlement.** Each of the consolidated cases will be affected by the Settlement. Class Counsel are not aware of any additional cases that will be affected by the Settlement.

**Guidance 1: Claims Administration, Proposed Plan of Allocation and Expected Claim Rate.** As discussed above in § III(B) the Settlement creates a $250,000,000.00 non-reversionary fund from which Settlement Class Members who submit valid claims may receive a presumptive $25 per Eligible Device (subject to pro rata adjustment and a $95 cap), with payments determined by the Net Settlement Amount after deductions for notice and administration costs, court-approved attorneys' fees and expenses, and service awards. Jt. Decl., Ex. 1, Settlement at § III(B)(4)(b). Valid claims will be paid by the Settlement Class Member's preferred form of payment such as digital payments through Venmo, PayPal, or by check, if requested. *Id.* § III(B)(4)(a).

For claims rates in similar cases, the chart in Guidance No. 11 provides claims rates for other similar class action settlements. The Settlement's Notice Plain is robust and designed to drive a higher claims rate. Apple will provide the Administrator with contact information to enable direct Notice through email and/or mail to most Settlement Class Members. Jt. Decl., Ex. 1 Settlement at § III(F)(3).; *see also* Ex. 2 (Carameros Decl.) ¶ 22. Verita, working with Covalynt, will deter fraud and improve notice effectiveness by enriching Settlement Class Member contact data, with follow-up reminders and commercially reasonable bounce-management procedures, including re-sending email notice where corrected contact information is available.

Mail, postcard, and email notice will be supplemented by reminders and commercially reasonable bounce-management procedures, including re-sending email notice where corrected or newly identified contact information is available. *Id.* ¶¶ 29-33. Verita will also implement publication and online media notice, while a user-friendly, partially auto-filled Claim Form and an accessible Settlement Website— including Spanish-language materials and a toll-free help line— are designed to reduce barriers to claim

submission and maximize participation. Jt. Decl., Ex. 1, Settlement at § III(F)(5); Ex. 2 (Carameros Decl.) ℙ 18.

**Guidance 2: Settlement Administration.** As discussed above in § III(F), the Parties request that the Court authorize the retention of Verita Global, LLC as Settlement Administrator for the Settlement, which Plaintiffs engaged after a thorough and intensive competitive bidding process seeking, and reviewing over multiple rounds, quotes from multiple highly regarded settlement administrators. Jt. Decl., ℙ 48. Plaintiffs selected Verita, which worked on reducing costs to maximize Class recovery, and a detailed plan to maximize valid claims. *Id.* ℙ 50. Verita's data security protocols are detailed in its accompanying Declaration, the relevant portions of which have been filed under seal to ensure their security protocols are not subject to public review. *Id.* Per the Settlement Guidelines, Class Counsel disclose that they have selected Verita as a settlement administrator in the past two years in four total matters across three firms, including two for Clarkson, zero for CPM, and two for Kaplan Fox. *Id.* ℙ 48.

Given the risk of fraudulent claims, Plaintiffs have ensured that Verita will work with Covalynt to identify and deter fraudulent or ineligible claims and to improve notice effectiveness by enriching incomplete or stale Class Member data, using Covalynt's proprietary ClaimScore and Deep Validation tools. Jt. Decl., ℙ 50. Covalynt's qualifications, including work in other similar matters, is set forth in the Declaration of Bryan Heller, submitted herewith. Verita and Covalynt have collaborated on other class action settlements to ensure a fair and accurate claims process, and Covalynt's costs are integrated fully into Verita's bid. Based on information provided by Apple, it will cost up to $5,444,056 (inclusive of postage and Verita's fees) for Verita to fully administer the Settlement in this Action, which will be paid out of the QSF pursuant to the Settlement. Ex. 2 (Carameros Decl.) ¶ 41.

**Guidance 3, 4 and 5: Notice, Opt-Outs and Objections.** As discussed above. § III(F), Settlement Class Members who cannot be contacted by email will be sent Postcard Notice, and the Notice campaign will be supplemented by reminders, publication notice, and a comprehensive online media campaign. Ex. 2 (Carameros Decl.) ℙℙ 30, 33-35. Class Counsel has spent substantial time researching and discussing the best methods to reach as many Settlement Class Members as possible, including discussions with Apple, Verita, and Covalynt, and are convinced that the Notice plan will provide direct notice to the

overwhelming majority of Settlement Class Members and supplemental notice to all others. Jt. Decl., ¶ 48.

The Notice will provide detailed information about the Settlement including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees and reimbursement of expenses; (3) Class Counsel's intent to request Service Awards for the Named Plaintiffs and (4) Settlement Class Members' rights to request exclusion from or object to the settlement. Joint Decl, ℙ 49; *see also* Settlement, Ex. D (Long Form Notice), Ex. F (Email Notice) and Ex. E (Postcard Notice). Notice will also direct Settlement Class Members to the online Claim Form and Settlement Website, which explains the procedures and deadlines for, and effect of, filing a claim, opting out of the settlement, or filing an objection. *Id.*, ℙ 49. Courts routinely find comparable notice procedures meet the requirements of due process and Rule 23. *See Id.; Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2016 WL 4524307, at *7-8 (N.D. Cal. Aug. 30, 2016); *Russell v. Kohl's Dept. Stores, Inc*., No. ED CV 15-1143 RGK, 2016 WL 6694958, at *5 (C.D. Cal. Apr. 11, 2016).

**Guidance 6: Attorneys' Fees and Costs.** As detailed in § III(D)(3) and IV(D)(1), Plaintiffs anticipate seeking an award of Attorneys' Fees and Expenses of no more than 28% of the Settlement Fund ($70,000,000) in Attorneys' Fees and up to $600,000.00 in unreimbursed expenses. Jt. Decl. ℙℙ 52, 54. The Settlement contains no clear sailing provision, and there are no undisclosed side agreement with Apple regarding such requests. This information is disclosed in the Long-Form Notice for review, comments, and objections by Settlement Class Members. *Id.* ℙ 52.

Upon appointment as Interim Co-Lead Counsel, Plaintiffs implemented a time and expense tracking and reporting protocol intended to promote efficiency and avoid unnecessary billing, consistent with practices used in other coordinated litigations. Jt. Decl. ℙ 12. This required monthly submission, review, approval of time and expenses from all firms involved in the litigation, and limitations on billing activity, among many other requirements. Plaintiffs' Counsel have performed over 12,723.69 hours of billable work on this case for a lodestar of approximately $11,912,039.50 *Id.* ℙ 53. Of that work, approximately 93% was performed by the three Interim Co-Lead Counsel firms. *Id.*. Should the Settlement be preliminarily approved, Plaintiffs will submit additional detail and a fully audited presentation of Plaintiffs' billable work in connection with the anticipated Motion for Attorneys' Fees and Expenses.

Plaintiffs have incurred substantial litigation expenses—primarily related to experts, mediation, and ESI services—and will seek reimbursement of up to $600,000.00. Jt. Decl. ¶ 54.

In sum, Plaintiffs' Counsel have incurred and paid out over $225,685.70 in expenses from the litigation fund. *Id.* Plaintiffs' Counsel have also collectively incurred $123,326.85 in costs not paid out of the litigation fund, such as those for filing and service fees, legal research charges, travel to mediation sessions and postage. *Id.* Plaintiffs also anticipate incurring some additional expenses in connection with completing the case— estimated up to $250,987.45 including travel and lodging for preliminary and final approval hearings, hearing-related costs (e.g. transcripts), any outstanding mediation-related fees, document management and hosting fees from the ESI vendor, and other litigation support expenses associated with finalizing the settlement.

**Guidance 7: Service Awards.** Discussed in § III(G)(1).

**Guidance 8: Cy Pres Awardees.** Discussed in § III(B)(4)(b).

**Guidance 9: Proposed Timeline**. The proposed timeline under the Settlement ensures that Settlement Class Members have 90 days to opt out, object, or request exclusion. *See* Appx. A. They will also have an opportunity to review Counsel's fee motion at least 35 days prior to the objection deadline.

**Guidance 10: Class Action Fairness Act.** Apple will serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than 10 days after this filing. Settlement § III(C)(3).

**Guidance 11: Comparable Outcomes**. The Settlement provides substantial monetary relief through a $250,000,000.00 non-reversionary fund representing approximately 11% of estimated damages for a class of approximately 36 million consumers. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023) (approving settlement of approximately 9% to 28% of the total estimated damages). The Settlement here falls well within the acceptable range of Court-approved settlements in consumer class actions, as depicted below.

| Case | *Smith v. Apple, Inc.*, No. 21-CV-09527-HSG | *In re Apple Inc. Device Performance Litig.,* No. 5:18-md-02827-EJD | *In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF | *Lopez v. Apple Inc.*, No. 4:19-cv-04577-JSW |
|---|---|---|---|---|
| **Claims** | CA (UCL & CLRA), NY, TX and FL consumer protection laws alleging Apple Watches contained a defect that caused the screen to crack. | Fraud-based theories, breach of contract, trespass to chattels, Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and California's Data Access and Fraud Act, Cal. Penal Code § 502 | CA (UCL & CLRA) and warranty claims against Google and Huawei alleging "bootloop" and "battery drain" defects. | CA and Federal Wiretap laws alleging Apple's Siri collected and stored consumers' private communications without consent. |
| **Settlement Fund** | $20,000,000 | $310,000,000 - $500,000,000 (based on a claim rate) | $9,750,000 | $95,000,000 |
| **Class Members** | 541,552 | 90,119,272 | 500,000 | 85 million |
| **Claim Rate** | 3.35% | 3.6% | 18% | 2.57% |
| **Claim Payment** | $20 per device | $25 per device | $5-$75 per device (up to $325 per device with proof of defect) | $20 per device |
| **Attorneys' Fees** | $5,000,000 (25%) | $80,600,000 (26%) | $2,295,000 (23%) | $28,500,000 (30%) |

## V.    CONCLUSION

For the reasons discussed herein, Named Plaintiffs respectfully request the Court preliminary find that the Settlement is fair, reasonable, and adequate; certify the proposed Settlement Class; approve the Settlement; approve the form and manner of the Notice, and the selection of the Settlement Administrator; appoint Interim Co-Lead Counsel as Class Counsel, and the named Plaintiffs as Class Representatives; and schedule a hearing for final approval.

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

DATED: May 5, 2026                    By: /s/ *Ryan J. Clarkson*
                                              Ryan J. Clarkson

Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Yana Hart (SBN 306499)
yhart@clarksonlawfirm.com
Bryan P. Thompson (SBN 354683)
bthompson@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070


**COTCHETT, PITRE & MCCARTHY, LLP**

DATED: May 5, 2026                    By: /s/ *Brian Danitz*
                                              Brian Danitz

Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Brian Danitz (SBN 247403)
bdanitz@cpmlegal.com
Karin B. Swope (*pro hac vice*)
kswope@cpmlegal.com
Pierce H. Stanley (SBN 352152)
pstanley@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, California 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

**KAPLAN FOX & KILSHEIMER LLP**

DATED: May 5, 2026

By: /s/ *Laurence D. King*
         Laurence D. King

Laurence D. King (SBN 206423)
lking@kaplanfox.com
Matthew B. George (SBN 239322)
mgeorge@kaplanfox.com
Blair E. Reed (SBN 316791)
breed@kaplanfox.com
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707

*Interim Co-Lead Counsel for Plaintiffs*

**APPENDIX A**

| EVENT | DATE | Referenced Paragraph |
|---|---|---|
| Last day for Defendant to provide Class Member Information to the Claims Administrator | 5 business days after entry of the Preliminary Approval Order | ¶F.3 |
| Settlement Funding (deadline to fund initial portion of non-reversionary cash settlement) | 30 calendar days after entry of the Preliminary Approval Order | ¶B.2.a |
| Notice Date (the date Claims Administrator must commence Class Notice) | 45 calendar days after Apple transmits the Settlement Member Class List to the Settlement Administrator | ¶20 |
| Motions for Attorneys' Fees, Reimbursement of Expenses, and Service Payments to be filed by Plaintiffs' Counsel | 35 calendar days before Claim/Objection/Exclusion Deadline | ¶G.2 |
| Claims Deadline (submission deadline for Claims) | 90 calendar days after the Notice Date | ¶4 |
| Objection Deadline (filing deadline for Objections) | 90 calendar days after the Notice Date | ¶21, D.3 |
| Exclusion Deadline (deadline to submit Opt-Outs) | 90 calendar days after the Notice Date | ¶21, E.3 |
| Exclusion List Deadline | 7 calendar days after the Claim/Objection/Exclusion Deadline | ¶E.5 |
| Claim Validation Deadline | 10 calendar days after Claim/Objection/Exclusion Deadline | ¶B.7 |
| Motion for Final Approval | 35 calendar days prior to the Final Approval Hearing | |
| Objector Counsel Appearance Deadline | 14 calendar days before Final Approval Hearing | ¶D.6 |
| Deadline to Respond to Objections | 7 calendar days prior to the Final Approval Hearing | ¶D.9 |
| Final Approval Hearing | At least 60 calendar days after Claim/Objection/Exclusion Deadline, or on such date as set by the Court | ¶13 |

| | | |
|---|---|---|
| Class Counsel to provide executed Undertaking Regarding Attorneys' Fees and Expenses (Exhibit H) and all information necessary to effectuate payment of attorney's fees and expenses, including adequate payment instructions consisting of wire transfer instructions or instructions for payment by check, and completed Form W-9s | 2 calendar days after entry of Court's final order approving Attorney's Fees and Expenses Payment | ¶B.2.b |
| Payment to QSF of funds for Attorneys' Fees & Expenses Award to Class Counsel | 30 calendar days after entry of Court's final order approving Attorneys' Fees and Expenses Payment | ¶B.2.b |
| Payment of Attorneys' Fees and Expenses Award to Class Counsel | 2 business days after Apple's transfer of the Court-approved Attorneys' Fees and Expenses Payment to the QSF | ¶B.2.b |
| Payment to QSF any remaining Settlement Amount | 30 calendar days after Effective Date, or, in the event that an appeal is filed and pending, then within one (1) year from the entry of final approval order, whichever is earlier | ¶B.2.d |
| Payment of Claims | 60 calendar days after Effective Date | ¶B.8 |
| Payment of Service Awards | 60 calendar days after Effective Date | ¶G.1 |
| Deadline to Cash Settlement Checks | 120 calendar days after disbursement | ¶B.10 |
| Deadline for Request of Re-issuance of Settlement Checks | 150 calendar days after disbursement | ¶B.10 |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Ryan J. Clarkson, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of May, 2026, at Malibu, California.

_/s/ Ryan J. Clarkson_
Ryan Clarkson, Esq.