# EXHIBIT 3

*Peter Landsheft v. Apple Inc.*

Case No. 5:25-cv-02668-NW

**Declaration of Bryan Heller**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| PETER LANDSHEFT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>APPLE INC., a California Corporation,<br><br>    Defendant. | Case No. 5:25-cv-02668-NW<br><br>**DECLARATION OF BRYAN HELLER REGARDING CLASS MEMBER IDENTITY RESOLUTION USING CLASSRESOLUTION, ENRICHMENT OF NOTICE DATA USING DEEPVALIDATION, AND CLAIM VALIDATION USING CLAIMSCORE** |

1

I, Bryan Heller, do hereby declare and state as follows:

1.    I am a Co-Founding partner and the Chief Operating Officer of ClaimScore, LLC d/b/a Covalynt ("Covalynt"), a legal technology company specializing in identity solutions for class action settlements and mass tort matters.  The following statements are based on my personal knowledge and information provided by other Covalynt principals and employees working under my supervision, and if called upon to do so, I could and would testify competently about these issues.

2.    This Declaration is submitted in support of Plaintiffs' motion for preliminary approval for the above-captioned action, in which a proposed settlement has been reached.  The Settlement Class consists of purchasers of iPhone 16 and certain iPhone 15 models who allege they were deceived by Apple's marketing of its certain Apple Intelligence features.  Covalynt understands that in conjunction with preliminary approval, Verita Global, LLC ("Verita" or "Settlement Administrator") will be appointed as claims administrator to oversee the administration of the Settlement.

## I.    Executive Summary

3.    Class action settlements of this nature present consistent data and identity challenges — including unresolved and duplicated raw defendant data, outdated or undeliverable notice contact data, and wide-spread, sophisticated fraudulent claim submissions.  These challenges are not unique to class action administration; analogous problems exist across financial services, insurance, healthcare, telecommunications, and eCommerce, though the legal and procedural context of class action settlements introduces distinct requirements that set it apart from those industries.

4.    Covalynt has developed solutions that match the sophistication of the leading tools deployed in those industries, but are purpose-built for the specific legal, procedural, and regulatory

demands of court-supervised class action administration.  Central to each of Covalynt's solutions is its proprietary dataset — a derivative of hundreds of identity and intelligence data sources spanning email intelligence, phone intelligence, address intelligence, and IP address intelligence.

5.      Unlike data providers operating in commercial contexts, whose usage is subject to consumer privacy regulations that restrict or prohibit certain applications, Covalynt's dataset was specifically developed for use in legal notice and claims administration proceedings conducted under court order or oversight.  This well-defined legal use case permits Covalynt to apply identity and intelligence data in ways that are not available to commercial providers, while remaining fully compliant with all applicable legal and ethical standards.  It is Covalynt's policy that raw data obtained from defendants is never integrated into its proprietary dataset; such data is used solely for the purposes of the matter in which it is produced and is not retained or incorporated into Covalynt's data infrastructure beyond that engagement.

6.      Verita has retained Covalynt to provide identity solutions across three phases of the settlement administration process: class member resolution and deduplication, contact data enrichment for notice, and fraud and eligibility analysis of submitted claims.

7.      Defendant Apple Inc. ("Apple" or "Defendant") will provide Verita with the contact information for the known Settlement Class Members.  Verita will securely transmit that dataset to Covalynt for processing.  Covalynt will clean, normalize, and deduplicate the data through its proprietary identity resolution methodology, referred to herein as "ClassResolution," consolidating multiple records corresponding to a single individual into a single, unified Settlement Class Member identity.  ClassResolution draws upon historical identity data —including current and prior addresses, telephone numbers, email addresses, name aliases, and other known name

3

variations — to resolve the class member dataset into an accurate, audit-ready foundation for the notice and administration process.

8.      Building on the deduplicated Settlement Class Member database, Covalynt will apply its proprietary contact enrichment methodology, referred to herein as "DeepValidation," to address the challenge of outdated and inactive contact data.  Using email intelligence data and Covalynt's proprietary data processes, DeepValidation identifies up to three (3) email addresses for each Settlement Class Member, prioritizing those that are demonstrably valid, reflect recent active use across the internet, and are associated with accounts the Settlement Class Member actively checks.  Separately, Covalynt will leverage its address intelligence data to identify the most current mailing address on record for each Settlement Class Member, to be used for follow-up postcard notice where email delivery is unsuccessful.

9.      When a settlement includes an indirect notice component, the claim submission portal must remain open and accessible to the public — unlike direct notice-only settlements, where claim form access can be restricted to verified class members through credentialed access. This open portal creates an environment that is not only susceptible to individual fraudulent submissions, but more significantly, to sophisticated and organized operations that reverse-engineer the claim form to submit hundreds of thousands to tens of millions of fraudulent claims at scale.

10.     To address this, Covalynt will apply its proprietary fraud and eligibility analysis technology, referred to herein as "ClaimScore," to evaluate each submitted claim using pattern recognition, multi-source identity intelligence, and an expert-based AI methodology specifically engineered for the class action environment.  ClaimScore evaluates each submission across 65+ distinct validation points and determines whether it constitutes a valid claim, a fraudulent

submission, or one that warrants additional review before a final determination is made. Each submission is tagged with a series of deduction codes indicating the evidence underlying the determination, which Covalynt will provide to Verita for its final review.

## II.    Covalynt's Background and Experience

11.    Covalynt (formerly known as ClaimScore) is a legal technology company that assists with the administration of class actions and other complex litigation matters. Covalynt provides a suite of identity solutions and proprietary data processes that address the full lifecycle of class action data needs, including class member identification and deduplication, contact data enrichment for notice programs, and the evaluation and validation of submitted claims for fraud and eligibility. Covalynt is the only independent solution providing this integrated range of solutions purpose-built for the class action industry.

12.    Covalynt was founded specifically based on its founders' expertise in complex litigation and systems engineering, with the singular focus of addressing the identity and data challenges unique to class action administration. Each of Covalynt's core solutions — ClassResolution, DeepValidation, and ClaimScore — was built to apply objective, reproducible methodologies consistently and uniformly across all class members and claimants, in a manner that is transparent, defensible, and suitable for court-supervised proceedings in both federal and state courts.

13.    Central to Covalynt's identity solutions is its proprietary dataset, which serves as the foundation for ClassResolution, DeepValidation, and ClaimScore. Covalynt's dataset is a derivative of hundreds of data sources spanning a wide variety of identity and intelligence data types — including email intelligence, phone intelligence, address intelligence, and IP address intelligence. Covalynt's proprietary technology processes and resolves these sources to build a comprehensive picture of each individual's current and historical digital and physical identities.

5

All data comprising Covalynt's proprietary dataset has been lawfully obtained and is specifically approved for use in the manner described herein.

14.     The Covalynt team collectively has over 40 years of class action case experience, and includes both class action attorneys, individuals with class action claim administration experience, data analysts, and a full software development team.  Our founders have represented litigants on both sides of consumer, antitrust, data privacy, and other class actions and have administered numerous cases in state and federal courts throughout the United States.

15.     Covalynt's technical team consists of fifteen (15) full-time professionals led by a veteran AI systems architect with over a decade of experience.  The team includes seven (7) software engineers, each with a background in Systems Engineering and a combined 40+ years of experience developing artificial intelligence technologies.  Two of these engineers hold advanced degrees – one in Big Data and Machine Learning, and the other in Systems Management.  The engineering team is supported by four additional developers, one with a degree in Systems Engineering, two with degrees in Mathematics, one of whom is currently pursuing and advanced degree in Big Data and Machine Learning and the fourth currently pursuing a degree in Systems Engineering.  In addition, ClaimScore employs two senior DevOps engineers with over twenty (20) years of combined experience designing and maintaining scalable cloud infrastructure for AI systems, as well as a dedicated VP of Operations and Product with nearly a decade of experience managing data analytics and AI products.

## III.    Covalynt's Experience

16.     Covalynt has extensive experience — and a particular expertise — in providing identity solutions across all phases of class action administration.  Covalynt has been engaged across matters of varying size and complexity to perform class member identification and deduplication, contact data enrichment in support of court-approved notice programs, and fraud

and eligibility analysis of submitted claims.  In each of these engagements, Covalynt's work has been adopted by the retaining claims administrator and relied upon in federal and state court proceedings.

17.    Covalynt has worked alongside many of the leading claims administrators in the class action space — including A.B. Data Ltd., Digital Settlement, Angeion Group, Epiq Systems, Verita, American Legal Claims Services, EisnerAmper, Atticus Administration, Fidexis, and others — having reviewed more than 195,000,000 claims across settlements totaling nearly one billion dollars in disbursements.  Covalynt has been retained at various stages of the litigation lifecycle, including prior to the commencement of notice, while matters are pending, and after the close of the claims filing period.  With respect to ClassResolution and DeepValidation specifically, Covalynt has been retained in high-profile matters involving defendants such as Google and Meta, as well as numerous additional matters proceeding in federal and state courts across the country.

18.    Below is a chart containing a sample of currently active or recently finalized class actions in which Covalynt was retained:

| Case Name | Case Number | Court |
|---|---|---|
| Lopez v. Apple, Inc. | 4:19-cv-04577-JSW | United States District Court for the Northern District of California |
| Frasco v. Flo Health, Inc. (Meta Judgement Tract) | 3:21-cv-00757-JD | United States District Court for the Northern District of California |
| Hubbard, et al. v. Google LLC, et al. | 19-cv-07016-SVK | United States District Court for the Northern District of California |
| Katz-Lacabe et al v. Oracle America, Inc. | 3:22-cv-04792-RS | United States District Court for the Northern District of California |
| Brooks v. Thomson Reuters Corp. | 3:21-cv-01418 | United States District Court for the Northern District of California |
| Mackmin et al. v. Visa Inc. et al. | 1:11-cv-01831 (RJL) | United States District Court for the District of Columbia |

7

| Frasco v. Flo Health, Inc. (Flo Health, Google, Flurry Settlement) | 3:21-cv-00757 | United States District Court for the Northern District of California |
|---|---|---|
| Onadia v. City of New York, et al. | No. 0300340/2010 | Supreme Court of the State of New York, County of Bronx |
| In re Broiler Chicken Antitrust Litigation | 16-cv-08637 | United States District Court for the Northern District of Illinois |
| Ruffin, et al. v CVS Pharmacy, Inc. | 7:23-CV-01660-BO- RN | United States District Court for the Eastern District of North Carolina Southern Division |
| Kessler, et al. v. The Quaker Oats Company | 7:24-cv-00526-KMK | United States District Court for the Southern District of New York |
| Hasemann, et al. v. Gerber Products Co., et al. | 1:15-cv-02995-EK- RER (E.D.N.Y.) | United States District Court for the Eastern District of New York |
| Bush v. Rust-Oleum Corporation, et al. | 3:20-cv-03268 | United States District Court for the Northern District of California |
| Jien et al v. Perdue Farms, Inc. et al | 1:2019cv02521 | United States District Court for the District of Maryland |
| Pompilio, et al. v. Boar's Head Provisions Co. Inc. | 7:24-cv-08220-PMH | United States District Court for the Southern District of New York |
| Nixon v. Grande Cosmetics, LLC | 1:22-cv-06639 | United States District Court for the District of New Jersey |
| Morris v. EVIG, LLC d/b/a Balance of Nature | 4:23-cv-00089-DN- PK | Missouri Circuit Court, Phelps County |
| Brown et al v. JBS USA Food Company et al | 1:22-cv-02946-PAB- STV | United States District Court for the District of Colorado |
| Jimenez v. Artsana USA, Inc. | 7:21-cv-07933-VB | United States District Court for the Southern District of New York |
| Perez v. Rash Curtis & Associates | 4:16-cv-03396-YGR | United States District Court for the Northern District of California |
| Candian Diamond Settlement | | Multiple Canadian Courts |
| Canadian Auto Parts Class Action | | Multiple Canadian Courts |
| O'Malley, et al. v. FloSports, Inc., | 3:22-cv-04920JSC | United States District Court for the Northern District of California |
| Rosenfeld et al. v AC2T, Inc. | 506882/2023 | New York Supreme Court for Kings County |

8

| Wyland v. Woopla | 2023-CI-00356 | Kentucky Circuit Court for Henderson County |
| --- | --- | --- |
| Whiting v. Yellow Social Interactive Ltd. | 2023-CI-00358 | Kentucky Circuit Court for Henderson County |
| Gunaratna v. Dr. Dennis Gross Skincare, LLC | 1:23-CV-01967-ER | United States District Court for the Southern District of New York |
| Haylee Woodard v. Lilly Lashes, LLC | 22STCV18692 | Superior Court of California, Los Angeles County |
| Danielle Skarpnes v. Elixir Cosmetics OPCO LLC | CU23-04638 | Superior Court of California, County of Solano |
| Lipsky, et al. v. American Behavioral Research Institute, LLC, dba Relaxium | 50-2023-CA-0l 1526-XXXX-MB, | Florida Circuit Court, Fifteenth, Judicial District, Palm Beach County |
| Guerrero v. Merritt Healthcare Holdings, LLC | 3:23-cv-00389-MPS | United States District Court for the District of Connecticut |
| Doe, et al. v. MarinHealth Medical Center, et al. | CV-000-2218 | Superior Court of the State of California, County of Marin |
| Rave v. Infinity Healthcare Inc. | 2019CV003073 | Circuit Court for Milwaukee County, Wisconsin |
| In Re: Glucagon-like Peptide-1 Receptor Agonists (Mass Tort) | MDL No. 3094 | United States District Court for the Eastern District of Pennsylvania |
| In re Effexor XR Antitrust Litigation | 3:11-cv-05479 (D.N.J.) | United States District Court for the District of New Jersey |

19.     Covalynt is currently engaged as the identity resolution and anti-fraud expert in *Frasco v. Flo Health, Inc.* (N.D. Cal. 3:21-cv-00757), a matter that closely parallels this case in scope and methodology.  In that matter, Covalynt is providing all three of its core service offerings — ClassResolution, DeepValidation, and ClaimScore.  Specifically, Covalynt is resolving raw defendant-provided data into a formalized class list and identifying the subclass of individuals who resided in California during the class period; identifying valid and active contact information for both the nationwide and California subclasses in support of the notice program; and applying ClaimScore to distinguish between fraudulent and valid claim submissions, as well as to determine whether approved claimants held a California address during the claims period for purposes of California subclass inclusion.  Covalynt's work and methodology in Frasco have been the subject

9

of testimony at multiple hearings, and have been directly considered by the Court in the context of class administration and notice.

**IV.    Covalynt's Identity Solutions in This Matter**

**A.    Overview**

20.    As described in the Executive Summary above, Covalynt's engagement in this matter encompasses three distinct but interconnected phases of class action administration: class member identification and deduplication through ClassResolution, contact data enrichment for direct notice through DeepValidation, and fraud and eligibility analysis of submitted claims through ClaimScore.  Each of these services draws upon Covalynt's proprietary dataset — a derivative of hundreds of identity and intelligence data sources, processed and resolved through Covalynt's proprietary technology — and is governed by the same core principles that underpin all of Covalynt's work: objective, reproducible methodologies applied consistently and uniformly across all Settlement Class Members and claimants, in a manner that is transparent, defensible, and suitable for court-supervised proceedings.  The sections below describe the specific methodology employed in each phase.

**B.    ClassResolution Methodology**

21.    Covalynt has developed a unique and proprietary identity resolution methodology specifically engineered for use in class actions and mass tort litigation.  ClassResolution incorporates multi-source data enrichment, intelligent attribute matching, and expert-based rule logic applied consistently across all records.  Since ClassResolution is a software-based solution, its methodology remains consistent across all cases, such that the same methodology applied to all prior and current cases is applied here.  In the event of periodic software updates to Covalynt's identity resolution system, such updates are deployed and implemented uniformly across both ongoing and future cases.

10

22. ClassResolution was purpose-built to meet the evidentiary and transparency standards required in federal and state court proceedings. Covalynt's methodology replicates the reasoning and judgment of a human identity expert — ensuring that all identity matching and deduplication decisions remain fully auditable, explainable, and compliant with applicable legal frameworks regarding the use of automated technologies in class action administration.

23. Specifically, Covalynt receives the raw class member dataset, which contains the contact information collected for known Settlement Class Members. That data is first cleaned and normalized — including standardizing phone number formats, parsing full address strings into discrete components (street address, address line 2, city, state, and zip code), normalizing street suffixes (e.g., "St.," "Dr.," "Ave."), and spell-checking street addresses against both public and private data sources to match each address to a known, verified address — to prepare it for identity resolution processing. The normalized records are then enriched and matched against Covalynt's proprietary dataset, a derivative of hundreds of identity and intelligence data sources including email intelligence, phone intelligence, address intelligence, and IP address intelligence. Through this process, Covalynt identifies instances where multiple records correspond to a single individual and consolidates those records into a single, unified identity.

24. That deduplication process evaluates each record across a wide range of historical identity attributes, including current and prior addresses, telephone numbers, email addresses, name aliases, and other known name variations. Covalynt's expert-based methodology evaluates potential matches across multiple identity attributes simultaneously rather than relying on any single identifier. This multi-attribute approach ensures that deduplication is both accurate and defensible — minimizing the risk of false positives that would incorrectly merge records belonging

11

to distinct individuals, while also minimizing false negatives that would leave true duplicates unresolved in the final Settlement Class Member database.

25.    To maximize transparency, each raw record is keyed to its resolved identity, providing the parties, the administrator, and the Court with a clear and auditable record of which input records have been consolidated into each unified Class Member identity. Upon completion of ClassResolution, Covalynt will deliver to Verita a deduplicated database of Settlement Class Members, audit-ready and structured for use in the notice and administration process.

**C.    DeepValidation Methodology**

26.    Covalynt has developed a unique and proprietary contact enrichment methodology specifically engineered for use in class action notice programs. DeepValidation incorporates multi-source email intelligence, identity-based contact resolution, and expert-based rule logic to identify the email addresses most likely to result in actual notice to each individual Settlement Class Member. Since DeepValidation is a software-based solution, its methodology remains consistent across all cases, such that the same methodology applied to all prior and current cases is applied here. In the event of periodic software updates to Covalynt's contact enrichment system, such updates are deployed and implemented uniformly across both ongoing and future cases.

27.    DeepValidation was purpose-built to meet the due process standards required of court-approved notice programs in federal and state court proceedings. Covalynt's methodology replicates the reasoning and judgment of a human identity expert — ensuring that all contact resolution decisions remain fully auditable, explainable, and compliant with applicable legal frameworks regarding the use of automated technologies in class action administration.

28.    Specifically, Covalynt receives the deduplicated Settlement Class Member database produced through ClassResolution and applies a combination of contact information, email intelligence data, and its proprietary data processes to identify up to three (3) email addresses

12

for each Settlement Class Member.  Each candidate email address is evaluated across multiple criteria simultaneously, including the validity and deliverability of the email address, the recency and frequency of the email address's observed use across the internet, and the degree to which the email address is associated with accounts the Settlement Class Member actively checks.  No single criterion is dispositive; rather, each is evaluated as part of a multi-factor analysis designed to identify the email addresses most likely to result in actual notice to the intended recipient.

29.    As with ClassResolution, DeepValidation draws upon Covalynt's proprietary dataset — a derivative of hundreds of identity and intelligence data sources including email intelligence, phone intelligence, address intelligence, and IP address intelligence — to build a comprehensive picture of each Settlement Class Member's current and historical digital contact footprint.  This enrichment process ensures that even where Defendant's dataset contains outdated or inactive contact information, Covalynt is able to identify current, active email addresses through which notice may be successfully delivered.

30.    In addition to email enrichment, Covalynt also identifies the most current and deliverable mailing address on record for each Settlement Class Member.  This is accomplished by cross-referencing each Settlement Class Member's identity against Covalynt's proprietary dataset to identify the most recently observed physical address associated with that individual. This address is appended to the Settlement Class Member record and is used to direct follow-up postcard notice for Settlement Class Members for whom no valid or active email address can be identified, or where email delivery attempts result in a soft or hard bounce.

**D.    ClaimScore Methodology**

31.    Covalynt's ClaimScore anti-fraud solution uses a hybrid approach, wherein machine learning informs the weighting of criteria within our system, ensuring adaptability to new fraud strategies and compliance with evidentiary standards.

32.    Covalynt has developed a unique and proprietary methodology specifically engineered for use in class actions and mass tort litigation.  ClaimScore incorporates real-time pattern recognition, multi-source data enrichment, and intelligent rule-weighting informed by machine learning.  Since ClaimScore is a software-based solution, its methodology remains consistent across all cases so that the same methodology applied to all prior and current cases is applied here.  In the event of periodic software updates to ClaimScore's fraud detection system, such updates are deployed and implemented uniformly across both ongoing and future cases.

33.    ClaimScore was purpose-built to meet the evidentiary and transparency standards required in federal and state court proceedings.  Covalynt's use of machine learning is confined to informing and optimizing its expert system AI[1] — ensuring decision-making remains fully auditable, explainable, and compliant with applicable legal frameworks regarding the use of automated technologies in claim determinations.

34.    ClaimScore's technology combines a 65+ point expert-system artificial intelligence algorithm with a neural-network machine learning system to ensure an accurate, objective, and transparent review of each individual submitted claim.  The platform is built on a complex cloud architecture that optimizes the speed of the real-time claims analysis.

35.    Specifically, Covalynt receives from the claims administrator either via API or as a file, depending on when the fraud review is taking place, the necessary points of data collected during the claim submission process (i.e. first name, last name, street address, address 2, city, state, zip, country, phone number, email, IP address and referrer URL).  That data is enriched with over

---

[1] An expert system is an AI software that mimics a human expert's decision-making and problem-solving skills within a specific domain. It consists of a knowledge base, containing facts and rules, and an inference engine, which applies these rules for complex tasks using logical reasoning to provide objective, consistent outcomes.

200 additional data points drawn from Covalynt's proprietary dataset and identity intelligence sources — spanning email intelligence, phone intelligence, address intelligence, and IP address intelligence. Those 200 points are distilled down to the 65+ points that are most useful in distinguishing fraudulent activity from valid submissions. ClaimScore's expert system AI traverses those 65+ points, and when indicia of fraud are detected, the claim's score is reduced, and the claim is tagged with a deduction code. In addition, all case-specific validation requirements are integrated into ClaimScore's algorithm (i.e. jurisdiction, claimant limit, household limit, etc.), thus ensuring each claim is accurately evaluated against the requirements set forth in each specific settlement agreement.

36.    Each claim begins with a ClaimScore of 1,000 and as noted above, the score is reduced each time indicia of fraud is detected. Based on the resulting score and the nature of the indicia identified, each submission is assigned one of the following determinations:

**Pass:** The claim meets all evaluation criteria and is recommended for approval and payout.

**Verify:** The claim passed evaluation but exhibits indicators that may signal fraud. Covalynt recommends that the claims administrator review any available supporting information before confirming payout.

**Inspect:** The claim includes supporting evidence that warrants further examination prior to a final determination.

**Fail:** The claim failed one or more evaluation criteria and is recommended for rejection.

**Cure:** The claim failed evaluation but may nonetheless be legitimate. Covalynt recommends that the claims administrator contact the claimant to confirm details or cure any identified deficiencies before making a final determination.

**Insufficient:** The claim lacks the necessary information to be scored accurately and has been excluded from analysis.

**Unsupported:** The claim type or format is not supported by Covalynt's current scoring logic and has been excluded from analysis.

**Non-Claim:** The submission does not constitute a claim and has been excluded from analysis.

37. Covalynt developed a proprietary neural-network machine learning model to determine the weight of each step of each criterion based on the prevalence of valid and invalid claims failing the pertinent criteria step. Once the score weights were established, they were applied to ClaimScore's expert system AI algorithm that evaluates each claim against the 65+ points described above.

38. To maximize transparency, each claim is tagged with deduction codes associated with the criteria it fails, ensuring that the parties, the administrator, and the Court definitively know all the specific reasons why each claim received the determination assigned to it. This coding approach creates complete transparency for each claim and provides an evidentiary basis for each determination, which requires a claim to fail multiple criteria before an adverse recommendation is made.

39. This process confirms that Covalynt does not make adverse determinations based on "one-off" criteria, referred to as a "group and slash" approach. In contrast, ClaimScore's methodology applies the above-explained criteria and measures other indicia of fraud against a full set of criteria to provide each claimant with a score. That score then determines whether a claimant actually meets the definition of "class member" and whether the claim was submitted by the claimant or a bad actor.

40. An example of a "group and slash" criterion would be the automatic rejection of claims submitted through a VPN or proxy IP address[2]. By contrast, ClaimScore's criteria treat the

---

[2] In addition to rejecting claims for use of a VPN or proxy, certain settlement websites will outright block access to the claim form when a potential class member attempts to access the site through a VPN or proxy. Based on ClaimScore's findings in other matters, between 25 and 33% of valid class members will utilize a VPN or proxy. Accordingly, in matters where VPN and proxy usage are blocked, a comparable percentage of class members will likely not have the opportunity to submit a claim at all.

16

use of a VPN or proxy as a single deduction, which on its own is not sufficient to reject a claim. Additional indicia of fraud must be present before a claim would fail under our system.

41.    Other examples of ClaimScore's criteria include evaluating the validity of an email address.  This is assessed across multiple data points, such as whether the domain's DNS records are properly configured to receive email.  As with the VPN/proxy example, this criterion alone does not disqualify a claim; however, when combined with other criteria, it may support an adverse determination.

42.    In addition to criteria based on single data points (such as email or IP), ClaimScore evaluates the overall consistency of data as it relates to the claimant's identity.  Covalynt's system identifies anomalies that are inconsistent with the claimant's provided identity information.  As with the examples above, these anomalies alone are not grounds for an adverse determination, but when combined with other indicia of fraud, they may result in a claim receiving a Fail or Cure designation.

43.    Covalynt has conducted several control studies using tens of thousands of known legitimate claims and the same amount of known invalid claims to evaluate accuracy.  Covalynt has also engaged an independent third-party which conducted secondary validations on hundreds of thousands of claims to evaluate the accuracy of ClaimScore's analysis.  The most recent control study and independent validation efforts indicated that ClaimScore has an accuracy between 99.987% and 99.996%[3].

---

[3] The independent third party utilized a multipronged approach to attempt to cure claims identified by ClaimScore as "rejected". They used a variety of data sources and also attempted direct communication with claimants. This resulted in 99.996% of the "rejected" claims being confirmed as fraudulent. Additionally, ClaimScore's internal control study, which evaluated known legitimate and fraudulent claims, was 99.987% accurate at properly categorizing the claims as either "approved" or "rejected".

44.     Unlike the "group and slash" approach, ClaimScore's methodology involves a multi-factor expert system AI algorithm that evaluates each claim across more than sixty-five (65) distinct validation points.  The traditional "group and slash" methodology requires that each selected criterion be strong enough, on its own, to serve as definitive evidence of fraud.  If a claim does not fail a specific review point with absolute clarity, the claim is approved even though the claim may display multiple red flags in the aggregate.  This difference is critical, and it allows Covalynt to detect fraudulent activity at a much more accurate level.

45.     The single-point, "group and slash" approach is ineffective due to the evolution and sophistication of the fraud schemes being deployed in the class action context.  Indeed, fraudsters have employed sophisticated technologies to circumvent the most commonly used one-off criteria. These bad actors understand that if they can avoid triggering the one-off checks being used, they can gain access to settlement funds, regardless of whether the rest of their submission lacks credibility.

46.     To properly address the evolving fraud landscape and the implementation of new technology to submit fraudulent claims, ClaimScore's expert system was designed to emulate the way human experts assess complex data.  ClaimScore's system is designed to consider the totality of circumstances and how those circumstances interact rather than relying on individual data points in isolation.   Under ClaimScore's methodology, no single failed criterion is necessarily disqualifying; each claim begins with a perfect score of 1,000 and is evaluated against each of the 65+ validation points, and deductions are applied when a claim fails specific steps within those points.  The cumulative effect of these deductions, not any one individual failure, determines the outcome.

47.     This approach has a number of critical advantages.  First, it allows the system to detect fraud even when no single piece of evidence would be enough to reject a claim under the traditional model.  Second, because the scoring system is not static and adapts based on real-world data (including the prevalence of invalid submissions failing specific criteria), it remains highly resistant to reverse-engineering by fraudsters.  In short, while the traditional "one-off" method creates a checklist that fraudsters can work around, ClaimScore's expert system evaluates each claim against more than sixty-five (65) criteria, resulting in over 35,000,000,000,000,000,000 (35 quintillion) unique scoring combinations.  That combinatorial complexity creates a multi-dimensional validation structure that cannot be bypassed by manipulating any single factor.

48.     ClaimScore's scoring system provides a rigorous, transparent, and evidence-based framework for claim review.  Each deduction is tagged and traceable, ensuring that each claim's determination is statistically valid and defensible in legal proceedings.  As a result, Covalynt is able to make recommendations based on a comprehensive and repeatable analysis that has been validated against nearly two hundred millions of claims and verified through independent third-party audits.

## V.     Declaration

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: April 22, 2026

By: _____

        Bryan Heller

19